**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 0 8 2013

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

| | | |
|---|---|---|
| CITY OF ALEXANDER, ARKANSAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 4:13 cv 642 BSM |
| | ) | |
| PAUL GRAVER and FIRST | ) | |
| GOVERNMENT LEASE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This case assigned to District Judge Miller
and to Magistrate Judge_____ Deere

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1441 *et seq.*, defendants Paul Graver and First Government

Lease Company ("Graver and First Government") hereby give notice of their removal to this Court

of the Cross Claim filed by the City of Alexander, Arkansas ("Alexander"), in case No. 60CV-13-

3913 from the Circuit Court of Pulaski County, Arkansas, Sixth Division.  In support of its Notice

of Removal, Defendants state as follows:

   1. Alexander, Paul Graver, and First Government Lease Company were all

named as defendants in an action filed by First State Bank of Wynocka, Oklahoma, in the Circuit

Court of Pulaski County, Arkansas, Sixth Division on October 2, 2013 (the "Original State Court

Action").

   2. On October 21, 2013, plaintiff Alexander filed a Cross Complaint against

Graver and First Government (the "Cross Complaint") regarding the repossession of a fire truck,

which is wholly unrelated to the Original State Court Action.  Graver and First Government had

initial notice of the Cross Complaint when counsel for Alexander emailed a copy of the complaint, ex parte order, notice of hearing, and summons to Mr. Paul Graver on or about October 21, 2013. Service was made upon Graver and First Government through the undersigned counsel on November 7, 2013. Accordingly, this Notice of Removal is timely filed under 28 U.S.C. § 1446(b).

3.       Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings and orders in the Cross Complaint is attached as Exhibit A hereto.  A copy of the petition, exhibits, and summonses in the Original State Court Action is attached as Exhibit B hereto.

## JURISDICTION

4.       The State Court Action is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332.  This action may be removed pursuant to 28 U.S.C. § 1441 because: (i) while the plaintiff's Cross Complaint is silent as to an amount of damages sought, state practice does not limit recovery to an amount less than required for federal court jurisdiction, and the damages alleged in the Cross Complaint make a recovery in excess of $75,000 more likely than not, and (ii) there is complete diversity of citizenship between the plaintiff and the defendants.

**I.       Amount In Controversy.**

5.       The complaint alleges, among other things:

- Graver and First Government's repossession of a fire truck leased to Alexander was unlawful, and Alexander is entitled to "is entitled to the immediate return of its property, damages, including punitive damages to deter such wrongful actions, and attorneys' fees";

- Graver and First Government's repossession of the fire truck amounted to conversion, and Alexander is "entitled to damages, including punitive damages, and attorney's fees";

- That Alexander "reserves the right to make a claim under Ark. Code Ann. § 18-60-803 and §16-22-309 for damages and attorney's fees which result from any action by Defendant in concealing the vehicle, interfering with the enforcement of an Order of Delivery, removing the vehicle from the jurisdiction of this Court, asserting frivolous defenses or refusing to disclose the vehicle's location";

- Graver and First Government's actions "constitute unconscionable, false, or deceptive act in business, commerce or trade in violation of Ark. Code Ann. § 4-88-107(a)(10), the Arkansas Deceptive Trade Practices Act," for which Alexander maintains it is entitled to damages, including punitive damages; and

- Alexander is entitled to a temporary restraining order and preliminary injunction preventing Graver and First Government from "attempting any legal, collection, repossession or other action against the City."

Because Alexander seeks punitive damages for most of its claims and alleges that Graver and First Government acted fraudulently and in a manner likely to cause irreparable harm and endanger the citizens of the city of Alexander by depriving them of a fire truck, it is more likely than not that, should Alexander prevail in this suit, the amount of any damage award would exceed $75,000. Additionally, Alexander seeks to enjoin Graver and First Government from

taking legal actions to protect the defendants' interests in the fire truck, which would include selling the fire truck (with a fair-market value of roughly $90,000) pursuant to the terms of the Uniform Commercial Code.

## II.   Diversity Of Citizenship.

6.     There is complete diversity of citizenship between the plaintiff and the defendants.

7.     Plaintiff is a municipal corporation organized under the laws of the State of Arkansas and is considered a "citizen" of Arkansas for purposes of diversity jurisdiction. 28 U.S.C. § 1332(c)(1). Defendant Paul Graver is a citizen of the State of Illinois. *See* Cross Complaint, ¶ 3. Defendant First Government Lease Company is an unincorporated Illinois business entity with its principal place of business located in Northfield, Illinois. *See id.*, ¶ 2.

8.     Consequently, there is complete diversity of citizenship, this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(c)(1), and removal is appropriate under 28 U.S.C. §§ 1441 and 1446.

## PROCEDURAL REQUIREMENTS FOR REMOVAL

9.     In accordance with 28 U.S.C. § 1441(a), removal is made to this Court as the district and division embracing the place where the Cross Complaint is pending.

10.     Graver and First Government reserve the right to amend or supplement this Notice of Removal and reserve all of their defenses.

11.     In accordance with 28 U.S.C. § 1446(d), Graver and First Government are providing plaintiff, by and through Alexander's counsel, with written notice of the filing of this Notice of Removal.  In addition, Graver and First Government are filing a copy of this Notice of Removal with the Clerk of the Circuit Court of Pulaski County, Arkansas, thereby effecting the removal of this action to this Court.

**WHEREFORE**, Graver and First Government pray that the Cross Complaint initiated by plaintiff and pending in the Circuit Court of Pulaski County, Arkansas, Sixth Division, be removed therefrom to this Court.

DATED:  November 8, 2013                   Respectfully submitted,

_____
Matthew D. Campbell (Ark. Bar #2009032)
Pinnacle Law Firm, PLLC
212 Center St., 11th Floor
Little Rock, Arkansas 72201
(501) 396-9246

COUNSEL FOR DEFENDANTS

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
SIXTH DIVISION

FIRST STATE BANK                                             PLAINTIFF

vs.                          Case NO. 60CV-13-3913

CITY OF ALEXANDER, ARKANSAS;                                DEFENDANTS

PAUL ANTHONY GRAVER; AND

LANCE DOMINIQUE


CITY OF ALEXANDER, ARKANSAS                    CROSS COMPLAINANT

vs.

PAUL ANTHONY GRAVER and                        CROSS DEFENDANTS

FIRST GOVERNMENT LEASE CO.


## ORDER

On this day comes on for hearing Cross Complainant City of Alexander, Arkansas ("Alexander"), by and through its attorney, Carla L. Miller, and Cross Defendants Paul Graver and First Government Lease Co., and for Cross Defendant's Motion to Dismiss the Cross Complaint of the Plaintiff and the exhibits thereto, the Court finds:

1. Cross Defendants have sufficient minimum contacts with the State of Arkansas such that this Court has personal jurisdiction over all parties named in the Cross Complaint.

2. The forum-selection clause in paragraph nine (9) of the lease-purchase agreement between Alexander and Cross Defendants is invalid.

3. Venue is proper in this Court as the actions complained of in the Cross Complaint occurred in Pulaski County, Arkansas.

4. Cross Defendant's Motion to Dismiss for lack of personal jurisdiction pursuant to Arkansas Rule of Civil Procedure 12(b)(2) and for improper venue under Rule 12(b)(3) is denied.

5. Cross Defendants will immediately return the fire truck to Alexander pursuant to this Court's Order of Delivery entered on October 25, 2013, and incorporated by reference herein.

IT IS SO ORDERED

_____
HONORABLE TIMOTHY D. FOX
CIRCUIT JUDGE


PREPARED BY:
Matthew D. Campbell (#2009032)
212 Center St., 11th Floor
Little Rock, AR 72201
(501) 396-9246

# PINNACLE LAW FIRM

A PROFESSIONAL LIMITED-LIABILITY COMPANY
212 CENTER ST., 11TH FLOOR
LITTLE ROCK, ARKANSAS 72201

Matthew D. Campbell                                        P: (501) 396-9246
matt@pinnaclelawfirm.com                                   F: (501) 421-0189

November 7, 2013

Hon. Tim Fox, Circuit Judge
Pulaski County Circuit Court, 6th Division
401 W. Markham, Room 210
Little Rock, AR 72201

Re: Order Denying Cross Defendant's Motion to Dismiss

Dear Judge Fox:

Per your instruction, I have submitted a proposed order denying Cross Defendant's Motion to Dismiss for Lack of Personal Jurisdiction based on the forum-selection clause in the lease-purchase agreement. I have provided a copy of the same to Ms. Miller, and she has not objected to the form or substance as of this writing.

If you have any concerns with the proposed order, or if you would like me to change the order in some way, please do not hesitate to contact me.

Sincerely,

Matthew D. Campbell

*Attorney for Cross Defendants*

# Exhibit A



**EXHIBIT**
**A**

# THE MILLER FIRM
### CARLA L. MILLER\*, PLLC
ATTORNEY AT LAW
2226 Cottondale Lane, Suite 200
Little Rock, AR 72202
(501) 454-2972
CarlaMiller.07@comcast.net

\*Licensed in
Arkansas and New York

October 28, 2013

VIA USPS OVERNIGHT DELIVERY
VIA E-MAIL firstgovernment@att.net
VIA FACSIMILE 847-441-5012

Paul Anthony Graver
First Government Lease Co.
PO Box 8331
Northfield, IL 60093

Re: First State Bank v. City of Alexander, et al.; Pulaski Co. Arkansas Circuit No. 60CV-13-3913

Dear Mr. Graver:

Enclosed please find file-marked copies of the Ex-Parte Order of Delivery and Restraining Order entered in the above-mentioned matter by the Honorable Timothy D. Fox, and the Order of Delivery signed by the Circuit Clerk on October 25, 2013.

These orders were issued for good cause shown in the City's *Cross Complaint and Petition for Order of Delivery and Petition for Temporary and Permanent Restraining Order* filed on October 21, 2013. Copies of the Cross Complaint and Summonses are also enclosed. These documents have been delivered to a Process Server for service upon you, as well.

Under the enclosed Court orders, you are required to immediately return possession of the 1999 Freightliner FL80 Firetruck, VIN 1FV6JLCB1XHA71796 to the City of Alexander. You should contact me via e-mail immediately to make arrangements for the return of the Firetruck.

Paul A. Graver
First Government Lease
10/28/13
Page 2 of 2
(Ex-Parte Orders)

_____

   Also under the enclosed orders, you are restrained from harassing the City, its employees, attorneys, agents, elected officials or citizens.

   Furthermore, you will note that Judge Fox has set a hearing for **9:30 a.m. on Monday, November 4, 2013,** in the Circuit Court of Pulaski County, 400 W. Markham, Room 310, Little Rock, AR 72201, to consider whether a preliminary injunction should be entered.  This is the only notice of this hearing you will receive.

                              Sincerely,

                              Carla L. Miller


Enclosures
Cc:    Court File
/cm

ELECTRONICALLY FILED
2013-Oct-25 15:55:15
60CV-13-3913

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

FIRST STATE BANK                                           PLAINTIFF

VS.                          NO. 60CV-13-3913

CITY OF ALEXANDER, ARKANSAS
PAUL ANTHONY GRAVER AND
LANCE DOMINIQUE                                         DEFENDANTS


CITY OF ALEXANDER, ARKANSAS              CROSS COMPLAINANT

VS.

PAUL ANTHONY GRAVER AND
FIRST GOVERNMENT LEASE CO.              CROSS DEFENDANTS

---

## EX-PARTE ORDER OF DELIVERY AND
## RESTRAINING ORDER

---

On this day comes on for hearing, Cross Complainant, City of Alexander, Arkansas (the "City"), by and through its attorney, Carla L. Miller, and from the Cross Complaint of the Plaintiff and the exhibits thereto, the Court finds:

1.     That the City has shown good cause that it will suffer immediate and irreparable injury, loss or damage before Cross Defendants can be heard in opposition.

2.     Cross Defendants have no apparent legal justification for taking possession of the 1999 Freightliner FL80 Firetruck, VIN 1FV6JLCB1XHA71796

1

("Firetruck"), and their continued possession of it is causing the City irreparable harm by depriving the citizens of Alexander of equipment necessary for their health, safety and welfare. These harms have occurred, continue to occur, and will not fully be satisfied with an award of monetary damages. As such, the Court finds that Cross Defendants should not be given further notice before this Order is entered requiring Cross Defendants to immediately return the Firetruck to the City.

3.     The Court finds that the City has a reasonable probability of success on the merits of this action. Based upon the facts in the Cross Complaint, Cross Defendants have wrongfully exercised dominion and control over the Firetruck. Cross Defendants have no legal interest in the Firetruck and the City has a legal right to possess the property. Therefore, the City has shown that it is likely to succeed on the merits of its claims for wrongful repossession - replevin and conversion.

4.     The City is entitled to an Order of Delivery for the immediate possession of the Firetruck as set forth in its Cross Complaint.

5.     That an Order of Delivery shall be forthwith issued and that the sheriff of this county, or of any county in any state where the property may be located, is hereby commanded to take and deliver the Firetruck to the City.

6.     Cross Defendants are hereby enjoined and restrained from doing or attempting to do any act of selling, encumbering, mortgaging, contracting to sell,

or otherwise disposing of, or removing from the jurisdiction of this Court, the Firetruck or any other property, real or personal, belonging to the City.

7.    Cross Defendants are further hereby enjoined and restrained from doing, attempting to do, or threatening to do, any act injuring, mistreating, molesting, or harassing the City, its employees, attorneys, agents, elected officials, or citizens.

8.    The City shall post security in the amount of $ _____ . The Court finds this amount is sufficient to pay any costs and damages Cross Defendants may suffer in the event it is found to have been wrongfully enjoined or restrained.

9.    A hearing shall be held before the Sixth Division of the Circuit Court of Pulaski County, Arkansas, in the Pulaski County Courthouse, in Little Rock, Arkansas, on the __4th__ day of __November 2013__, at __9:30__ o'clock __a__.m., to consider whether to enter a preliminary injunction in this matter. Service of this Order on Cross Defendants shall be sufficient to require Cross Defendants to appear at the time, date and place herein above designated.

10.    That the City is awarded judgment against the Cross Defendants for all costs expended herein and all costs associated with the return of the Firetruck, and reasonable attorneys' fees in the amount of $1,500.

3

IT IS SO ORDERED.

DATED: _10·25·2013_

_____
HONORABLE TIMOTHY D. FOX
CIRCUIT JUDGE


Approved as to form:

_____
Carla L. Miller (2012123)
The Miller Firm
2226 Cottondale Lane, Suite 200
Little Rock, AR  72202
(501) 454-2972
CarlaMiller.07@comcast.net

4

ELECTRONICALLY FILED
2013-Oct-25 15:55:15
60CV-13-3913

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

FIRST STATE BANK                                                    PLAINTIFF

VS.                            NO. 60CV-13-3913

CITY OF ALEXANDER, ARKANSAS
PAUL ANTHONY GRAVER AND
LANCE DOMINIQUE                                              DEFENDANTS


CITY OF ALEXANDER, ARKANSAS            CROSS COMPLAINANT

VS.

PAUL ANTHONY GRAVER AND
FIRST GOVERNMENT LEASE CO.              CROSS DEFENDANTS

---

### ORDER OF DELIVERY

---

TO THE SHERIFF OF PULASKI COUNTY, ARKANSAS
Or the Sheriff of any other county and state where the property may be located:

You are commanded to take from the possession of the Cross Defendants the

following described property:

**1999 Freightliner FL80 Firetruck, VIN 1FV6JLCB1XHA71796**

and deliver same to the City of Alexander, Arkansas pursuant to the Orders of this

Court.

1

WITNESS my hand and seal of this Circuit Court on this ___25___ day of
Oct , 20 13 .

LARRY CRANE, Circuit County Clerk

CIRCUIT CLERK

By _____
Deputy Clerk

Prepared by:

Carla L. Miller (2012123)
The Miller Firm
2226 Cottondale Lane, Suite 200
Little Rock, AR  72202
(501) 454-2972
CarlaMiller.07@comcast.net

2

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT

FIRST STATE BANK V CITY OF ALEXANDER AR ET AL

60CV-13-3913

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

PAUL ANTHONY GRAVER
UNKNOWN
UNKNOWN, UN  00000

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Carla L Miller
2226 Cottondale Lane
Suite 200
Little Rock, AR  72202

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

Address of Clerks Office

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W MARKHAM
LITTLE ROCK, AR  72201

CLERK OF COURT

*M Neppl*

LCLERK Mary Ann Neppl, DC

Date: 10/23/2013

No. 60CV-13-3913 This summons is for PAUL ANTHONY GRAVER (name of Defendant).

## PROOF OF SERVICE

❏ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❏ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❏ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❏ I delivered the summons and complaint to _____[name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❏ Other [specify]:
_____

❏ I was unable to execute service because:
_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____         SHERIFF OF _____ COUNTY, ARKANSAS

                                By: _____
                                [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____          By: _____
                                [Signature of server]

                                _____
                                [Printed name]

Address: _____

_____

Phone: _____

**Subscribed and sworn to before me this date:** _____

_____
Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT**

**FIRST STATE BANK V CITY OF ALEXANDER AR ET AL**

60CV-13-3913

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

First Government Lease Co.
Paul Graver, President
PO Box 8331
Northfield, IL  60093

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Carla L Miller
2226 Cottondale Lane
Suite 200
Little Rock, AR  72202

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

Address of Clerks Office

CLERK OF COURT

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W MARKHAM
LITTLE ROCK, AR  72201

LCLERK Mary Ann Neppl, DC

Date: 10/23/2013

No. 60CV-13-3913 This summons is for First Government Lease Co. (name of Defendant).

## PROOF OF SERVICE

❑ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❑ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❑ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❑ **I delivered the summons and complaint to** _____[name of individual], **an agent authorized by appointment or by law to receive service of summons on behalf of**
_____[name of defendant] on _____[date]; or

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

❑ Other [specify]:
_____

❑ I was unable to execute service because:
_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____        SHERIFF OF _____ COUNTY, ARKANSAS

                             By: _____
                             [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____     By: _____
                          [Signature of server]


                          _____
                          [Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____


_____
Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

ELECTRONICALLY FILED
2013-Oct-21 15:40:05
60CV-13-3913

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

FIRST STATE BANK                                          PLAINTIFF

VS.                          NO. 60CV-13-3913

CITY OF ALEXANDER, ARKANSAS
PAUL ANTHONY GRAVER AND
LANCE DOMINIQUE                                          DEFENDANTS


CITY OF ALEXANDER, ARKANSAS                    CROSS COMPLAINANT

VS.

PAUL ANTHONY GRAVER AND
FIRST GOVERNMENT LEASE CO.                     CROSS DEFENDANTS

---

## CROSS COMPLAINT AND PETITION FOR ORDER OF DELIVERY AND PETITION FOR TEMPORARY AND PERMANENT RESTRAINING ORDER

---

### I.      Parties, Jurisdiction & Venue

Comes the City of Alexander, by and through its attorney, Carla L. Miller, and for its Cross Complaint against the Cross Defendants Paul Anthony Graver and First Government Lease Co. States:

1.      The Cross Complainant ("Alexander" or the "City") is a city of the second class existing under Arkansas law, with its city hall located in Pulaski County, Arkansas.

1

2.     Upon information and belief, Cross Defendant, First Government Lease Co. ("First Government") is an unincorporated Illinois business entity with its principal place of business located at PO Box 8331, Northfield, IL 60093. First Government is not registered to do business in Arkansas.

3.     Upon information and belief, Cross Defendant, Paul Anthony Graver ("Graver"), is an individual who resides in or about Chicago, Illinois and holds himself out as the President of First Government.

4.     The actions complained of herein occurred in Pulaski County, Arkansas. This Court has jurisdiction over the parties and the subject matter hereof, and venue properly lies in Pulaski County.

## II.    Factual Background

5.     On or about October 11, 2013, Cross Defendant Graver and/or First Government, by and through an agent, took possession of One 1999 Freightliner, FL80 Firetruck, VIN 1FV6JLCB1XHA71796   ("Firetruck") from City of Alexander by purporting to have authority from First State Bank, Waynoka, Oklahoma, the Plaintiff herein, to repossess the vehicle. See Exhibit A attached (State Police Incident Report).

6.     In addition to taking possession of the Firetruck, the agent of Cross Defendants denied the City employees access to the Firetruck to retrieve

2

equipment necessary for the function of the City's fire department, some of which belongs to the U.S. Government, and none of which is subject to any security lien.

7.     First State Bank did not authorize Graver or First Government to take any action against or with the City of Alexander on its behalf.  See Exhibit B, Affidavit of Michael George, President of First State Bank.

8.     The Firetruck is security for a Lease Purchase Agreement assigned to Shattuck Bank, Shattuck Oklahoma, payments for which are not in default.  See Exhibit C attached hereto.

9.     The Firetruck is not security for, nor is it in any way related to, any indebtedness owed to First State Bank.

10.     Defendants First Government and Paul Graver have no security or any other interest in the Firetruck that was removed from the possession of the City on October 11, 2013.  See Exhibit D, Arkansas Title Registration Report.

11.     Since October 11, 2013, Cross Defendant Graver has continually harassed employees of the City by telephoning and leaving voice mail messages that are verbally abusive to City employees elected officials.   Graver has furthermore falsely represented that he speaks on behalf of First State Bank, and threatened additional action against the City.  See Exhibit B.

3

## COUNT I
## UNLAWFUL REPOSSESSION - REPLEVIN

12.     Plaintiff re-states and realleges paragraphs 1-11 herein as if set out word by word.

13.     Cross Defendants  First Government and Graver have no security interest in the Firetruck, and as such neither is a secured party entitled to repossess collateral without judicial process under Ark. Code Ann. § 4-9-609.

14.     Defendants First Government and Graver acted without any legal authority to take possession of the Firetruck.

15.     The "repossession paperwork" presented the Arkansas State Police was falsified and therefore fraudulent. See Exhibits A, B, C and D.

16.     The Firetruck is not the subject of any pending litigation.

17.     The Firetruck is not security for any indebtedness that is currently in default.

18.     Defendants First Government and Graver provided no notice to the City of any authority they possess to exercise any security interest or right to take possession of the Firetruck.

19.     City employees, specifically, the firefighters in possession of the Firetruck at the time it was taken by the Cross Defendants, enlisted the aid of the Arkansas State Police when Cross Defendants First Government and Graver attempted to take the Firetruck from the employees' possession.   The resulting

4

incident breached the peace and therefore should have terminated any alleged repossession attempt. See Exhibit A.

20.     The actions of the Cross Defendants deprive the citizens of Alexander of equipment necessary for their health, safety and welfare and create the risk of irreparable harm if the Firetruck is not immediately returned.

21.     Cross Defendant has wrongfully repossessed the Firetruck and the City of Alexander is entitled to the immediate return of its property, damages, including punitive damages to deter such wrongful actions, and attorneys fees.

22.     In the alternative, the City is entitled to replevin of its property pursuant to Ark. Code Ann. § 18-60-801, et.seq.

## COUNT II
## CONVERSION

23.     Plaintiff restates and realleges paragraphs 1-22 as if set out word by word.

24.     The Firetruck is a moveable item of personal property owned by the City.

25.     Cross Defendants First Government and Graver have no security interest in the Firetruck, and have obtained no Court Order of Possession or any other legal authority to exercise dominion over the Firetruck.  As such, by taking possession of the Firetruck from the City Employees, Cross Defendants acquired possession of the Firetruck in an unauthorized manner.

26.    The "repossession paperwork" presented to the Arkansas State Police was falsified and therefore fraudulent.  See Exhibits A, B, C and D.

27.    Cross Defendants First Government and Graver removed the Firetruck from Pulaski County, Arkansas to an unnamed location with the intent to exercise control over it.

28.    Defendants First Government and Graver transferred possession of the Firetruck from the City to themselves without authority.

29.    Defendants First Government and Graver continue to withhold **possession of the Firetruck from the City with no legal right to do so.**

30.    Defendants First Government and Graver assert ownership over the Firetruck  that is inconsistent with the City's Rights.

31.    The actions of the Cross Defendants First Government and Graver constitute distinct acts of dominion and control over the Firetruck that is inconsistent with the City's rights.

32.    Cross Defendants, having unlawfully obtained possession of the Firetruck are in unlawful possession of property belonging to the Plaintiff.

33.    Cross Defendants' actions constitute conversion of the City's property, and the City is entitled to the immediate return of the Firetruck.

34.     The actions of the Cross Defendants deprive the citizens of Alexander of equipment necessary for their health, safety and welfare and create the risk of irreparable harm if the Firetruck is not immediately returned.

35.     The City is entitled to damages, including punitive damages, and attorney's fees which result from the actions of Cross Defendants in unlawfully taking possession of and concealing the Firetruck, and removing the Firetruck from the jurisdiction of this Court.

36.     The City reserves the right to make a claim under Ark. Code Ann. §18-60-803 and §16-22-309 for damages and attorney's fees which result from any action by Defendant in concealing the vehicle, interfering with the enforcement of an Order of Delivery, removing the vehicle from the jurisdiction of this Court, asserting frivolous defenses or refusing to disclose the vehicle's location.

37.     The City is entitled to an Order for the immediate return of possession of the Firetruck, to damages, including punitive damages, and attorney's fees for conversion of the City's property.

## COUNT III
## VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT

38.     Cross Claimant restates and realleges Paragraphs 1-37, as if set out word by word.

7

39.   Cross Defendants, by their agent, presented false and/or misleading documentation to the City's employees and the Arkansas State Police to facilitate taking possession of the Firetruck.  See Exhibits A, B, and C.

40.   Cross Defendants' actions constitute unconscionable, false, or deceptive act in business, commerce or trade in violation of Ark. Code Ann. § 4-88-107(a)(10), the Arkansas Deceptive Trade Practices Act.

41.   The actions of the Cross Defendants deprive the citizens of Alexander of equipment necessary for their health, safety and welfare and create the risk of irreparable harm if the Firetruck is not immediately returned.

42.   The City is entitled to damages, including punitive damages, and attorney's fees as a result of the actions of Cross Defendants.

43.   Cross Complainant is entitled to an Order of Delivery for the immediate return of the Firetruck, for damages, including punitive damages, and attorney's fees in connection with Cross Defendant's wrongful actions.

## COUNT IV
## TEMPORARY RESTRAINING ORDER

44.   Cross Claimant restates and realleges Paragraphs 1-43, as if set out word by word.

45.   Cross Defendants have unlawfully taken possession of the Firetruck, which is vital to the health, safety and welfare of its citizens.

8

46.   Cross Defendant Graver continues to harass the City and its employees by using verbally abusive language in conversations and voice mail messages; and by falsely purporting to speak on behalf of First State Bank.  See Exhibit B.

47.   By being deprived of the use of the Firetruck, the City will suffer irreparable harm in the ability to manage emergencies that occur within the City.

48.   The City is irreparably harmed by Cross Defendant Graver's harassment by being forced to divert its personnel and resources to dealing with Graver rather than tending to the business of the City.

49.   Cross Defendants have no interest in the City of Alexander, nor any property owned by the City of Alexander; and are in unlawful possession of the City's property.  See Exhibits A, B, C, and D.

50.   Cross Defendants will suffer no harm resulting from a temporary restraining order.

51.   The balance between the foregoing irreparable harm and any injury that may be suffered by the Cross Defendant if the temporary restraining order is granted weighs heavily in favor of the City.

52.   The City is likely to succeed on the merits of its cross complaint.

53.   The public interest weighs in favor of the entry of a temporary restraining order in favor of the City, because, as stated above, Cross Defendants

9

have no interest in the City or any property owned by the City, and no basis upon which to exercise any authority over the City or any property owned by the City.

54.    Cross Complainant reserves the right to amend this cross complaint.

**WHEREFORE**, Cross Complainant prays for an Emergency ex-parte Order of Delivery of the Firetruck; or in the alternative, for an immediate hearing for the Defendant to show cause as to why an Order of Delivery should not immediately be issued; for judgment for the recovery of the Firetruck; for a temporary and permanent restraining order restraining Cross Defendants from harassing the City **and its employees, and** attempting any legal, collection, repossession or other action against the City; for damages, including punitive damages, and attorney's fees; for its costs herein expended, and for all other just and proper relief.

Carla L. Miller (2012123)
The Miller Firm
2226 Cottondale Lane, Suite 200
Little Rock, AR  72202
(501) 454-2972
CarlaMiller.07@comcast.net

10

## CERTIFICATE OF SERVICE

I, Carla L. Miller, do hereby certify that the foregoing pleading / document has been served upon the following parties and/or attorneys of record by the following methods:

| | |
|---|---|
| _XX__ | E-mail Transmission |
| _____ | Facsimile Transmission |
| _____ | The Court's ECF System |
| _____ | Hand Delivery |
| _____ | First Class Mail, Postage Prepaid |
| _____ | Other: _____ |

Christopher L. Travis
**Gill Ragon Owen, P.A.**
425 West Capitol Avenue, Suite 3801
Little Rock, AR 72201
travis@gill-law.com

on this 21st day of October, 2013.

_____
Carla L. Miller

11



## Arkansas Uniform Incident Report

ELECTRONICALLY FILED
2013-Oct-21  15:40:05
60CV-13-3913

Incident Report Number
A-1013-2301

| | | | |
|---|---|---|---|
| **S U M M A R Y** | Type Incident: ALEXANDER FIRE TRUCK STOP | Incident Date: 10/11/2013 | Incident Time: 01:20 PM |
| | Call Location: I-440 EAST FROM I-30 | Call Date: 10/11/2013 | Call Time: 12:59 PM |
| | Incident Address: 163 MILE MARKER ON INTERSTATE 40 EAST | Incident City: NORTH LITTLE ROCK | Incident State: AR    Incident Zip Code: 72117 |
| | Number of Subjects: 1 | Number of Vehicles: 1 | Unit Assigned: A7 |

### SUBJECT 1

The Subject is: **OPERATOR**

Subject SSN: 999999999

| | | |
|---|---|---|
| Subject - Last Name: ALLEN | Subject - First Name: RANDY | Subject - MI: T |
| | Subject - Suffix: | Subject - Telephone # |

| | | | |
|---|---|---|---|
| Subject - Address: 3445 SHAKER TOWN | Subject - City: ANTIOCH | Subject - State: TN | Subject - Zip Code: 37013 |
| Subject - Driver License Number: 063151815 | Subject - DL State: TN  Subject - DL Endorsements: NONE | Subject - DL Class: D | DL Restrictions: NONE |
| Subject - DOB: 2/16/1968 | Subject - Race: AFRICAN AMERICAN  Subject - Sex: MALE | Subject - Height: 5'10"  Subject - Weight: 210 lbs. | Subject - Hair Color: BLACK  Subject - Eye Color: BROWN |
| Subject - Employer: N/A | | | Subject - Work Number: (999)-999-9999 |
| Subject - Employer Address: N/A | Subject - Employer City: NOT AVAILABLE | Employer State: TN | Subject - Employer Zip Code: 99999 |

Injury Transported: ☐ YES  ☒ NO       TRANSPORTED BY

HOSPITAL NAME                              HOSPITAL CITY                              HOSPITAL STAT

Subject - Additional Information: REPO OPERATOR OF THE FIRETRUCK

### VEHICLE 1

Vehicle Class: **SUBJECT OF REPORT**

| | | | |
|---|---|---|---|
| Year: 2013 | Make: NISSAN | Model: ALTIMA | Plate - Year: 2014  Plate - State: TENNESSEE |
| Plate - Number: L1135F | Vehicle - Body: 4 DOOR | Vehicle - Color: BLACK | Vehicle Identification Number: 1N4AL3AP2DN549934 |

Vehicle Towed: ☐ YES   ☒ NO

NAME OF TOWING SERVI                      ADDRESS VEHICLE REMOVED

CITY VEHICLE REMOVED    STATE VEHICLE REMOVED    ZIP VEHICLE REMOVED

Remarks: TRAIL VEHICLE

### Narrative

ON FRIDAY 10/11/13 AT APPROXIMATELY 12:59 PM, TROOP A COMMUNICATIONS BROADCASTED THAT AN ALEXANDER FIRE TRUCK HAD BEEN TAKEN BY TWO BLACK MALES AND THE ASSISTANT FIRE CHIEF WAS FOLLOWING THE TRUCK ON INTERSTATE 440 EAST FROM INTERSTATE 30. TROOP A COMMUNICATIONS THEN ADVISED THAT THE TWO BLACK MALES CLAIMED TO BE REPOSSESSING THE FIRE TRUCK BUT DID NOT SHOW ANY PAPERWORK TO THE FIRE DEPARTMENT.

MYSELF AND TRP. CLEYTON MCDONALD PROCEEDED TO THE AREA. TRP. MCDONALD SAID HE WAS BEHIND THE FIRE TRUCK ON INTERSTATE 440 EAST, TAKING THE INTERSTATE 40 EAST EXIT. I TOLD HIM TO WAIT UNTIL I GOT BEHIND HIM BEFORE INITIATING A STOP. I CAUGHT UP WITH TRP. MCDONALD AROUND THE 163 MILE MARKER ON INTERSTATE 40 EAST. BEING THAT I'D NEVER HEARD OF A FIRE TRUCK BEING REPOSSESSED, I TOLD TRP. MC DONALD THAT WE WOULD CONDUCT A FELONY STOP FOR OFFICER SAFETY.

TRP. MCDONALD INITIATED A STOP AND THE FIRE TRUCK PULLED TO THE RIGHT SHOULDER. I ORDERED THE DRIVER (RANDY ALLEN) OUT AT GUNPOINT. I HANDCUFFED HIM AFTER I WALKED HIM BACK TO MY PATROL CAR. I ADVISED HIM HE WAS NOT UNDER ARREST BUT I WAS DETAINING HIM UNTIL WE FIGURED OUT WHAT WAS GOING ON. I NOTICED A BULGE ON HIS RIGHT HIP  I LIFTED HIS SHIRT AND DISCOVERED A HIGHPOINT 9MM HANDGUN (SERIAL# P1534234). I REMOVED THE HANDGUN AND TWO KNIFES FROM HIM. MR ALLEN STATED HE WAS REPOSSESSING THE FIRE TRUCK AND HE HAD PAPERWORK IN THE BLACK NISSAN ALTIMA (TN LPN:L1135F) THAT WAS BEHIND US. I PLACED MR. ALLEN IN THE REAR OF TRP. MC DONALD'S PATROL CAR AND ONCE AGAIN TOLD HIM HE WAS NOT UNDER ARREST. TRP. MC DONALD AND I CHECKED THE FIRE TRUCK FOR MORE OCCUPANTS BUT IT WAS EMPTY.

I WAS GIVEN THE REPOSSESSION PAPERWORK. THE PAPERWORK LOOKED LEGITIMATE AND HAD LETTERS FROM FIRST STATE BANK TO MAKE THE REPOSSESSION. IT ALSO INCLUDED A COPY OF THE TITLE TO THE FIRE TRUCK. ONCE I LOOKED OVER THE PAPERWORK AND FELT LIKE IT WAS ACCURATE, I TOLD TRP. MC DONALD TO REMOVE MR. ALLEN

**Exhibit A**

**Narrative**

FROM HIS PATROL CAR AND TAKE THE HANDCUFFS OFF OF HIM.

ASSISTANT FIRE CHIEF WILLIAM BLANKENSHIP WAS ON SCENE AND I ALLOWED HIM TO REVIEW THE REPOSSESSION PAPERWORK. CHIEF BLANKENSHIP DID STATE THEY WERE IN A LEGAL BATTLE WITH THE FINANCE COMPANY.  CHIEF BLANKENSHIP ALSO SAID THAT THEY HAD ALREADY AGREED TO ALLOW THE REPOSSESSION COMPANY TO TAKE THE FIRE TRUCK BUT THEY WERE UPSET BECAUSE IT HAD THEIR EQUIPMENT ON THE TRUCK AND THE REPOSSESSION COMPANY WAS SUPPOSE TO COME BACK TO THE FIRE DEPARTMENT TO ALLOW THE FIREMEN TO UNLOAD THEIR EQUIPMENT.  I ASKED THE REPOSSESSION COMPANY IF THEY WOULD ALLOW THE FIREMEN TO REMOVE THEIR EQUIPMENT AND THEY AGREED.

IN THE MEANTIME, MAYOR MICHELLE HOBBS CALLED AND WANTED TO SPEAK TO ME.  I TOLD MAYOR HOBBS THAT THE REPOSSESSION PAPERWORK LOOKED ACCURATE AND THIS WAS A CIVIL MATTER BETWEEN THE CITY AND THEIR FINANCE COMPANY.  I TOLD HER THAT I DIDN'T FEEL THAT ANY CRIMINAL VIOLATIONS HAD BEEN COMMITTED.

ONCE THE FIREMEN REMOVED THEIR EQUIPMENT, I GAVE MR. ALLEN HIS LICENSE, HANDGUN AND TWO KNIVES BACK.  THE FIRE TRUCK WAS TAKEN TO A REPO LOT IN NASHVILLE, TENNESSEE.

OWNER INFORMATION ON THE BLACK NISSAN ALTIMA:

BURGNER ENTERPRISE INCORPORATED
THRIFTY CAR RENTAL
121 BRILEY PARKWAY
NASHVILLE, TN 37217

| Rank | Officer - Last Name | | Officer - First Name | | Officer - MI | Officer - Suffix |
|---|---|---|---|---|---|---|
| SGT | LANN | | WILLIAM | | B | |
| Officer - Signature | | | Officer - Department | | | |
| *Sgt. William B. Lann #454* | | | ASP - TROOP A | | | |
| | | | Officer - Badge Number | | | |
| | | | 0454 | | | |
| Rank | Supervisor - Last Name | | Supervisor - First Name | | Supervisor - MI | Supervisor - Suffix |
| SGT | AGEE | | ERIC | | | |
| Supervisor - Signature | | | Supervisor - Department | | | |
| *SGT. E.D.Agee #21* | | | ASP - TROOP A | | | |
| | | | Supervisor - Badge Number | | | |
| | | | 21 | | | |

ELECTRONICALLY FILED
2013-Oct-21 15:40:05
60CV-13-3913

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

FIRST STATE BANK                                    PLAINTIFF

VS.                          NO. 60CV-13-3913

CITY OF ALEXANDER, ARKANSAS
PAUL ANTHONY GRAVER AND
LANCE DOMINIQUE                                     DEFENDANTS

---

### AFFIDAVIT

---

STATE OF OKLAHOMA

COUNTY OF _Woods_

The undersigned, being duly sworn, deposes and states:

1. My name is Michael George and I am President of First State Bank, Waynoka, Oklahoma ("First State Bank").

2. First State Bank is the assignee of indebtedness owed by the City of Alexander, Arkansas which is the subject of the above captioned litigation.

3. First State Bank has had no communication with Paul Anthony Graver, First Government Lease Co., or Lance Dominique since the before the above-caption matter was filed on or about October 2, 2013.

4. First State Bank did not authorize Paul Anthony Graver, First Government Lease Co., or Lance Dominique to take any action against or with the City of Alexander, including, but not limited to, attempting to collect any money, taking possession of any vehicle, personal property, or real property, or negotiating any settlement, in connection with the indebtedness that is the subject of this suit or otherwise.

1

**Exhibit B**

5. Further, affiant sayeth not.

_Michael George (signature)_
Michael George

Subscribed and sworn to this ___18th___ day of October, 2013.

_Machelle K Zook (signature)_
Notary Public

My commission expires

___8/30/2014___

MACHELLE K. ZOOK
NOTARY PUBLIC
COMM # 10007201
EXPIRES 08/30/14
IN AND FOR
STATE OF OKLAHOMA
WOODS COUNTY

2

ELECTRONICALLY FILED
2013-Oct-21  15:40:05
60CV-13-3913

# *First Government Lease Co.*

## One-Page Lease To Own Financing

PO Box 8331                    Telephone 866.793.9670          www.firstgovernment.com
Northfield, IL 60093           Telefax 847.446.8377            info@firstgovernment.com

### Assignment Of A Undivided Interest In A Municipal Lease Purchase Agreement

Under the Municipal Lease Purchase Agreement dated 5/15/08 ("Lease") between First
Government Lease Co. ("Lessor") and City of Alexander ("Lessee"), Lessor may assign all of
its rights, title and interest in and to the Lease, the equipment subject to the Lease
("Equipment"), any documents executed with respect to the Lease, and any security interest in
the Lease and the Equipment (collectively, "Lessor's Rights"). Lessor has assigned to the
Municipal Lease Purchase Agreement Purchaser ("Purchaser") all of its interest in the
Lessor's Rights. Purchaser in consideration of the payment of $30,397.79 ("Principal
Amount") hereby receives an undivided 100% interest in the Lessor's Rights*. Lessor
warrants that as of this date no Event of Default (as defined in the Lease) has occurred under
the Lease.

Lessor agrees to act as Assignee's agent with respect to the performance of all ministerial
matters in connection with the Lease, including giving and receiving notices, making required
filings and receiving payments from Lessee and disbursing Assignee's pro rate portion thereof
to Assignee. (Assignees shall indemnify Lessor against all claims arising in connection with
Lessor's actions as agent for Assignee.) If there is an Event of Default, at Assignee's request
and solely as its agent, Lessor shall take all steps that it believes, in its sole discretion, are
appropriate to enforce Assignee's rights under the Lease. If there is an Event of Default and
Lessor is requested to act on Assignee's behalf, Lessor shall be entitled to deduct from any
payments received from Lessee an amount equal to the costs, including reasonable attorneys'
fees, it incurs in enforcing Assignee's rights.

This Assignment shall inure to the benefit of and be finding upon Lessor and Assignee and
their respective successors and assigns.

- 38 remaining payments of $884.00 starting 5/1/12.

Purchaser                                     First Government Lease Co.

By:                                           By:
                                              Officer

Date: 4/5/12

**Exhibit C**

JUN-25-2000 09:49  FROM:                    TO:15014555531        P.3/3

# First Government Lease Co.

### Lease Purchase Agreement

Lessor:
First Government Lease Co.
Box 8331
Northfield, IL 60093-8331
866.793.9670 or 847.441.5684
Fax 847.441.5012
info@firstgovernment.com

Lessee:
Name: _CITY OF ALEXANDER_
Address: _P.O. Box 610_
City: _ALEXANDER_   State: _AR_  Zip: _72002_
Phone: _501·350·3957_   Fax _501·455·5531_

Description of Equipment: _1999 FREIGHTLINER MODEL FL80_  VIN _1FUYLCB1XHA_
                                                                      _71796_
Quantity: _1_   Unit Price: _50,000_   Total: _50000_

Total Cash Price  _$50,000_     2008 2B3KA43N18H247390   Number of Pmts. (Term)  _84 MONTHS_
Less Down Pmt.    _—_            2008 2B3KA43H          Amt. of each Pmt.  _$884_
Net               _$50,000_       2B5535                Lease Beginning Date  _5/15/08_
Interest & A.P.R.  _$24325_                              First Payment Due Date  _7/1/08_
Total Lease Price  _$74325_

Lessor hereby leases to lessee that certain equipment described above, subject to the terms, provisions, conditions and agreements of this lease hereinafter set forth:
1. Said equipment is leased beginning and for the Term specified above
2. Lessee agrees to pay lessor one monthly payment specified above on the Lease Beginning Date and equal successive monthly payments until an amount equal to the total lease price specified above has been paid. Any amount due under this Lease which is past due more than ten (10) days shall be subject to a multiple time late payment charge of $100 per occurance plus an amount equal to ten percent (10%) of the amount past due.
3. Lessee may purchase said equipment at any time during the lease term for the total lease price, less any payment already made and also less a portion of the lease service fee according to a schedule furnished on request by lessor to lessee, shall constitute purchase of the equipment. Also payment of all the monthly payments when due shall automatically constitute purchase of said equipment effective on the last day of the lease period.
4. Lessee may cancel this Lease Purchase Agreement only with Lessor's written approval at any time within, the first 90 days of lease by giving written notice to Lessor and returning said equipment to Lessor, or to its order, in good condition as received, less normal wear, tear and depreciation. Upon such proper return, Lessee shall have no obligation to make payments coming due after the notice period.
5. Lessee, at its own cost and expense, shall keep the equipment in good repair, condition and working order and shall furnish any and all parts, mechanism and devices required to keep the equipment in good mechanical and working order. Lessee hereby assumes and shall bear the entire risk of loss and damage to the equipment from any and every cause whatsoever. No loss or damage to the equipment or any part thereof, shall impair any obligation of Lessee under this lease which shall continue in full force and effect. Lessee hereby appoints Lessor as Lessee's attorney in fact with full power to do all things to protect and further Lessee's and Lessor's agreement as set forth herein, including but not limited to, signing and filing UCC's, title applications and taking any other actions as Lessor deems reasonable and necessary  Lessee is obligated within 60 days of the Lease Beginning Date to provide a original duplicate title to Lessor, failing to provide a duplicate title within 60 days of Lease Beginning Date is an event of default.
6. If Lessee with regard to any item or items of equipment fails to pay any rent or other amount herein provided with 60 days after the same is due and payable, or if Lessee with regard to any item or items of equipment fails to observe, keep or perform any other provision of this lease required to be observed, kept or performed by Lessee, Lessor shall have the right to exercise any one or more of the following remedies.  a  To declare the entire amount of rent hereunder immediately due and payable as to any or all items of equipment, without notice or demand to Lessee. b. To sue for and recover all rents, and other payments then accrued or thereafter accruing, with respect to any or all items of equipment. c. To take possession of any or all items of equipment without demand or notice, wherever same may be located, without any court order or other process law. d. To terminate this lease as to any or all items of equipment. e. To pursue any other remedy at law or in equity, notwithstanding any said repossession, or any other action which Lessor may take, Lessee shall be and remain liable for the full performance of all obligations on the part of Lessee to be performed under this lease. f. Lessee further agrees to pay all attorneys' fees incurred by Lessor in enforcing Lessor's rights under this agreement. All such remedies are cumulative, and may be exercised concurrently or separately.
7. Lessee intends to do all things lawful within its power to obtain and maintain funds from which payments may be made, including making provision for such payments to the extent necessary in each periodic budget submitted and adopted in accordance with applicable provisions of state and local law, to have such portion of the budget approved and to exhaust all available reviews and appeals in the event such portion of the budget is not approved. Lessee reasonably believes that legally available funds in an amount sufficient to make all Lease Payments during the term can be obtained. After a nonappropriation, the Lessee may not use other property or equipment to perform the same, or substantially similar, services for a period of one year.
8. Upon commencement of the Term, title to the equipment shall pass to Lessee from vendor or supplier. Lessee hereby grants a security interest in the equipment described herein, and the proceeds thereof to Lessor.
9. Lessee agrees to bring any judicial action arising directly or indirectly in connection with this agreement or any transaction covered hereby only in Courts located within Cook County, IL. Lessee also consents and submits to the jurisdiction of any State or Federal Court located within Cook County, IL. The choice of law shall be IL.
10. I certify that I am duly authorized to act within the powers of my office by executing this Lease Agreement, and the equipment being financed is essential to its governments mission.
In witness whereof, the parties hereto have executed this lease this _15_ day of _MAY_ 20 _08_
By _____        _____   _MAYOR SHIRLEY JOHNSON_
First Government Lease Co.    (Lessee Signature)              (Print Signature and Title)

As Counsel for Lessee, I acknowledge that I have reviewed this Lease Purchase Agreement, the extract of any enabling minutes, and all necessary proceedings taken by the Lessee to authorize and execute this Lease Purchase Agreement, and therefor, I am of the opinion:  a. The lessee is a duly constituted public corporation and political subdivision of the State referred to above, and  b. This Lease Purchase Agreement has been duly authorized, executed and delivered by an authorized representative of the Lessee, and is enforceable against the Lessee in accordance with its terms and conditions, and  c. this Lease Purchase Agreement is a legal, valid and binding obligation of the Lessee.

_____          _Patrick Duval  INDEF_   _PATRICK DUVAL_
(Counsel for Lessee)           (Print Signature and Title)



# Arkansas Interactive Title Registration and Lien Report Summary

Fri Oct 18 11:47:47 CDT 2013

### INFORMATION NETWORK OF ARKANSAS SUBSCRIPTION SERVICE

## Arkansas ITRL Summary

### Vehicle Information

| | | | | | | |
|---|---|---|---|---|---|---|
| Type: | TK | Color: | RED | Purchase Date: | 1999-05-25 | |
| Year: | 1999 | Make: | FREIGHTLINER | Model: | F80 | |
| VIN: | 1FV5JLCB1XHA71796 | No. of Cylinders: | 6 | Weight: | 12393 | |
| Dismantled: | | Stop Process: | | Stop Process Date: | 1899-12-30 | |

### Registration Information

| | | | |
|---|---|---|---|
| License No.: | X12510 | Inv. Type: | City / County Truck or Trailer |
| Decal No.: | | Expiration Date: | 0001-01-01 |
| Registration Status: | Title Issued | | |

### Owner Information

WOODLAND HILLS VOLUNTEER FIRE DEPARTMENT

PO BOX 87
ALEXANDER AR 72002

### Title Information

| | | | | | |
|---|---|---|---|---|---|
| Title Brand: | | Odometer Reading | 0 | Odometer Code: | (4) Exempt |
| Title No.: | 99910609697 | Date Issued: | 2006-03-13 | | |
| Prev. Title No. | 999403F3497 | Pr. Title Info | C | Pr Title ST | AR |

| Title Lien 1: | GOVERNMENT CAPITAL
345 MIRON DRIVE
SOUTHLAKE TX 76092 | |
|---|---|---|
| Contract Date: | 2002-07-10 | Release Date: | 2006-03-13 |

**Exhibit D**

| Title Lien 2. | | MARQUETTE BANK | | |
| | | 10000 WEST 151ST STREET | | |
| | | ORLAND IL 60462 | | |
| Contract Date. | 2002-06-28 | Release Date | 0001-01-01 |
| Title Lien 3. | | | |
| Contract Date | | Release Date | |
| Title Lien 4 | | | |
| Contract Date | | Release Date | |

Use the print function in your browser to print this record.

Records are not stored. You will be charged $1.50 for each new search.

Search Again·

Order Certified Copy.

* The following parameters were used for this search. reg-whs-1FV6JLD81UHV717RtLowName=one tom

If you are having trouble retrieving your results, please fill out a trouble so-m form

Carla L. Miller
Attorney at Law
The Miller Firm
2226 Cottondale Lane, Suite 200
Little Rock, AR  72202
501-454-2972
carlamiller.07@comcast.net
www.TheMillerFirm.net

*Admitted in Arkansas and New York

Like us on Facebook:  www.facebook.com/CarlaLMillerPllc

Follow us on Twitter:  www.twitter.com/@AttorneyIn12

This e-mail message and any attachments contain confidential information that may be legally privileged. If you are not the intended recipient, you must not review, retransmit, convert to hard copy, copy, use or disseminate this e-mail or any attachments to it. If you have received this e-mail in error, please immediately notify us by return e-mail or by telephone at 501-454-2972 and delete this e-mail. Please note that if this e-mail contains a forwarded message or is a reply to a prior message, some or all of the contents of this message or any attachments may not have been produced by the above sender. Receipt of e-mail does not establish an attorney-client relationship.  FAIR DEBT COLLECTION PRACTICES ACT NOTICE  A portion of this firm's practice involves the collection of debts  if you are a debtor, anything you say or communicate by e-mail or other means can be used for that purpose

ELECTRONICALLY FILED
2013-Oct-31 16:31:11
60CV-13-3913

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
SIXTH DIVISION

FIRST STATE BANK                                                      PLAINTIFF

vs.                             Case No. 60CV-13-3913

CITY OF ALEXANDER, ARKANSAS;                              DEFENDANTS
PAUL ANTHONY GRAVER; AND
LANCE DOMINIQUE


CITY OF ALEXANDER, ARKANSAS                        CROSS-COMPLAINANT

vs.

PAUL ANTHONY GRAVER AND                             CROSS-DEFENDANTS
FIRST GOVERNMENT LEASE CO.


### CROSS-DEFENDANTS' PROTECTIVE ANSWER TO CROSS COMPLAINT AND PETITION FOR RESTRAINING ORDER & CROSS-DEFENDANTS' AFFIRMATIVE DEFENSES PURSUANT TO ARK. R. CIV. P. 12(b)

COME NOW the Cross-Defendants, Paul Anthony Graver and First Government Lease Co., by and through their attorney Matthew D. Campbell of Pinnacle Law Firm, PLLC, and for their Protective Answer to Cross-Complainant's Cross Complaint and Petition for Restraining Order & Cross-Defendants' Affirmative Defenses Pursuant to Arkansas Rule of Civil Procedure 12(b), state:

1. Cross-Defendants admit the allegations in paragraph 1 of the Cross-Complaint.

2. Cross-Defendants admit the allegations in paragraph 2 of the Cross-Complaint.

3. Cross-Defendants admit the allegations in paragraph 3 of the Cross-Complaint.

4. Cross-Defendants admit that the actions complained of occurred, at least in part, in Pulaski County, and that this Court has subject-matter jurisdiction over the parties; Cross-Defendants specifically deny that this Court has personal jurisdiction over the parties or that venue is proper in Pulaski County.

5. Cross-Defendants admit that they took possession of one 1999 Freightliner FL80 fire truck, VIN 1FV6JLCB1XHA71796, ("the fire truck") from the Cross-Complainant City of Alexander ("Alexander") on or about October 11, 2013; Cross-Defendants specifically deny that the repossession of the fire truck was done by purporting to have authority from First State Bank of Waynoka, Oklahoma.

6. Cross-Defendants specifically deny that they or their agent, upon taking possession of the fire truck, denied Alexander access to the fire truck to retrieve equipment.

7. Cross-Defendants admit that First State Bank did not authorize Cross-Defendants to take possession of the fire truck; Cross-Defendants specifically deny that this fact has any relevance to the instant matter, as First State Bank has no ownership or possessory interest in the fire truck.

8. Cross-Defendants deny that, at the time they took possession of the fire truck, the Lease Purchase Agreement for which the fire truck was security was assigned to "Shattuck Bank;" pleading in the affirmative, Cross-Defendants assert that, on the day prior to taking possession of the fire truck, the Lease Purchase Agreement was purchased by Cross-Defendants from Shattuck National Bank. *See* Exhibit 1 attached hereto.

2

9.  Cross-Defendants admit the allegations in paragraph 9 of the Cross-Complaint; pleading
    affirmatively, Cross-Defendants deny that the allegations in paragraph 9 are relevant to the
    instant action.

10. Cross-Defendants deny the allegations in paragraph 10 of the Cross-Complaint.

11. Cross-Defendants deny the allegations in paragraph 11 of the Cross-Complaint.

## CROSS-COMPLAINANT'S COUNT I

12. Cross-Defendants restate and realleage their admissions, denials, and affirmative pleadings in
    paragraphs 1-11 as if set out fully herein.

13. Cross-Defendants deny the allegations in paragraph 13 of the Cross-Complaint.

14. Cross-Defendants deny the allegations in paragraph 14 of the Cross-Complaint.

15. Cross-Defendants deny the allegations in paragraph 15 of the Cross-Complaint; pleading
    affirmatively, Cross-Defendants assert that none of the Exhibits attached to Alexander's
    Cross-Complaint purport to be the "repossession paperwork" that Alexander alleges was
    fraudulent.

16. Cross-Defendants deny the allegations in paragraph 16 of the Cross-Complaint; pleading
    affirmatively, Cross-Defendants assert that the fire truck is the subject of litigation that is
    currently pending the Circuit Court of Cook County, Illinois, Municipal Department, 2nd
    District, in case number 13M202218, which was filed on October 11, 2013. *See* Exhibit 2
    attached hereto.

17. Cross-Defendants deny the allegations in paragraph 17 of the Cross-Complaint.

18. Cross-Defendants deny the allegations in paragraph 18 of the Cross-Complaint; pleading affirmatively, Cross-Defendants assert that Alexander is misleading the Court with this statement, as Cross-Defendants sent letters to Ms. Carla Miller, as City Attorney for Alexander, on July 16, 2013 (Exhibit 3), and October 8, 2013 (Exhibit 4), the latter of which informed Ms. Miller that, pursuant to the Uniform Commercial Code's provisions regarding anticipatory breach, Cross-Defendants intended to repossess the fire truck.

19. Cross-Defendants lack the necessary knowledge to either admit or deny the allegations in paragraph 19 of the Cross-Complaint; pleading affirmatively, Cross-Defendants assert that whether the repossession attempt "breached the peace" is a question for the police at the scene, not for Cross-Complainant's attorney to answer in hindsight, and the allegations are therefore irrelevant.

20. Cross-Defendants lack the necessary knowledge to either admit or deny the allegations in paragraph 20 of the Cross-Complaint; pleading affirmatively, Cross-Defendants assert that their rights under Section 2 of the Uniform Commercial Code are not abrogated by Alexander's claims regarding its citizenry.

21. Cross-Defendants deny the allegations in paragraph 21 of the Cross-Complaint.

22. Cross-Defendants deny the allegations in paragraph 22 of the Cross-Complaint; pleading affirmatively, Cross-Defendants asserts that Alexander cannot be entitled to replevin where it is neither the owner, nor legally entitled to possession, of the fire truck. *See Williams v. Harrell*, 226 Ark. 115, 288 S.W.2d 321 (1956).

4

## CROSS-COMPLAINANT'S COUNT II

23. Cross-Defendants restate and realleage their admissions, denials, and affirmative pleadings in paragraphs 1-22 as if set out fully herein.

24. Cross-Defendants admit that the fire truck is a moveable item of personal property; Cross-Defendants specifically deny that Alexander owns the fire truck.

25. Cross-Defendants deny the allegations in paragraph 25 of the Cross-Complaint.

26. Cross-Defendants deny the allegations in paragraph 26 of the Cross-Complaint; pleading affirmatively, Cross-Defendants assert that none of the Exhibits attached to the Cross-Complaint purport to be the "repossession paperwork."

27. Cross-Defendants admit the allegations in paragraph 27 of the Cross-Complaint.

28. Cross-Defendants admit that they transferred possession of the fire truck from Alexander to Cross-Defendants; Cross-Defendants specifically deny that they did so without authority.

29. Cross-Defendants deny that they lack a legal right to exercise possession of the fire truck.

30. Cross-Defendants deny that their assertion of ownership of the fire truck is inconsistent with Alexander's rights, as any rights Alexander has in the fire truck at this point are governed by the terms of the Lease Purchase Agreement (Exhibit 5), and Cross-Defendants' actions have not violated any terms of this agreement.

31. Cross-Defendants deny that their dominion and control over the fire truck is inconsistent with Alexander's rights, as any rights Alexander has in the fire truck at this point are governed by the terms of the Lease Purchase Agreement, and Cross-Defendants' actions have not violated any terms of this agreement.

5

32. Cross-Defendants deny the allegations in paragraph 32 of the Cross-Complaint.

33. Cross-Defendants deny the allegations in paragraph 33 of the Cross-Complaint.

34. Cross-Defendants lack the necessary knowledge to admit or deny the allegations in paragraph 34 of the Cross-Complaint; pleading affirmatively, Cross-Defendants assert that their rights under Section 2 of the Uniform Commercial Code are not abrogated by Alexander's claims regarding its citizenry.

35. Cross-Defendants deny the allegations in paragraph 35 of the Cross-Complaint.

36. Cross-Defendants deny the allegations in paragraph 36 of the Cross-Complaint; Cross-Defendants also specifically deny that Alexander has any right to attorney's fees or damages in any action stemming from the lawful repossession of the fire truck.

37. Cross-Defendants deny the allegations in paragraph 37 of the Cross-Complaint.

### CROSS-COMPLAINANT'S COUNT III

38. Cross-Defendants restate and realleage their admissions, denials, and affirmative pleadings in paragraphs 1-37 as if set out fully herein.

39. Cross-Defendants deny the allegations in paragraph 39 of the Cross-Complaint; pleading affirmatively, Cross-Defendants assert that none of the exhibits attached to the Cross-Complaint purports to be the documentation provided by Cross-Defendants' agent.

40. Cross-Defendants deny the allegations in paragraph 40 of the Cross-Complaint; pleading affirmatively, Cross-Defendants assert that Alexander's claim under the Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-107(a)(10), fails as a matter of law because repossession is not an instance of false representation, fraud, or the improper use of

economic leverage in a trade transaction. *See generally Universal Coops., Inc. v. AAC Flying Serv.*, 710 F.3d 790 (8th Cir. 2013). Cross-Defendants further plead in the affirmative that Alexander lacks standing to bring a claim under the Arkansas Deceptive Trade Practices Act because Alexander has suffered no actual damages from the lawful repossession of the fire truck. *See* Ark. Code Ann. § 4-88-113(f).

41. Cross-Defendants lack the necessary knowledge to admit or deny the allegations in paragraph 41 of the Cross-Complaint; pleading affirmatively, Cross-Defendants assert that their rights under Section 2 of the Uniform Commercial Code are not abrogated by Alexander's claims regarding its citizenry.

42. Cross-Defendants deny the allegations in paragraph 42 of the Cross-Complaint.

43. Cross-Defendants deny the allegations in paragraph 43 of the Cross-Complaint.

## CROSS-COMPLAINANT'S COUNT IV

44. Cross-Defendants restate and realleage their admissions, denials, and affirmative pleadings in paragraphs 1-43 as if set out fully herein.

45. Cross-Defendants deny the allegations in paragraph 45 of the Cross-Complaint.

46. Cross-Defendant Graver denies the allegations in paragraph 46 of the Cross-Complaint; pleading affirmatively, Cross-Defendant Graver asserts that Exhibit B does not demonstrate that he ever purported to speak for First State Bank.

47. Cross-Defendants lack the necessary knowledge to admit or deny the allegations in paragraph 47 of the Cross-Complaint; pleading affirmatively, Cross-Defendants assert that

Alexander's ability to manage emergencies that may occur does not defeat Cross-Defendants' valid security interest in the fire truck.

48. Cross-Defendants lack the necessary knowledge to admit or deny the allegations in paragraph 48 of the Cross-Complaint; pleading affirmatively, Cross-Defendants assert that "tending to the business of the city" includes dealing with the lawful repossession of the fire truck pursuant to Section 2 of the Uniform Commercial Code and the terms of the Lease Purchase Agreement between Alexander and Cross-Defendants.

49. Cross-Defendants deny the allegations in paragraph 49 of the Cross-Complaint; pleading affirmatively, Cross-Defendants assert that they have an interest in the fire truck. *See* Exhibit 1.

50. Cross-Defendants deny the allegations in paragraph 50 of the Cross-Complaint; pleading affirmatively, Cross-Defendants assert that a restraining order that prohibits the sale of the fire truck, which Cross-Defendant is legally entitled to do, is by definition a harm suffered by Cross-Defendants.

51. Cross-Defendants deny the allegations in paragraph 51 of the Cross-Complaint.

52. Cross-Defendants deny the allegations in paragraph 52 of the Cross-Complaint; pleading affirmatively, Cross-Defendants assert that where, as here, a Cross-Complaint is brought without personal jurisdiction, in the wrong venue, and is seeking to litigate a subject matter that is already the subject of pending litigation elsewhere, Alexander cannot possibly succeed on the merits of its Cross-Complaint.

53. Cross-Defendants deny the allegations in paragraph 53 of the Cross-Complaint.

54. Cross-Defendants deny that this Court is the proper forum for Alexander's Cross-Complaint or any amendments thereto.

## CROSS-DEFENDANTS' AFFIRMATIVE DEFENSE I: LACK OF PERSONAL JURISDICTION

55. Cross-Defendants restate and realleage their admissions, denials, and affirmative pleadings in paragraphs 1-54 as if set out fully herein.

56. Cross-Defendants previously assigned their interest in the Lease Purchase Agreement to Shattuck National Bank, but Cross-Defendants re-purchased that interest on October 10, 2013. *See* Exhibit 1. This purchase included all rights, securities, and interest in the agreement.

57. Paragraph 9 of Lease Purchase Agreement (Exhibit 5) states:

> Lessee agrees to bring any judicial action arising directly or indirectly in connection with this agreement or any transaction covered hereby only in Courts located within Cook County, IL. Lessee also consents and submits to the jurisdiction of any State or Federal Court located within Cook County, IL. The choice of law shall be IL.

58. Arkansas courts have held that a valid forum-selection clause in a commercial contract implies consent as to personal jurisdiction. *See RMP Rentals v. Metroplex, Inc.*, 356 Ark. 76, 146 S.W.3d 861, (2004).

59. Arkansas courts adhere to the view that an individual who subjects himself to the personal jurisdiction of a Court by express agreement shall be bound by that contract, if the agreement can be determined to be fair and reasonable. *See BAAN, U.S.A. v. V. USA Truck, Inc.*, 82 Ark. App. 202, 206, 105 S.W.3d 784, 786 (2003).

60. For a forum-selection clause to be unreasonable or unfair, it must do more than inconvenience a party; it must effectively deprive the party of its day in court. *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 362 Ark. 598, 607, 210 S.W.3d 101, 108 (2005).

61. Alexander has not been deprived of a day in court regarding the fire truck; indeed, the case that is currently pending in Cook County, Illinois, (Exhibit 2) will provide Alexander with a day in court to litigate this very matter.

62. Because Alexander has not been deprived of a day in court, there is nothing unfair or unreasonable about the forum-selection clause in the Lease Purchase Agreement; accordingly, Alexander is bound by the terms of that clause, and this Court lacks personal jurisdiction over the parties under the forum-selection clause.

63. Accordingly, Cross-Defendants are entitled to dismissal of Alexander's Cross-Complaint pursuant to Arkansas Rule of Civil Procedure 12(b)(2).

## CROSS-DEFENDANTS' AFFIRMATIVE DEFENSE II: IMPROPER VENUE

64. Cross-Defendants restate and realleage their admissions, denials, and affirmative pleadings in paragraphs 1-63 as if set out fully herein.

65. The forum-selection clause in the Lease Purchase Agreement between Cross-Defendants and Alexander is unequivocal that venue in this action is proper "only in Courts located within Cook County, IL." *See* Exhibit 5.

66. The Arkansas Supreme Court characterizes venue as an issue of jurisdiction over the person. *See generally Centerpoint Energy, Inc. v. Miller County Circuit Court*, 372 Ark. 343, 276 S.W.3d 231 (2008).

67. Logically, it follows that, if venue is an issue of personal jurisdiction, then a forum-selection clause that removes personal jurisdiction from a specific court also makes that court the improper venue in which to bring an action.

68. Accordingly, Cross-Defendants are entitled to dismissal of Alexander's Cross-Complaint pursuant to Arkansas Rule of Civil Procedure 12(b)(3).

## CROSS-DEFENDANTS' AFFIRMATIVE DEFENSE III: INSUFFICIENCY OF PROCESS

69. Cross-Defendants restate and realleage their admissions, denials, and affirmative pleadings in paragraphs 1-68 as if set out fully herein.

70. The summons issued for Cross-Defendant Graver (Exhibit 6) lists his address as:

> PAUL ANTHONY GRAVER
> UNKNOWN
> UNKNOWN, UN 00000

71. Under Arkansas Rule of Civil Procedure 4(b), a summons to appear in a court of this state must, in pertinent part, "state the name and address of the plaintiff's attorney, if any, otherwise the address of the plaintiff."

72. Substantial compliance as to the form of a summons under Rule 4 is not sufficient. *See Vinson v. Ritter*, 86 Ark. App. 207, 167 S.W.3d 162 (2004) (explaining, "[i]n the context of the requirement of strict compliance with Ark. R. Civ. P. 4, it should be noted that cases

11

decided under the past rule of 'substantial compliance' will no longer be of precedential

value").

73. The summons issued for Cross-Defendant Graver clearly fails to comply with the

requirements of Rule 4(b); as such, Cross-Defendant Graver is entitled to dismissal for

insufficiency of process pursuant to Arkansas Rule of Civil Procedure 12(b)(4).

## CROSS-DEFENDANTS' AFFIRMATIVE DEFENSE III: INSUFFICIENCY OF SERVICE OF PROCESS

74. Cross-Defendants restate and realleage their admissions, denials, and affirmative pleadings in

paragraphs 1-73 as if set out fully herein.

75. Under Arkansas Rule of Civil Procedure 4(e), whenever the laws of this state allow for service

of process in another state, that service may be accomplished, as is relevant here, (1) By

personal delivery in the same manner prescribed for service within this state; (2) In any

manner prescribed by the law of the place in which service is made in that place in an action

in any of its courts of general jurisdiction; (3) By mail as provided in subdivision (d)(8) of

this rule; or (5) As directed by the court.

76. Where service is attempted by an attorney for the complainant, such service must comply

with Arkansas Rule of Civil Procedure 4(d)(8), which limits an attorney to service by mail or

commercial delivery company. *See also* Ark. R. Civ. P. 4(c).

77. Alexander attempted to effect service on Cross-Defendants via electronic mail, facsimile, and

United States Postal Service; of these, only the attempt by United States Postal Service would

be valid if properly effectuated.

78. Arkansas law is well settled that service of valid process is necessary to give a court

    jurisdiction over a defendant. *Vinson*, 86 Ark. App. 207, 167 S.W.3d 162; *see also Smith v.*

    *Sidney Moncrief Pontiac, Buick, GMC Co.*, 353 Ark. 701, 120 S.W.3d 525 (2003) (citing

    *Raymond v. Raymond*, 343 Ark. 480, 36 S.W.3d 733 (2001)).

79. Arkansas law is equally well settled that statutory service requirements, being in derogation of

    common-law rights, must be strictly construed and compliance with them must be exact. *See*

    *Smith*, 353 Ark. 701, 120 S.W.3d 525 (citing *Carruth v. Design Interiors, Inc.*, 324 Ark. 373,

    921 S.W.2d 944 (1996)).

80. Importantly, actual knowledge by a defendant of the proceeding against him does not

    validate defective service of process. *See Vinson*, 86 Ark. App. 207, 167 S.W.3d 162.

81. The record in this case does not indicate that Alexander, through its city attorney, has

    properly effected service of valid process on Cross-Defendants; accordingly, Cross-

    Defendants are entitled to dismissal for insufficient service of process pursuant to Arkansas

    Rule of Civil Procedure 12(b)(5).

## CROSS-DEFENDANTS' AFFIRMATIVE DEFENSE V: FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

82. Cross-Defendants restate and realleage their admissions, denials, and affirmative pleadings in

    paragraphs 1-81 as if set out fully herein.

83. An affirmative defense of failure to state a claim upon which relief can be granted, pursuant

    to Arkansas Rule of Civil Procedure 12(b)(6), must be read in conjunction with the

requirements for pleadings under Arkansas Rule of Civil Procedure 8. *See Spires v. Members of Election Comm'n*, 302 Ark. 407, 790 S.W.2d 167 (1990).

84. Under Rule 8, a pleading must establish, *inter alia*, that the court has jurisdiction and that venue is proper in that court. *See* Ark. R. Civ. P. 8(a).

85. Jurisdiction must be determined entirely from the pleadings, and, if the pleadings do not establish jurisdiction, the court is not to proceed further. *See McKinney v. City of El Dorado*, 308 Ark. 284, 824 S.W.2d 826 (1992).

86. As discussed in Cross-Defendants' Affirmative Defenses I and II, *supra*, the presence of a forum-selection clause in the Lease Purchase Agreement precludes this Court's exercise of jurisdiction over the parties and makes venue improper in this Court.

87. Accordingly, Alexander has failed to establish one of the requirements under Rule 8(a), and Cross-Defendants are entitled to dismissal of the Cross-Complaint based on Arkansas Rule of Civil Procedure 12(b)(6).

WHEREFORE Cross-Defendants pray that this Court will dismiss Alexander's Cross-Complaint based on any or all of the affirmative defenses of lack of personal jurisdiction, improper venue, insufficiency of process, insufficiency of service of process, and/or failure to state a claim upon which relief can be granted; deny Alexander's request for a permanent restraining order; rescind this court's order granting a temporary restraining order; and enter any other relief to which Cross-Defendants may be entitled.

Respectfully submitted,

**Pinnacle Law Firm, PLLC**
212 Center St., 11th Floor
Little Rock, AR 72201
(501) 396-9246

By:

_____
Matthew D. Campbell, ABA #2009032
*Attorney for Cross-Defendants*


## CERTIFICATE OF SERVICE

I, Matthew D. Campbell, herby certify that a true and correct copy of the foregoing will be served on the following attorneys of record electronically as of the date of filing by the Clerk of this Court. An additional copy will be mailed via U.S. Mail, postage prepaid, to the attorneys as of that date as well.

Christopher L. Travis
Gill Ragon Owen, P.A.
425 W. Capitol, Suite 3801
Little Rock, AR 72201

Carla L. Miller
The Miller Firm
2226 Cottondale Ln., Suite 200
Little Rock, AR 72202

_____
Matthew D. Campbell

ELECTRONICALLY FILED
2013-Oct-31 16:31:11
0CV-13-3913

EXHIBIT
**1**

# *First Government Lease Co.*

## One-Page Lease To Own Financing

PO Box 8331
Northfield, IL 60093

Telephone 866.793.9670
Telefax 847.446.8377

www.firstgovernment.com
info@firstgovernment.com

### Assignment of a Undivided Interest in a Municipal Lease Purchase Agreement

Under the Municipal Lease Purchase Agreement dated 8/15/08 between First Government Lease Co, ("Lessor") and City of Alexander ("Lessee"), Lessor may assign all of its rights, title and interest in and to the Lease, the equipment subject to the Lease ("Equipment"), any documents executed with respect to the Lease, and any security interest in the Lease and the Equipment (collectively, "Lessor's Rights"). Lessor has assigned to the Municipal Lease Purchase Agreement Purchaser ("Purchaser") all of its interest in the Lessor's Rights. Purchaser in consideration of the payment of $7,072.00 ("Principal Amount") hereby receives an undivided 100% interest in the Lessor's Rights*. Lessor warrants that as of this date no Event of Default (as defined in the Lease) has occurred under the Lease.

**Lessor agrees to act as Assignee's agent** with respect to the performance of all ministerial matters in connection with the Lease, including giving and receiving notices, making required filings and receiving payments from Lessee and disbursing Assignee's pro rata portion thereof to Assignee. Assignees shall indemnify Lessor against all claims arising in connection with Lessor's actions as agent for Assignee. If there is an Event of Default, at Assignee's request and solely as its agent, Lessor shall take all steps that it believes, in its sole discretion, are appropriate to enforce Assignee's rights under the Lease. If there is an Event of Default and Lessor is requested to act on Assignee's behalf, Lessor shall be entitled to deduct from any payments received from Lessee an amount equal to the costs, including reasonable attorneys' fees, it incurs in enforcing Assignee's rights.

This Assignment shall inure to the benefit of and be finding upon Lessor and Assignee and their respective successors and assigns.

- 8 remaining monthly payments of $884.00.

Purchaser

By: _____

Shattuck National Bank

By: _____
Officer

Date: 10/10/13

Small Claims Complaint-Verified (Claims under $10,000)

ELECTRONICALLY FILED
2013-CH306 CCM 0750
000Y 12 0010

**Plaintiff(s)**
PAUL GRAVER d/b/a
FIRST GOVERNMENT LEASE Co.
PO Box 8331, NORTHFIELD
IL, 60093

**Defendant(s)**
CITY OF ALEXANDER
15605 ALEXANDER RD
ALEXANDER RD,
ALEXANDER, AR 72002

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, _2ND_ DISTRICT

No. __13M202218__

Amount Claimed: $ __7072 — Plus Costs__

Return Date: __11/12/13__

STATUS   12/16/13
#205  1:30

**SMALL CLAIMS COMPLAINT-VERIFIED**
(Ill. Sup. Ct. Rules 281-288)

NOW COME First Government Lease Co., (the "Plaintiff"), by Paul Graver, Pro Se, and for its complaint against the City of Alexander (the "Defendant"), states as follows:

### BREACH OF CONTRACT

1.  The Plaintiff is a sole proprietorship owned and operated by Paul Graver doing business under the name of First Government Lease Co., having its principal place of business in Northfield, IL.

2.  The Defendant, City of Alexander, on information and belief, is an AR entity, which transacted the business giving rise to this lawsuit in Cook County, IL.

3.  The Defendants sought to purchase from Woodland Hills VFD. (the "Suppliers), and Suppliers sought to sell to Defendants, certain "1999 Freightliner 1FV6JLCB1XHA71797" (the "Equipment").

4.  Plaintiff agreed to finance the Supplier's sale of the Equipment to Defendant. Defendant transferred title to Plaintiff for security purposes. Plaintiff in turn leased the Equipment to Defendant under an installment purchase contract.

5.  Under the terms of the contract, Defendant agreed to be liable to Plaintiff for 84 monthly payments of $884.00 starting on 7/1/08. (Ex A).

6.  The financing of Defendant purchase of the Equipment was dependent on Defendant accepting the contract, and thereby constituted consideration for the contract.

7.  Plaintiff financed the purchase of the Equipment, and entered a Lease Purchase Contract with Defendant, whereby Defendant agreed to repay the cost of the Equipment with interest. Plaintiff delivered to Supplier the sum due. This constitutes full performance by Plaintiff under the contract.

8.  Prior to paying the Suppliers, Plaintiff independently verified that Mayor Shirley Johnson was an authorized officer and that the contract was legal, proper and binding on all parties.

9.  The Defendant after making seventy six payments, Defendant defaulted upon anticipatory breach on its lease agreement with Plaintiff. Plaintiff thereafter made demand on Defendant under the Uniform Commercial Code (Ex. B).

**EXHIBIT**
**2**

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Small Claims Complaint-Verified (Claims under $10,000)                    (1/03/06) CCM 0750

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## MUNICIPAL DEPARTMENT, ____ DISTRICT

10. Defendant has refused to contradict the Uniform Commercial Code relating to anticipatory breach. This refusal to respond constitutes a breach of the contract between Plaintiff and Defendant.

WHEREFORE the plaintiff, First Government Lease Co. by Paul Graver, Pro Se, prays this court to enter judgment in its favor and against the defendant, City of Alexander, as follows:

1. For the amount of 8 payments of $884.00 for $7,072.00, plus costs.
2. For prejudgment interest until such sum is paid;
3. For the plaintiff's cost of suit and paid consulting attorneys' fees; and
4. For such other relief as the court may deem just in the premises.

I, _PAUL GRAVER_ *PRESIDENT, FIRST GOVERNMENT LEASE CO*
                    (Plaintiff's Name)                    , certify that I am the Plaintiff in the above entitled action.

Under penalties as provided by law pursuant to 735 ILCS 5/1-109 the undersigned certifies that the statements set forth herein are true and correct.

Atty. No.: _99500_            Pro Se  99500

Atty. (or Pro Se Plaintiff):

Name: _PAUL GRAVER_                    Dated: _10/11_, _13_

Address: _Box 8331_

City/State/Zip: _Northfield, IL 60093_

Telephone: _847-441-5684 Ex 0_            Signature

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

ELECTRONICALLY FILED
2013-Oct-31 16:31:11
60CV-13-3913

EXHIBIT

**3**

# First Government Lease Co.
## One-Page Lease To Own Financing

PO Box 8331
Northfield, IL 60093-8331

Telephone 866.793.9670
Telefax 847.441.5012

www.firstgovernment.com
info@firstgovernment.com

1 of 1

VIA FIRST CLASS MAIL

July 16, 2013

Dear Ms, Carla L. Miller
Attorney At Law
2226 Cottondale Lane #200
Little Rock, AR 72202

RE: Alexander Lease/Purchase Agreement

**Dear Ms. Miller:**

Pursuant to the Uniform Commercial Code (UCC) prescribes a procedure for dealing
with anticipatory breach.  I have reason to believe our conversation today, is a
repudiation of the contract with the City of Alexander dated 5/15/08.

I hereby demand my right for "adequate assurance of performance" of the contract.

Paul Graver
President
First Government Lease Co.
866-793-9670 Ex. 0

3

ELECTRONICALLY FILED
2013-Oct-31  16:31:11
60CV-13-3913

# First Government Lease Co.
## One-Page Lease To Own Financing

EXHIBIT
**4**

PO Box 8331                      Telephone 866.793.9670       www.firstgovernment.com
Northfield, IL 60093-8331        Telefax 847.441.5012         info@firstgovernment.com

1 of 1

VIA HAND DELIVERY TO AN AGENT OF CITY OF ALEXANDER

October 8, 2013

Dear Ms, Carla L. Miller
Attorney At Law
2226 Cottondale Lane #200
Little Rock, AR 72202

RE: Alexander Lease/Purchase Agreement

Dear Ms. Miller:

Pursuant to the Uniform Commercial Code (UCC) prescribes a procedure for dealing
with anticipatory breach.  30 days have since passed you have failed to notify me.

I'm taking my vehicles.

Raul Graver
President
First Government Lease Co.
866-793-9670 Ex. 0

4

JUN-25-2008 09:49 FROM:

TO: 15014555531

ELECTRONICALLY FILED
2013-Oct-31 16:31:11
60CV-13-3913

# First Government Lease Co.

**EXHIBIT 5**

## Lease Purchase Agreement

Lessor:
First Government Lease Co.
Box #331
Northfield, IL 60093-8331
866.793.9670 or 847.441.5684
Fax 847.441.5012
info@firstgovernment.com

Lessee:
Name: _CITY OF ALEXANDER_
Address: _PO BOX 610_
City: _ALEXANDER_   State: _AR_   Zip: _72002_
Phone: _501-350-3957_   Fax: _501-455-5531_

Description of Equipment: _1999 FREIGHTLINER MODEL FL80   VIN 1FU6JLCB1XHA_

Quantity: _1_   Unit Price: _50,000_   Total: _50000_   _7/1996_

| | | | |
|---|---|---|---|
| Total Cash Price | $50,000 | Number of Pmts. (Term) | _84 MONTHS_ |
| Less Down Pmt. | — | Amt. of each Pmt. | $884 |
| Net | $50,000 | Lease Beginning Date | 5/15/08 |
| Interest & A.P.R. | $24,325 | First Payment Due Date | 7/1/08 |
| Total Lease Price | $74,325 | | |

Lessor hereby leases to lessee that certain equipment described above, subject to the terms, provisions, conditions and agreements of this lease hereinafter set forth:

1. Said equipment is leased beginning and for the Term specified above

2. Lessee agrees to pay lessor one monthly payment specified above on the Lease Beginning Date and equal successive monthly payments until an amount equal to the total lease price specified above has been paid. Any amount due under this Lease which is past due more than ten (10) days shall be subject to a multiple time late payment charge of $100 per occurrence plus an amount equal to ten percent (10%) of the amount past due.

3. Lessee may purchase said equipment at any time during the lease term for the total lease price, less any payment already made and also less a portion of the lease service fee according to a schedule furnished on request by lessor to lessee, shall constitute purchase of the equipment. Also payment of all the monthly payments when due shall automatically constitute purchase of said equipment effective on the last day of the lease period.

4. Lessee may cancel this Lease Purchase Agreement only with Lessor's written approval at any time within the first 90 days of lease by giving written notice to Lessor and returning said equipment to Lessor, or to its order, in good condition as received, less normal wear, tear and depreciation. Upon such proper return, Lessee shall have no obligation to make payments coming due after the notice period.

5. Lessee, at its own cost and expense, shall keep the equipment in good repair, condition and working order and shall furnish any and all parts, mechanism and devices required to keep the equipment in good mechanical and working order. Lessee hereby assumes and shall bear the entire risk of loss and damage to the equipment from any and every cause whatsoever. No loss or damage to the equipment or any part thereof, shall impair any obligation of Lessee under this lease which shall continue in full force and effect. Lessee hereby appoints Lessor as Lessee's attorney in fact with full power to do all things to protect and further Lessee's and Lessor's agreement as set forth herein, including but not limited to, signing and fixing UCC's, title applications and taking such other action as Lessor deems reasonable and necessary  Lessee is obliged within 60 days of the Lease Beginning Date to provide a original duplicate title to Lessor, failing to provide a duplicate title within 60 days of Lease Beginning Date is an event of default.

6. If Lessee with regard to any item or items of equipment fails to pay any rent or other amount herein provided within 60 days after the same is due and payable, or if Lessee with regard to any item or items of equipment fails to observe, keep or perform any other provision of this lease required to be observed, kept or performed by Lessee, Lessor shall have the right to exercise any one or more of the following remedies: a. To declare the entire amount of rent hereunder immediately due and payable as to any or all items of equipment, without notice or demand to Lessee. b. To sue for and recover all rents, and other payments then accrued or thereafter accruing, with respect to any or all items of equipment. c. To take possession of any or all items of equipment without demand or notice, wherever same may be located, without any court order or other process law. d. To terminate this lease as to any or all items of equipment. e. To pursue any other remedy at law or in equity, notwithstanding any said repossession, or any other action which Lessor may take, Lessee shall be and remain liable for the full performance of all obligations on the part of Lessee to be performed under this lease. f. Lessee further agrees to pay all attorneys' fees incurred by Lessor in enforcing Lessor's rights under this agreement. All such remedies are cumulative, and may be exercised concurrently or separately.

7. Lessee intends to do all things lawful within its power to obtain and maintain funds from which payments may be made, including making provision for such payments to the extent necessary in each periodic budget submitted and adopted in accordance with applicable provisions of state and local law, to have such portion of the budget approved and to exhaust all available reviews and appeals in the event such portion of the budget is not approved. Lessee reasonably believes that legally available funds in an amount sufficient to make all Lease Payments during the term can be obtained. After a nonappropriation, the Lessee may not use other property or equipment to perform the same, or substantially similar, services for a period of one year.

8. Upon commencement of the Term, title to the equipment shall pass to Lessee from vendor or supplier. Lessee hereby grants a security interest in the equipment described herein, and the proceeds thereof to Lessor.

9. Lessee agrees to bring any judicial action arising directly or indirectly in connection with this agreement or any transaction covered hereby only in Courts located within Cook County, IL. Lessee also consents and submits to the jurisdiction of any State or Federal Court located within Cook County, IL. The choice of law shall be IL.

10. I certify that I am duly authorized to act within the powers of my office by executing this Lease Agreement, and the equipment being financed is essential to its governmental mission.

In witness whereof, the parties hereto have executed this lease this _15_ day of _May_, 20_08_.

By: _____
First Government Lease Co.

_(signature)_   | _(Lessee Signature)_   |   _MAYOR SHIRLEY JOHNSON_
(Print Signature and Title)

As Counsel for Lessee, I acknowledge that: I have reviewed this Lease Purchase Agreement, the extent of any enabling statutes, and all necessary proceedings taken by the Lessee to authorize and execute this Lease Purchase Agreement, and therefore, I am of the opinion: a. The lessee is a duly constituted public corporation and political subdivision of the State referred to above, and b. This Lease Purchase Agreement has been duly authorized, executed and delivered by an authorized representative of the Lessee and is enforceable against the Lessee in accordance with its terms and conditions, and c. this Lease Purchase Agreement is a legal, valid and binding obligation of the Lessee.

_(signature)_
(Counsel for Lessee)   |   _CITY OF_ _PATRICK DUVAK_
(Print Signature and Title)

ELECTRONICALLY FILED
2013-Nov-01 13:54:14
60CV-13-3913

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
SIXTH DIVISION

FIRST STATE BANK                                                          PLAINTIFF

VS.                                    NO. 60CV-13-3913

CITY OF ALEXANDER, ARKANSAS, et al.                      DEFENDANT

CITY OF ALEXANDER, ARKANSAS                    CROSS COMPLAINANT

VS.

PAUL ANTHONY GRAVER AND
FIRST GOVERNMENT LEASE CO.                       CROSS DEFENDANTS

---

## AFFIDAVIT OF SERVICE

---

State of Arkansas

County of Pulaski

I, Carla L. Miller, attorney for Plaintiff, certify that the Ex-Parte Order of Delivery and Restraining Order, Order of Delivery, Summons, and Cross-Complaint in the above captioned matter were mailed to the Defendant at the following address:

Paul Anthony Graver
First Government Lease Co.
P.O. Box 8331
Northfield, IL 60093

via USPS Express Mail delivery, return receipt requested, Tracking No. 9481703699300008175932, on October 28, 2013, and that the entire package was

1

returned to me by the U.S. Postal Service, with the indication that delivery was "Refused" by the addressee.  See attached Exhibit A.

I further certify that upon return of the "Refused" overnight delivery, I mailed the contents of the ~~certified~~ *express* mail package to the Defendant by first class mail, postage prepaid.  See attached Exhibit B.

Further, affiant sayeth not.

Dated this 1st day of November, 2013

_Carla L. Miller_

Carla L. Miller, Affiant

Subscribed and sworn to before me this ___ day of _____, 20__.

_____
Notary Public

My Commission Expires:

_____

OFFICIAL SEAL
CHERYL SEELEY
No. 12389485
PULASKI COUNTY
My Commission Expires 8-29-2022

2

ELECTRONICALLY FILED
2013-Nov-01 13:54:14
60CV-13-3913



*Cut on dotted line.*

## Instructions

1. Each Click-N-Ship® label is unique. Labels are to be used as printed and used only once. DO NOT PHOTO COPY OR ALTER LABEL.

2. Place your label so it does not wrap around the edge of the package.

3. Adhere your label to the package. A self-adhesive label is recommended. If tape or glue is used, DO NOT TAPE OVER BARCODE. Be sure all edges are secure.

4. To mail your package with PC Postage®, you may schedule a Package Pickup online, hand to your letter carrier, take to a Post Office™, or drop in a USPS collection box.

5. Mail your package on the "Ship Date" you selected when creating this label.

### Online Label Record (Label 1 of 1 )

**USPS TRACKING # Number:**

**9405 5036 9930 0110 4373 13**

| Paid Online | | | |
|---|---|---|---|
| Order Number: | 279094121 | Priority Mail® Postage: | $5.05 |
| Print Date: | 11/01/2013 | Total: | $5.05 |
| Ship Date: | 11/01/2013 | | |
| Delivery Date: | 11/04/2013 | | |

From:  CARLA L MILLER
       THE MILLER FIRM, PLLC
       2226 COTTONDALE LN
       STE 200
       LITTLE ROCK AR 72202-2071

To:    PAUL A GRAVER
       FIRST GOVERNMENT LEASE CO.
       PO BOX 8331
       NORTHFIELD IL 60093-8331

* Commercial Base Pricing Priority Mail rates apply.  There is no fee for USPS Tracking™ service on Priority Mail service with use of this electronic rate shipping label.  Delivery information is not available by phone for the electronic rate.  Refunds for unused postage paid labels can be requested online 30 days from the print date.

**UNITED STATES POSTAL SERVICE ®** *Thank you for shipping with the United States Postal Service!*
*Check the status of your shipment on the Track & Confirm page at usps.com*

EXHIBIT B

# CARLA L. MILLER, PLLC
## ATTORNEY AT LAW
2200 Riverfront Dr. # 7202
Little Rock, AR  72202
(501) 454-2972
CarlaMiller.07@comcast.net

November 1, 2013

Paul Anthony Graver
First Government Lease Co.
P.O. Box 8331
Northfield, IL 60093

RE: First State Bank v. City of Alexander, et al; Pulaski Co. Arkansas Circuit No. CV60-13-3913

Dear Mr. Graver:

Enclosed please find the Ex-Parte Order of Delivery and Restraining Order, Order of Delivery, Summons, and Cross-Complaint which have been filed in the above captioned matter.  My office attempted to serve the enclosed upon you via USPS overnight delivery, as provided in the Arkansas Rules of Civil Procedure.  The overnight delivery mailing was returned to us with a notation from the postal service that delivery was "Refused."  I am attaching a copy of the tracking report of the USPS.

Please be advised that pursuant to the Arkansas Rules of Civil Procedure, despite such refusal the case will proceed and that judgment by default may be rendered against you unless you appear to defend the suit.  Also, pursuant to the Arkansas Rules of Civil Procedure, an affidavit of mailing will be filed with the Court reflecting that the enclosed documents have been mailed to you.

Sincerely,

Carla L. Miller

CLM/dl
Enclosure

English     Customer Service     USPS Mobile          Register / Sign In

 **USPS.COM**

Search USPS.com or Track Packages

Quick Tools
Catalog to ID Tracking # Find
Dial Change
Schedule a Pick

# USPS Tracking™

 Customer Service ›
Have questions? We're here to help.

Ship a Package     Send Mail     Manage Your Mail          Business Solutions

9481703699300008175932

Scheduled Delivery Day: October 29, 2013 12:00 pm
Money Back Guarantee
Your item was refused by the addressee at 1:39 pm on October 31, 2013 in WINNETKA, IL 60093 and is being returned to the sender. Information, if available, is updated periodically throughout the day. Please check again later.

## Print & Tracking Information

| | | | Available Actions |
|---|---|---|---|
| Postal Product: | Features: | | Proof of Delivery |
| Priority Mail Express 1-Day™ | $100 insurance included | PO to Addressee | |
| | Signature Service | | Email Updates |

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| October 31, 2013 , 1:39 pm | Refused | WINNETKA, IL 60093 |
| October 30, 2013, 9:34 am | Sorting Complete | GLENVIEW, IL 60026 |
| October 30, 2013 , 9:33 am | Available for Pickup | WINNETKA, IL 60093 |
| October 30, 2013 , 5:47 am | Arrival at Post Office | GLENVIEW, IL 60026 |
| October 30, 2013 | Depart USPS Sort Facility | FOREST PARK, IL 60130 |
| October 29, 2013 , 9:29 pm | Processed through USPS Sort Facility | FOREST PARK, IL 60130 |
| October 29, 2013 | Depart USPS Sort Facility | LITTLE ROCK, AR 72206 |
| October 28, 2013 , 7:44 pm | Processed at USPS Origin Sort Facility | LITTLE ROCK, AR 72206 |
| October 28, 2013 , 4:38 pm | Dispatched to Sort Facility | LITTLE ROCK, AR 72231 |
| October 28, 2013 , 2:08 pm | Acceptance | LITTLE ROCK, AR 72231 |
| October 28, 2013 | Electronic Shipping Info Received | |

What's your tracking (or receipt) number?

Track It

# THE MILLER FIRM
## CARLA L. MILLER*, PLLC
ATTORNEY AT LAW
2226 Cottondale Lane, Suite 200
Little Rock, AR 72202
(501) 454-2972
CarlaMiller.07@comcast.net

*Licensed in
Arkansas and New York

October 28, 2013

VIA USPS OVERNIGHT DELIVERY
VIA E-MAIL firstgovernment@att.net
VIA FACSIMILE 847-441-5012

Paul Anthony Graver
First Government Lease Co.
PO Box 8331
Northfield, IL 60093

Re: First State Bank v. City of Alexander, et al.; Pulaski Co. Arkansas Circuit No.
60CV-13-3913

Dear Mr. Graver:

Enclosed please find file-marked copies of the Ex-Parte Order of Delivery and Restraining Order entered in the above-mentioned matter by the Honorable Timothy D. Fox, and the Order of Delivery signed by the Circuit Clerk on October 25, 2013.

These orders were issued for good cause shown in the City's *Cross Complaint and Petition for Order of Delivery and Petition for Temporary and Permanent Restraining Order* filed on October 21, 2013. Copies of the Cross Complaint and Summonses are also enclosed. These documents have been delivered to a Process Server for service upon you, as well.

Under the enclosed Court orders, you are required to immediately return possession of the 1999 Freightliner FL80 Firetruck, VIN 1FV6JLCB1XHA71796 to the City of Alexander. You should contact me via e-mail immediately to make arrangements for the return of the Firetruck.

Paul A. Graver
First Government Lease
10/28/13
Page 2 of 2
(Ex-Parte Orders)

————————————————

    Also under the enclosed orders, you are restrained from harassing the City, its employees, attorneys, agents, elected officials or citizens.

    Furthermore, you will note that Judge Fox has set a hearing for **9:30 a.m. on Monday, November 4, 2013,** in the Circuit Court of Pulaski County, 400 W. Markham, Room 310, Little Rock, AR  72201, to consider whether a preliminary injunction should be entered.   This is the only notice of this hearing you will receive.

        Sincerely,

        Carla L. Miller

Enclosures
Cc:    Court File
/cm

ELECTRONICALLY FILED
2013-Oct-25 15:55:15
60CV-13-3913

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

FIRST STATE BANK                                           PLAINTIFF

VS.                           NO. 60CV-13-3913

CITY OF ALEXANDER, ARKANSAS
PAUL ANTHONY GRAVER AND
LANCE DOMINIQUE                                      DEFENDANTS


CITY OF ALEXANDER, ARKANSAS          CROSS COMPLAINANT

VS.

PAUL ANTHONY GRAVER AND
FIRST GOVERNMENT LEASE CO.          CROSS DEFENDANTS

---

## EX-PARTE ORDER OF DELIVERY AND
## RESTRAINING ORDER

---

On this day comes on for hearing, Cross Complainant, City of Alexander, Arkansas (the "City"), by and through its attorney, Carla L. Miller, and from the Cross Complaint of the Plaintiff and the exhibits thereto, the Court finds:

1.   That the City has shown good cause that it will suffer immediate and irreparable injury, loss or damage before Cross Defendants can be heard in opposition.

2.   Cross Defendants have no apparent legal justification for taking possession of the 1999 Freightliner FL80 Firetruck, VIN 1FV6JLCB1XHA71796

1

("Firetruck"), and their continued possession of it is causing the City irreparable

harm by depriving ~~the citizens of Alexander of equipment necessary for their~~

~~health, safety and welfare~~. These harms have occurred, continue to occur, and will

not fully be satisfied with an award of monetary damages. As such, the Court finds

that Cross Defendants should not be given further notice before this Order is

entered requiring Cross Defendants to immediately return the Firetruck to the City.

      3.    The Court finds that the City has a reasonable probability of success

on the merits of this action.  Based upon the facts in the Cross Complaint, Cross

Defendants have wrongfully exercised dominion and control over the Firetruck.

Cross Defendants have no legal interest in the Firetruck and the City has a legal

right to possess the property. ~~Therefore~~, the City has shown that it is likely to

succeed on the merits of its claims for wrongful repossession - replevin and

conversion.

      4.    The City is entitled to an Order of Delivery for the immediate

possession of the Firetruck as set forth in its Cross Complaint.

      5.    That an Order of Delivery shall be forthwith issued and that the sheriff

of this county, or of any county in any state where the property may be located, is

hereby commanded to take and deliver the Firetruck to the City.

      6.    Cross Defendants are hereby enjoined and restrained from doing or

attempting to do any act of selling, encumbering, mortgaging, contracting to sell,

or otherwise disposing of, or removing from the jurisdiction of this Court, the Firetruck or any other property, real or personal, belonging to the City.

7.    Cross Defendants are further hereby enjoined and restrained from doing, attempting to do, or threatening to do, any act injuring, mistreating, molesting, or harassing the City, its employees, attorneys, agents, elected officials, or citizens.

8.    The City shall post security in the amount of $ _____ . The Court finds this amount is sufficient to pay any costs and damages Cross Defendants may suffer in the event it is found to have been wrongfully enjoined or restrained.

9.    A hearing shall be held before the Sixth Division of the Circuit Court of Pulaski County, Arkansas, in the Pulaski County Courthouse, in Little Rock, Arkansas, on the ___4th___ day of __November 2013__, at __9:30__ o'clock __a__.m., to consider whether to enter a preliminary injunction in this matter. Service of this Order on Cross Defendants shall be sufficient to require Cross Defendants to appear at the time, date and place herein above designated.

~~10.    That the City is awarded judgment against the Cross Defendants for all costs expended herein and all costs associated with the return of the Firetruck, and reasonable attorneys' fees in the amount of $1,500.~~

IT IS SO ORDERED.

DATED: _10.25.2013_

_____
HONORABLE TIMOTHY D. FOX
CIRCUIT JUDGE


Approved as to form:

Carla L. Miller (2012123)
**The Miller Firm**
**2226 Cottondale Lane, Suite 200**
Little Rock, AR  72202
(501) 454-2972
CarlaMiller.07@comcast.net

ELECTRONICALLY FILED
2013-Oct-25 15:55:15
60CV-13-3913

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

FIRST STATE BANK                                             PLAINTIFF

VS.                                NO. 60CV-13-3913

CITY OF ALEXANDER, ARKANSAS
PAUL ANTHONY GRAVER AND
LANCE DOMINIQUE                                     DEFENDANTS

CITY OF ALEXANDER, ARKANSAS              CROSS COMPLAINANT

VS.

PAUL ANTHONY GRAVER AND
FIRST GOVERNMENT LEASE CO.            CROSS DEFENDANTS

---

### ORDER OF DELIVERY

---

TO THE SHERIFF OF PULASKI COUNTY, ARKANSAS
Or the Sheriff of any other county and state where the property may be located:

You are commanded to take from the possession of the Cross Defendants the

following described property:

**1999 Freightliner FL80 Firetruck, VIN 1FV6JLCB1XHA71796**

and deliver same to the City of Alexander, Arkansas pursuant to the Orders of this

Court.

1

WITNESS my hand and seal of this Circuit Court on this _25_ day of
_Oct_, 20 _13_.

LARRY CRANE, Circuit County Clerk

CIRCUIT CLERK

By _____
Deputy Clerk

Prepared by:

Carla L. Miller (2012123)
The Miller Firm
2226 Cottondale Lane, Suite 200
Little Rock, AR  72202
(501) 454-2972
CarlaMiller.07@comcast.net

2

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT

FIRST STATE BANK V CITY OF ALEXANDER AR ET AL

60CV-13-3913

SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

PAUL ANTHONY GRAVER
UNKNOWN
UNKNOWN, UN  00000

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Carla L Miller
2226 Cottondale Lane
Suite 200
Little Rock, AR  72202

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

Address of Clerks Office

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W MARKHAM
LITTLE ROCK, AR  72201

CLERK OF COURT

LCLERK Mary Ann Neppl, DC

Date: 10/23/2013

No. 60CV-13-3913 This summons is for PAUL ANTHONY GRAVER (name of Defendant).

## PROOF OF SERVICE

❏ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❏ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❏ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❏ I delivered the summons and complaint to _____[name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❏ Other [specify]:
_____

❏ I was unable to execute service because:
_____
_____

My fee is $ _____.

To be completed if service is by a sheriff or deputy sheriff:

Date: _____        SHERIFF OF _____ COUNTY, ARKANSAS

                             By: _____
                             [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____      By: _____
                           [Signature of server]

                           _____
                           [Printed name]

Address: _____

_____

Phone: _____

**Subscribed and sworn to before me this date:** _____

                           _____
                           Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT

FIRST STATE BANK V CITY OF ALEXANDER AR ET AL

60CV-13-3913

SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

First Government Lease Co.
Paul Graver, President
PO Box 8331
Northfield, IL  60093

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Carla L Miller
2226 Cottondale Lane
Suite 200
Little Rock, AR  72202

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

CLERK OF COURT

Address of Clerks Office

LARRY CRANE, CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W MARKHAM
LITTLE ROCK, AR  72201

LCLERK Mary Ann Neppl, DC

Date: 10/23/2013

No. 60CV-13-3913 This summons is for First Government Lease Co. (name of Defendant).

## PROOF OF SERVICE

❑ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❑ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❑ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❑ I delivered the summons and complaint to _____[name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❑ Other [specify]:
_____

❑ I was unable to execute service because:
_____
_____

My fee is $ ____.

To be completed if service is by a sheriff or deputy sheriff:

Date: _____     SHERIFF OF _____ COUNTY, ARKANSAS

                         By: _____
                         [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____       By: _____
                            [Signature of server]


                            _____
                            [Printed name]

Address: _____

_____

Phone: _____

**Subscribed and sworn to before me this date:** _____


                            _____
                            Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

ELECTRONICALLY FILED
2013-Oct-21 15:40:05
60CV-13-3913

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

FIRST STATE BANK                                        PLAINTIFF

VS.                          NO. 60CV-13-3913

CITY OF ALEXANDER, ARKANSAS
PAUL ANTHONY GRAVER AND
LANCE DOMINIQUE                                         DEFENDANTS


CITY OF ALEXANDER, ARKANSAS              CROSS COMPLAINANT

VS.

PAUL ANTHONY GRAVER AND
FIRST GOVERNMENT LEASE CO.               CROSS DEFENDANTS

---

**CROSS COMPLAINT AND PETITION FOR ORDER OF DELIVERY AND
PETITION FOR TEMPORARY AND PERMANENT RESTRAINING
ORDER**

---

## I.      Parties, Jurisdiction & Venue

Comes the City of Alexander, by and through its attorney, Carla L. Miller,

and for its Cross Complaint against the Cross Defendants Paul Anthony Graver

and First Government Lease Co. States:

1.      The Cross Complainant ("Alexander" or the "City") is a city of the

second class existing under Arkansas law, with its city hall located in Pulaski

County, Arkansas.

1

2.     Upon information and belief, Cross Defendant, First Government Lease Co. ("First Government") is an unincorporated Illinois business entity with its principal place of business located at PO Box 8331, Northfield, IL 60093. First Government is not registered to do business in Arkansas.

3.     Upon information and belief, Cross Defendant, Paul Anthony Graver ("Graver"), is an individual who resides in or about Chicago, Illinois and holds himself out as the President of First Government.

4.     The actions complained of herein occurred in Pulaski County, Arkansas.  This Court has jurisdiction over the parties and the subject matter hereof, and venue properly lies in Pulaski County.

## II.     Factual Background

5.     On or about October 11, 2013, Cross Defendant Graver and/or First Government, by and through an agent, took possession of One 1999 Freightliner, FL80 Firetruck, VIN 1FV6JLCB1XHA71796  ("Firetruck") from City of Alexander by purporting to have authority from First State Bank, Waynoka, Oklahoma, the Plaintiff herein, to repossess the vehicle.  See Exhibit A attached (State Police Incident Report).

6.     In addition to taking possession of the Firetruck, the agent of Cross Defendants denied the City employees access to the Firetruck to retrieve

equipment necessary for the function of the City's fire department, some of which belongs to the U.S. Government, and none of which is subject to any security lien.

7.     First State Bank did not authorize Graver or First Government to take any action against or with the City of Alexander on its behalf.  See Exhibit B, Affidavit of Michael George, President of First State Bank.

8.     The Firetruck is security for a Lease Purchase Agreement assigned to Shattuck Bank, Shattuck Oklahoma, payments for which are not in default.  See Exhibit C attached hereto.

9.     The Firetruck is not security for, nor is it in any way related to, any indebtedness owed to First State Bank.

10.    Defendants First Government and Paul Graver have no security or any other interest in the Firetruck that was removed from the possession of the City on October 11, 2013.  See Exhibit D, Arkansas Title Registration Report.

11.    Since October 11, 2013, Cross Defendant Graver has continually harassed employees of the City by telephoning and leaving voice mail messages that are verbally abusive to City employees elected officials.  Graver has furthermore falsely represented that he speaks on behalf of First State Bank, and threatened additional action against the City.  See Exhibit B.

3

## COUNT I
## UNLAWFUL REPOSSESSION - REPLEVIN

12.    Plaintiff re-states and realleges paragraphs 1-11 herein as if set out word by word.

13.    Cross Defendants  First Government and Graver have no security interest in the Firetruck, and as such neither is a secured party entitled to repossess collateral without judicial process under Ark. Code Ann. § 4-9-609.

14.    Defendants First Government and Graver acted without any legal authority to take possession of the Firetruck.

15.    The "repossession paperwork" presented the Arkansas State Police was falsified and therefore fraudulent. See Exhibits A, B, C and D.

16.    The Firetruck is not the subject of any pending litigation.

17.    The Firetruck is not security for any indebtedness that is currently in default.

18.    Defendants First Government and Graver provided no notice to the City of any authority they possess to exercise any security interest or right to take possession of the Firetruck.

19.    City employees, specifically, the firefighters in possession of the Firetruck at the time it was taken by the Cross Defendants, enlisted the aid of the Arkansas State Police when Cross Defendants First Government and Graver attempted to take the Firetruck from the employees' possession.  The resulting

4

incident breached the peace and therefore should have terminated any alleged repossession attempt. See Exhibit A.

20.     The actions of the Cross Defendants deprive the citizens of Alexander of equipment necessary for their health, safety and welfare and create the risk of irreparable harm if the Firetruck is not immediately returned.

21.     Cross Defendant has wrongfully repossessed the Firetruck and the City of Alexander is entitled to the immediate return of its property, damages, including punitive damages to deter such wrongful actions, and attorneys fees.

22.     In the alternative, the City is entitled to replevin of its property pursuant to Ark. Code Ann. § 18-60-801, et.seq.

## COUNT II
## CONVERSION

23.     Plaintiff restates and realleges paragraphs 1-22 as if set out word by word.

24.     The Firetruck is a moveable item of personal property owned by the City.

25.     Cross Defendants First Government and Graver have no security interest in the Firetruck, and have obtained no Court Order of Possession or any other legal authority to exercise dominion over the Firetruck.  As such, by taking possession of the Firetruck from the City Employees, Cross Defendants acquired possession of the Firetruck in an unauthorized manner.

5

26.  The "repossession paperwork" presented to the Arkansas State Police was falsified and therefore fraudulent.  See Exhibits A, B, C and D.

27.  Cross Defendants First Government and Graver removed the Firetruck from Pulaski County, Arkansas to an unnamed location with the intent to exercise control over it.

28.  Defendants First Government and Graver transferred possession of the Firetruck from the City to themselves without authority.

29.  **Defendants First Government and Graver** continue to withhold possession of the Firetruck from the City with no legal right to do so.

30.  Defendants First Government and Graver assert ownership over the Firetruck that is inconsistent with the City's Rights.

31.  The actions of the Cross Defendants First Government and Graver constitute distinct acts of dominion and control over the Firetruck that is inconsistent with the City's rights.

32.  Cross Defendants, having unlawfully obtained possession of the Firetruck are in unlawful possession of property belonging to the Plaintiff.

33.  Cross Defendants' actions constitute conversion of the City's property, and the City is entitled to the immediate return of the Firetruck.

34.    The actions of the Cross Defendants deprive the citizens of Alexander of equipment necessary for their health, safety and welfare and create the risk of irreparable harm if the Firetruck is not immediately returned.

35.    The City is entitled to damages, including punitive damages, and attorney's fees which result from the actions of Cross Defendants in unlawfully taking possession of and concealing the Firetruck, and removing the Firetruck from the jurisdiction of this Court.

36.    The City reserves the right to make a claim under Ark. Code Ann. §18-60-803 and §16-22-309 for damages and attorney's fees which result from any action by Defendant in concealing the vehicle, interfering with the enforcement of an Order of Delivery, removing the vehicle from the jurisdiction of this Court, asserting frivolous defenses or refusing to disclose the vehicle's location.

37.    The City is entitled to an Order for the immediate return of possession of the Firetruck, to damages, including punitive damages, and attorney's fees for conversion of the City's property.

## COUNT III
## VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT

38.    Cross Claimant restates and realleges Paragraphs 1-37, as if set out word by word.

7

39.    Cross Defendants, by their agent, presented false and/or misleading documentation to the City's employees and the Arkansas State Police to facilitate taking possession of the Firetruck. See Exhibits A, B, and C.

40.    Cross Defendants' actions constitute unconscionable, false, or deceptive act in business, commerce or trade in violation of Ark. Code Ann. § 4-88-107(a)(10), the Arkansas Deceptive Trade Practices Act.

41.    The actions of the Cross Defendants deprive the citizens of Alexander of equipment necessary for their health, safety and welfare and create the risk of irreparable harm if the Firetruck is not immediately returned.

42.    The City is entitled to damages, including punitive damages, and attorney's fees as a result of the actions of Cross Defendants.

43.    Cross Complainant is entitled to an Order of Delivery for the immediate return of the Firetruck, for damages, including punitive damages, and attorney's fees in connection with Cross Defendant's wrongful actions.

## COUNT IV
## TEMPORARY RESTRAINING ORDER

44.    Cross Claimant restates and realleges Paragraphs 1-43, as if set out word by word.

45.    Cross Defendants have unlawfully taken possession of the Firetruck, which is vital to the health, safety and welfare of its citizens.

46. Cross Defendant Graver continues to harass the City and its employees by using verbally abusive language in conversations and voice mail messages; and by falsely purporting to speak on behalf of First State Bank. See Exhibit B.

47. By being deprived of the use of the Firetruck, the City will suffer irreparable harm in the ability to manage emergencies that occur within the City.

48. The City is irreparably harmed by Cross Defendant Graver's harassment by being forced to divert its personnel and resources to dealing with Graver rather than tending to the business of the City.

49. Cross Defendants have no interest in the City of Alexander, nor any property owned by the City of Alexander; and are in unlawful possession of the City's property. See Exhibits A, B, C, and D.

50. Cross Defendants will suffer no harm resulting from a temporary restraining order.

51. The balance between the foregoing irreparable harm and any injury that may be suffered by the Cross Defendant if the temporary restraining order is granted weighs heavily in favor of the City.

52. The City is likely to succeed on the merits of its cross complaint.

53. The public interest weighs in favor of the entry of a temporary restraining order in favor of the City, because, as stated above, Cross Defendants

9

have no interest in the City or any property owned by the City, and no basis upon which to exercise any authority over the City or any property owned by the City.

54.    Cross Complainant reserves the right to amend this cross complaint.

**WHEREFORE,** Cross Complainant prays for an Emergency ex-parte Order of Delivery of the Firetruck; or in the alternative, for an immediate hearing for the Defendant to show cause as to why an Order of Delivery should not immediately be issued; for judgment for the recovery of the Firetruck; for a temporary and permanent restraining order restraining Cross Defendants from harassing the City and its employees, and attempting any legal, collection, repossession or other action against the City; for damages, including punitive damages, and attorney's fees; for its costs herein expended, and for all other just and proper relief.

Carla L. Miller (2012123)
The Miller Firm
2226 Cottondale Lane, Suite 200
Little Rock, AR  72202
(501) 454-2972
CarlaMiller.07@comcast.net

## CERTIFICATE OF SERVICE

I, Carla L. Miller, do hereby certify that the foregoing pleading / document has been served upon the following parties and/or attorneys of record by the following methods:

_XX__     E-mail Transmission
_____     Facsimile Transmission
_____     The Court's ECF System
_____     Hand Delivery
_____     First Class Mail, Postage Prepaid
_____     Other: _____

Christopher L. Travis
Gill Ragon Owen, P.A.
425 West Capitol Avenue, Suite 3801
Little Rock, AR 72201
travis@gill-law.com

on this 21st day of October, 2013.

_____
Carla L. Miller

11



## Arkansas Uniform Incident Report

Incident R... ELECTRONICALLY FILED
A-10-13-2013-Oct-21 15:40:05
60CV-13-3913

| | | |
|---|---|---|
| **S** | Type Incident<br>ALEXANDER FIRE TRUCK STOP | Incident Date<br>10/11/2013 | Incident Time<br>01:20 PM |

Exhibit A

**SUMMARY**

| Type Incident | Incident Date | Incident Time |
|---|---|---|
| ALEXANDER FIRE TRUCK STOP | 10/11/2013 | 01:20 PM |

| Call Location | Call Date | Call Time |
|---|---|---|
| I-440 EAST FROM I-30 | 10/11/2013 | 12:59 PM |

| Incident Address | Incident City | Incident State | Incident Zip Code |
|---|---|---|---|
| 163 MILE MARKER ON INTERSTATE 40 EAST | NORTH LITTLE ROCK | AR | 72117 |

| Number of Subjects | Number of Vehicles | Unit Assigned |
|---|---|---|
| 1 | 1 | A7 |

**SUBJECT 1**

The Subject is: **OPERATOR**

| | | | Subject SSN<br>999999999 |
|---|---|---|---|

| Subject - Last Name | Subject - First Name | Subject - MI | Subject - Suffix | Subject - Telephone # |
|---|---|---|---|---|
| ALLEN | RANDY | T | | |

| Subject - Address | Subject - City | Subject - State | Subject - Zip Code |
|---|---|---|---|
| 3445 SHAKER TOWN | ANTIOCH | TN | 37013 |

| Subject - Driver License Number | Subject - DL State | Subject - DL Endorsements | Subject - DL Class | DL Restrictions |
|---|---|---|---|---|
| 063151815 | TN | NONE | D | NONE |

| Subject - DOB | Subject - Race | Subject - Sex | Subject - Height | Subject - Weight | Subject - Hair Color | Subject - Eye Color |
|---|---|---|---|---|---|---|
| 2/16/1968 | AFRICAN AMERICAN | MALE | 5'10" | 210 lbs. | BLACK | BROWN |

| Subject - Employer<br>N/A | Subject - Work Number<br>(999)-999-9999 |
|---|---|

| Subject - Employer Address<br>N/A | Subject - Employer City<br>NOT AVAILABLE | Employer State<br>TN | Subject - Employer Zip Code<br>99999 |
|---|---|---|---|

| Injury Transported<br>☐ YES  ☒ NO | TRANSPORTED BY |
|---|---|

| HOSPITAL NAME | HOSPITAL CITY | HOSPITAL STAT... |
|---|---|---|

Subject - Additional Information
REPO OPERATOR OF THE FIRETRUCK

**VEHICLE 1**

Vehicle Class

### SUBJECT OF REPORT

| Year | Make | Model | Plate - Year | Plate - State |
|---|---|---|---|---|
| 2013 | NISSAN | ALTIMA | 2014 | TENNESSEE |

| Plate - Number | Vehicle - Body | Vehicle - Color | Vehicle Identification Number |
|---|---|---|---|
| L1135F | 4 DOOR | BLACK | 1N4AL3AP2DN549934 |

| Vehicle Towed<br>☐ YES<br>☒ NO | NAME OF TOWING SERVI... | ADDRESS VEHICLE REMOVED |
|---|---|---|
| | CITY VEHICLE REMOVED | STATE VEHICLE REMOVED | ZIP VEHICLE REMOVED |

Remarks
TRAIL VEHICLE

**Narrative**

ON FRIDAY 10/11/13 AT APPROXIMATELY 12:59 PM, TROOP A COMMUNICATIONS BROADCASTED THAT AN ALEXANDER FIRE TRUCK HAD BEEN TAKEN BY TWO BLACK MALES AND THE ASSISTANT FIRE CHIEF WAS FOLLOWING THE TRUCK ON INTERSTATE 440 EAST FROM INTERSTATE 30. TROOP A COMMUNICATIONS THEN ADVISED THAT THE TWO BLACK MALES CLAIMED TO BE REPOSSESSING THE FIRE TRUCK BUT DID NOT SHOW ANY PAPERWORK TO THE FIRE DEPARTMENT.

MYSELF AND TRP. CLEYTON MCDONALD PROCEEDED TO THE AREA. TRP. MCDONALD SAID HE WAS BEHIND THE FIRE TRUCK ON INTERSTATE 440 EAST, TAKING THE INTERSTATE 40 EAST EXIT. I TOLD HIM TO WAIT UNTIL I GOT BEHIND HIM BEFORE INITIATING A STOP. I CAUGHT UP WITH TRP. MCDONALD AROUND THE 163 MILE MARKER ON INTERSTATE 40 EAST. BEING THAT I'D NEVER HEARD OF A FIRE TRUCK BEING REPOSSESSED, I TOLD TRP. MC DONALD THAT WE WOULD CONDUCT A FELONY STOP FOR OFFICER SAFETY.

TRP. MCDONALD INITIATED A STOP AND THE FIRE TRUCK PULLED TO THE RIGHT SHOULDER. I ORDERED THE DRIVER (RANDY ALLEN) OUT AT GUNPOINT. I HANDCUFFED HIM AFTER I WALKED HIM BACK TO MY PATROL CAR. I ADVISED HIM HE WAS NOT UNDER ARREST BUT I WAS DETAINING HIM UNTIL WE FIGURED OUT WHAT WAS GOING ON. I NOTICED A BULGE ON HIS RIGHT HIP. I LIFTED HIS SHIRT AND DISCOVERED A HIGHPOINT 9MM HANDGUN (SERIAL# P153423+) I REMOVED THE HANDGUN AND TWO KNIFES FROM HIM. MR ALLEN STATED HE WAS REPOSSESSING THE FIRE TRUCK AND HE HAD PAPERWORK IN THE BLACK NISSAN ALTIMA (TN LPN'L1135F) THAT WAS BEHIND US. I PLACED MR. ALLEN IN THE REAR OF TRP. MC DONALD'S PATROL CAR AND ONCE AGAIN TOLD HIM HE WAS NOT UNDER ARREST. TRP. MC DONALD AND I CHECKED THE FIRE TRUCK FOR MORE OCCUPANTS BUT IT WAS EMPTY.

I WAS GIVEN THE REPOSSESSION PAPERWORK. THE PAPERWORK LOOKED LEGITIMATE AND HAD LETTERS FROM FIRST STATE BANK TO MAKE THE REPOSSESSION. IT ALSO INCLUDED A COPY OF THE TITLE TO THE FIRE TRUCK. ONCE I LOOKED OVER THE PAPERWORK AND FELT LIKE IT WAS ACCURATE, I TOLD TRP. MC DONALD TO REMOVE MR. ALLEN

**Narrative**

FROM HIS PATROL CAR AND TAKE THE HANDCUFFS OFF OF HIM.

ASSISTANT FIRE CHIEF WILLIAM BLANKENSHIP WAS ON SCENE AND I ALLOWED HIM TO REVIEW THE REPOSSESSION PAPERWORK. CHIEF BLANKENSHIP DID STATE THEY WERE IN A LEGAL BATTLE WITH THE FINANCE COMPANY. CHIEF BLANKENSHIP ALSO SAID THAT THEY HAD ALREADY AGREED TO ALLOW THE REPOSSESSION COMPANY TO TAKE THE FIRE TRUCK BUT THEY WERE UPSET BECAUSE IT HAD THEIR EQUIPMENT ON THE TRUCK AND THE REPOSSESSION COMPANY WAS SUPPOSE TO COME BACK TO THE FIRE DEPARTMENT TO ALLOW THE FIREMEN TO UNLOAD THEIR EQUIPMENT. I ASKED THE REPOSSESSION COMPANY IF THEY WOULD ALLOW THE FIREMEN TO REMOVE THEIR EQUIPMENT AND THEY AGREED.

IN THE MEANTIME, MAYOR MICHELLE HOBBS CALLED AND WANTED TO SPEAK TO ME. I TOLD MAYOR HOBBS THAT THE REPOSSESSION PAPERWORK LOOKED ACCURATE AND THIS WAS A CIVIL MATTER BETWEEN THE CITY AND THEIR FINANCE COMPANY. I TOLD HER THAT I DIDN'T FEEL THAT ANY CRIMINAL VIOLATIONS HAD BEEN COMMITTED.

ONCE THE FIREMEN REMOVED THEIR EQUIPMENT, I GAVE MR. ALLEN HIS LICENSE, HANDGUN AND TWO KNIVES BACK.  THE FIRE TRUCK WAS TAKEN TO A REPO LOT IN NASHVILLE, TENNESSEE

OWNER INFORMATION ON THE BLACK NISSAN ALTIMA:

BURGNER ENTERPRISE INCORPORATED
THRIFTY CAR RENTAL
121 BRILEY PARKWAY
NASHVILLE, TN 37217

| Rank SGT | Officer - Last Name LANN | Officer - First Name WILLIAM | Officer - MI B | Officer - Suffix |
|---|---|---|---|---|
| Officer - Signature *Sgt. Will B. Lann* | | Officer - Department ASP - TROOP A | | |
| | | Officer - Badge Number 0454 | | |
| Rank SGT | Supervisor - Last Name AGEE | Supervisor - First Name ERIC | Supervisor - MI | Supervisor - Suffix |
| Supervisor - Signature *SGT. E. G. Agee* | | Supervisor - Department ASP - TROOP A | | |
| | | Supervisor - Badge Number 21 | | |

ELECTRONICALLY FILED
2013-Oct-21 15:40:05
60CV-13-3913

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

FIRST STATE BANK                                      PLAINTIFF

VS.                          NO. 60CV-13-3913

CITY OF ALEXANDER, ARKANSAS
PAUL ANTHONY GRAVER AND
LANCE DOMINIQUE                                       DEFENDANTS

---

## AFFIDAVIT

---

STATE OF OKLAHOMA

COUNTY OF *Woods*

The undersigned, being duly sworn, deposes and states:

1. My name is Michael George and I am President of First State Bank, Waynoka, Oklahoma ("First State Bank").

2. First State Bank is the assignee of indebtedness owed by the City of Alexander, Arkansas which is the subject of the above captioned litigation.

3. First State Bank has had no communication with Paul Anthony Graver, First Government Lease Co., or Lance Dominique since the before the above-caption matter was filed on or about October 2, 2013.

4. First State Bank did not authorize Paul Anthony Graver, First Government Lease Co., or Lance Dominique to take any action against or with the City of Alexander, including, but not limited to, attempting to collect any money, taking possession of any vehicle, personal property, or real property, or negotiating any settlement, in connection with the indebtedness that is the subject of this suit or otherwise.

1

Exhibit B

5. Further, affiant sayeth not.

_Michael George_
Michael George

Subscribed and sworn to this ___18th___ day of October, 2013.

_Machelle K. Zook_
Notary Public

My commission expires

___8/30/2014___

2

ELECTRONICALLY FILED
2013-Oct-21 15:40:05
60CV-13-3913

# *First Government Lease Co.*

## One-Page Lease To Own Financing

PO Box 8331                Telephone 866.793.9670        www.firstgovernment.com
Northfield, IL 60093       Telefax 847.446.8377          info@firstgovernment.com

### Assignment Of A Undivided Interest In A Municipal Lease Purchase Agreement

Under the Municipal Lease Purchase Agreement dated 5/15/08 ("Lease") between First
Government Lease Co. ("Lessor") and City of Alexander ("Lessee"), Lessor may assign all of
its rights, title and interest in and to the Lease, the equipment subject to the Lease
("Equipment"), any documents executed with respect to the Lease, and any security interest in
the Lease and the Equipment (collectively, "Lessor's Rights"). Lessor has assigned to the
Municipal Lease Purchase Agreement Purchaser ("Purchaser") all of its interest in the
Lessor's Rights. Purchaser in consideration of the payment of $30,397.79 ("Principal
Amount") hereby receives an undivided 100% interest in the Lessor's Rights*. Lessor
warrants that as of this date no Event of Default (as defined in the Lease) has occurred under
the Lease.

Lessor agrees to act as Assignee's agent with respect to the performance of all ministerial
matters in connection with the Lease, including giving and receiving notices, making required
filings and receiving payments from Lessee and disbursing Assignee's pro rate portion thereof
to Assignee. (Assignees shall indemnify Lessor against all claims arising in connection with
Lessor's actions as agent for Assignee.) If there is an Event of Default, at Assignee's request
and solely as its agent, Lessor shall take all steps that it believes, in its sole discretion, are
appropriate to enforce Assignee's rights under the Lease. If there is an Event of Default and
Lessor is requested to act on Assignee's behalf, Lessor shall be entitled to deduct from any
payments received from Lessee an amount equal to the costs, including reasonable attorneys'
fees, it incurs in enforcing Assignee's rights.

This Assignment shall inure to the benefit of and be finding upon Lessor and Assignee and
their respective successors and assigns.

- 38 remaining payments of $884.00 starting 5/1/12.

Purchaser                                     First Government Lease Co.

By:                                           By:
                                              Officer

Date: 4/5/12

Exhibit C

JUN-25-2008 09:49  FROM:                                  TO:15014555531         P.3/3

# First Government Lease Co.

## Lease Purchase Agreement

Lessor:
First Government Lease Co.
Box 8331
Northfield, IL 60093-8331
866.793.9670 or 847.441.5684
Fax 847.441.5012
info@firstgovernment.com

Lessee:
Name: _CITY OF ALEXANDER_

Address: _PO BOX 610_

City: _ALEXANDER_          State: _AR_    Zip: _72002_

Phone: _501 350 3957_       Fax _501 455 5531_

Description of Equipment: _1999 FREIGHTLINER MODEL FL80_ VIN: _1FU6JLCB1XHA_
                                                                        _71796_

Quantity: _1_  Unit Price: _50,000_  Total: _50000_

Total Cash Price   _$50,000_     2008 2B3KA43N18H2Y73910 Number of Pmts. (Term) _84 MONTHS_

Less Down Pmt.      ___          2008 2B3KA43N  Amt. of each Pmt. _$884_

Net               _$50,000_      285535           Lease Beginning Date _5/15/08_

Interest & A.P.R.  _24325_                          First Payment Due Date _7/1/08_

Total Lease Price  _$74325_

Lessor hereby leases to lessee that certain equipment described above, subject to the terms, provisions, conditions and agreements of this lease hereinafter set forth:
1. Said equipment is leased beginning and for the Term specified above
2. Lessee agrees to pay lessor one monthly payment specified above on the Lease Beginning Date and equal successive monthly payments until an amount equal to the total lease price specified above has been paid. Any amount due under this Lease which is past due more than ten (10) days must be subject to a multiple time late payment charge of $100 per occurance plus an amount equal to ten percent (10%) of the amount past due.
3. Lessee may purchase said equipment at any time during the lease term for the total lease price, less any payment already made and also less a portion of the lease service fee according to a schedule furnished on request by lessor to lessee, shall constitute purchase of the equipment. Also payment of all the monthly payments when due shall automatically constitute purchase and equipment effective on the last day of this lease period.
4. Lessee may cancel this Lease Purchase Agreement only with Lessor's written approval at any time within, the first 90 days of lease by giving written notice to Lessor and returning said equipment to Lessee, or to its order, in good condition as received, less normal wear, tear and depreciation. Upon such proper return, Lessee shall have no obligation to make payments coming due after the notice period.
5. Lessee, at its own cost and expense, shall keep the equipment in good repair, condition and working order and shall furnish any and all parts, mechanism and devices required to keep the equipment in good mechanical and working order. Lessee hereby assumes and shall bear the entire risk of loss and damage to the equipment from any and every cause whatsoever. No loss or damage to the equipment or any part thereof, shall impair any obligation of Lessee under this lease which shall continue in full force and effect. Lessee hereby appoints Lessor as Lessor's attorney in fact with full power to do all things to protect and further Lessor's and Lessor's agreement as set forth herein, including but not limited to, signing and filing UCC's, title applications and taking such other actions as Lessor deems reasonable and necessary. Lessee is obliged within 60 days of the Lease Beginning Date to provide an original duplicate title to Lessor, failing to provide a duplicate title within 60 days of Lease Beginning Date is an event of default.
6. If Lessee with regard to any item or items of equipment fails to pay any rent or other amount herein provided with 60 days after the same is due and payable, or if Lessee with regard to any item or items of equipment fails to observe, keep or perform any other provision of this lease required to be observed, kept or performed by Lessee. Lessor shall have the right to exercise any one or more of the following remedies  a. To declare the entire amount of rent becoming immediately due and payable as to any or all items of equipment, without notice or demand to Lessee.  b. To sue for and recover all rents, and other payments then accrued or thereafter accruing, with respect to any or all items of equipment.  c. To take possession of any or all items of equipment without demand or notice, wherever same may be located, without any court order or other process law.  d. To terminate this lease as to any or all items of equipment  e. To pursue any other remedy at law or in equity, notwithstanding any said repossession, or any other action which Lessor may take, Lessee shall be and remain liable for the full performance of all obligations on the part of Lessee to be performed under this lease.  f. Lessee further agrees to pay all attorneys' fees incurred by Lessor in enforcing Lessor's rights under this agreement. All such remedies are cumulative, and may be exercised concurrently or separately.
7. Lessee intends to do all things lawful within its power to obtain and maintain funds from which payments may be made, including making provision for such payments to the extent necessary in each periodic budget submitted and adopted in accordance with applicable provisions of state and local law, to in no such portion of the budget approved and to exhaust all available reviews and appeals in the event such portion of the budget is not approved. Lessee reasonably believes that legally available funds in an amount sufficient to make all Lease Payments during the term can be obtained.  After a nonappropriation, the Lessee may not use other property or equipment to perform the same, or substantially similar, services for a period of one year.
8. Upon commencement of the Term, title to the equipment shall pass to Lessee from vendor or supplier. Lessee hereby grants a security interest in the equipment described herein, and the proceeds thereof to Lessor.
9. Lessee agrees to bring any judicial action arising directly or indirectly in connection with this agreement or any transactions covered hereby only in Courts located within Cook County, IL. Lessee also consents and submits to the jurisdiction of any State or Federal Court located within Cook County, IL. The choice of law shall be IL.
10. I certify that I am duly authorized to act within the powers of my office by executing this Lease Agreement, and the equipment being financed is essential to its governmental mission
In witness whereof, the parties hereto have executed this lease this _15_ day of _MAY_ 20_08_.
By _____              _____              _MAYOR SHIRLEY JOHNSON_
First Government Lease Co.        (Lessee Signature)                (Print Signature and Title)

As Counsel for Lessee, I acknowledge that I have reviewed this Lease Purchase Agreement, the extent of any enabling statutes, and all necessary proceedings taken by the Lessee to authorize and execute this Lease Purchase Agreement, and therefor, I am of the opinion:  a. That the Lessee is a duly constituted public corporation and political subdivision of the State referred to above, and  b. This Lease Purchase Agreement has been duly authorized, executed and delivered by an authorized representative of the Lessee and is enforceable against the Lessee in accordance with its terms and conditions, and  c. This Lease Purchase Agreement is a legal, valid and binding obligation of the Lessee.

_____              _____ KNOFF_  _PATRICK DUVAL_
(Counsel for Lessee)          (Print Signature and Title)

# Arkansas Interactive Title Registration and Lien Report Summary
Fri Oct 18 11:47:47 CDT 2013

INFORMATION NETWORK OF ARKANSAS SUBSCRIPTION SERVICE

## Arkansas ITRL Summary



Vehicle Information

| Type | TK | Color. | RED | Purchase Date | 1999-05-25 |
|------|----|--------|-----|---------------|-----------|

| Year. | 1999 | Make. | FREIGHTLINER | Model | F80 |
|-------|------|-------|-------------|-------|-----|

| VIN | 1FV6JLCB1X(A71796 | No of Cylinders | 6 | Weight | 12393 |
|-----|-------------------|-----------------|---|--------|-------|

| Dismantled: | | Stop Process | | Stop Process Date | 1899-12-30 |
|-------------|--|--------------|--|-------------------|-----------|

Registration Information

| License No. | X12510 | Inv Type: | City / County Truck or Trailer |
|-------------|--------|-----------|--------------------------------|

| Decal No · | | Expiration Date | 0001-01-01 |
|------------|--|-----------------|-----------|

| Registration Status: | Title Issued |
|----------------------|--------------|

Owner Information

WOODLAND HILLS VOLUNTEER FIRE DEPARTMENT

PO BOX 87
ALEXANDER AR 72002

Title Information

| Title Brand: | | Odometer Reading | 0 | Odometer (4) Code | Exempt |
|--------------|--|------------------|---|-------------------|--------|

| Title No · | 9991060RS97 | Date Issued | 2006-03-13 |
|------------|-------------|-------------|-----------|

| Prev Title No. | 999403F3497 | Pr Title Info | C | Pr Title ST· AR |
|----------------|-------------|---------------|---|-----------------|

| Title Lien 1 | GOVERNMENT CAPITAL 345 MIRON DRIVE SOUTHLAKE TX 76092 |
|--------------|-------------------------------------------------------|

| Contract Date. | 2002-07-10 | Release Date | 2006-03-13 |
|----------------|------------|--------------|-----------|

Exhibit D



Title Lien 2:                          MARQUETTE BANK
                                  10000 WEST 151ST STREET
                                       ORLAND IL 60452

      Contract Date       2002-06-28   Release Date:        0001-01-01

Title Lien 3:

      Contract Date:                    Release Date:

Title Lien 4

      Contract Date:                    Release Date

            Use the print function in your browser to print this record.
         Records are not stored. You will be charged $1.50 for each new search

                              [ Search Again ]

                            [ Order Certified Copy ]

      * The following paragraph was used for the search reg who IVMLLDE blind HBB use Remunerate lion

              If you are having trouble reviewing your results, please forward us a trouble SUBMIT

Carla L. Miller
Attorney at Law
The Miller Firm
2226 Cottondale Lane, Suite 200
Little Rock, AR 72202
501-454-2972
carlamiller.07@comcast.net
www.TheMillerFirm.net

*Admitted in Arkansas and New York

Like us on Facebook: www.facebook.com/CarlaLMillerPllc

Follow us on Twitter: www.twitter.com/@Attorney1n12

This e-mail message and any attachments contain confidential information that may be legally privileged. If you are not the intended recipient, you must not review, retransmit, convert to hard copy, copy, use or disseminate this e-mail or any attachments to it. If you have received this e-mail in error, please immediately notify us by return e-mail or by telephone at 501-454-2972 and delete this e-mail. Please note that if this e-mail contains a forwarded message or is a reply to a prior message, some or all of the contents of this message or any attachments may not have been produced by the above sender. Receipt of e-mail does not establish an attorney-client relationship. FAIR DEBT COLLECTION PRACTICES ACT NOTICE. A portion of this firm's practice involves the collection of debts. If you are a debtor, anything you say or communicate by e-mail or other means can be used for that purpose.

# Exhibit B

ELECTRONICALLY FILED
2013-Oct-02 16:19:21
60CV-13-3913



**EXHIBIT B**

### STATE OF ARKANSAS
### SIXTH JUDICIAL CIRCUIT
### CIRCUIT COURT OF PULASKI COUNTY

FIRST STATE BANK,

        **Plaintiff,**

versus

CITY OF ALEXANDER, ARKANSAS;
PAUL ANTHONY GRAVER; AND
LANCE DOMINIQUE,

        **Defendants.**

### PETITION FOR DECLARATORY JUDGMENT AND SUPPLEMENTAL RELIEF

First State Bank, by and through its attorneys, GILL RAGON OWEN, P.A., for its petition for declaratory judgment and supplemental relief states as follows:

1. **This action seeks** (1) a **determination of the validity of a lease-purchase agreement** executed by the City of Alexander, Arkansas, (2) a **determination of the validity of an assignment** by Paul Graver d/b/a First Government Lease Co., **and** (3) **supplemental relief** against one or both of the defendants.

2. Pursuant to Ark. R. Civ. P. 57, First State Bank requests a speedy hearing of the petition and that this Court advance this matter on its docket.

### PARTIES

3. First State Bank (the "Bank") is an Oklahoma corporation.

4. Defendant Paul Anthony Graver ("Graver" sometimes referred to herein as "First Government"), is an individual who resides in the Chicago, Illinois,

Page 1 of 14

area and does business as "First Government Lease Co." or "First Government Leasing Company."

    a.    While preparing this lawsuit, the Bank learned that, in 1992, Graver consented to an order in a Securities and Exchange Commission administrative proceeding. *SEC v. Graver*, Civil Action No. 92-C-4276 (the "SEC Proceeding").

    b.    In the SEC Proceeding, **Graver admitted** that he effected transactions or induced or attempt to induce the purchase or sale of securities by means of **manipulative, deceptive, and other fraudulent devices** and contrivances and that **he defrauded investors of tens of thousands of dollars**. Graver also admitted that, as a result of three separate schemes to defraud, Graver Associates (a company of which he was founder, president and chairman and that he alone owned) purchased or sold securities after Graver himself induced the purchase or sale by providing the purchaser or seller with **materially false or misleading information, including**, among other things, **forged documents**. Graver also admitted that, as part of the foregoing course of conduct, Graver Associates **willfully violated** Section 15(c)(1) of the Exchange Act and Rule 15c1-2 thereunder – the anti-fraud provisions of the Exchange Act.

    c.    To resolve the SEC Proceeding, **Graver consented to be barred** from association with any broker, dealer, or municipal securities dealer.

5.     Defendant Lance Dominique ("Dominique"), is an individual who, upon information and belief, resides in or around Chicago, Illinois. Dominique does business as "Dominique PLC".

6.     Defendant City of Alexander, Arkansas ("Alexander"), is a city of the first class existing under Arkansas law in Pulaski County, Arkansas.

## JURISDICTION AND VENUE

7.     Graver and Dominique collectively have loaned money to Alexander several times since 1992. In addition, they have loaned money to at least six other Arkansas cities or counties. By their loaning money to Arkansas cities and counties since 1992, the Arkansas contacts of Graver and Dominique have been continuous, systematic, and substantial.

8.     Graver and Dominique loaned Alexander money through the municipal obligation underlying this lawsuit; therefore, they should reasonably anticipate that they may be haled before this Court to litigate issues related to the specific municipal obligation at issue.

9.     This Court has both general and specific personal jurisdiction over Graver and Dominique.

10.     Alexander is a creature of Arkansas statute, and therefore, this Court has jurisdiction over it.

11.     Venue is proper in this Court because one of the defendants, Alexander, is located within Pulaski County, Arkansas.

## FACTS SHOWING ENTITLEMENT TO RELIEF

12.    On August 6, 2007, the City Council of Alexander considered and passed a resolution to "PERMIT FIRST GOVERNMENT TO REFINANCE LOANS FOR THE FIRE AND POLICE DEPARTMENT AT A LOWER RATE." The minutes of that meeting are attached as Exhibit A.

13.    On August 8, 2007, Alexander executed a Lease Purchase Agreement, a copy of which is attached as Exhibit B (the "Lease Purchase Agreement") and incorporated herein. The Lease Purchase Agreement describes the "equipment" being acquired by Alexander from Graver as follows: "Property @ 15413 S. Alexander Rd; plus all improvements including the multi story 70 x 80 building" with a principal amount of $350,000 payable in 168 monthly installments of $4,900 at a stated interest rate of 9.9%. On August 8, 2007, neither First Government nor Alexander owned the property described in the Lease Purchase Agreement.

14.    Alexander did not acquire title to the property until October 1, 2007. See Warranty Deed attached hereto as Exhibit C.

15.    Alexander did not use the proceeds of the Lease Purchase Agreement to acquire the property. Instead, Alexander used the proceeds of the Lease Purchase Agreement as follows:

| Lease# | Dated | Equipment | Pay Off | Monthly Pmt. Amt. |
|--------|-------|-----------|---------|-------------------|
| VI | 3/10/06 | Refi & 06 | $78,573.33 | $2,107.29 |
| VII | 10/30/06 | Four Squads | $8,938.04 | $360.28 |
| IX | 4/25/07 | Crown Vic. | $21,493.83 | $477.92 |
| Marquette Bank | | Fire Truck | $91,285.00 | |
| | | | $200,290.20 | |
| **Check Payable to the City of Alexander** | | | **$149,709.80** | |
| **Total Use of Proceeds** | | | **$350,000.00** | |

16.    On November 29, 2007, for reasons unknown to First State Bank, Alexander executed a Note, a copy of which is attached as Exhibit D (the "Note"), in the original principal amount of $350,000, payable to the order of First Government in 168 monthly installments of $4,970.83, with no stated interest rate.

17.    On November 29, 2007, Alexander executed a Commercial Real Estate Mortgage in favor of First Government, a copy of which is attached hereto as Exhibit E (the "Mortgage"), which was filed as Instrument Number 07-125936 in the real estate records of Saline County, Arkansas. The Mortgage states that it secures the Note.

18.    On May 4, 2012, Dominique sent First State Bank a document offering to sell the Lease Purchase Agreement to First State Bank. The offering document is attached hereto as Exhibit F.

19.    First State Bank acquired the Lease Purchase Agreement in reliance on (a) the misrepresentations made by Alexander in the Lease Purchase Agreement (namely, that its proceeds were used to finance the firehouse), (b) Graver's and Dominique's misrepresentations in the offering document, and (c) Graver's failure to disclose that he had an admitted history fraud in in the securities industry and been banned by the SEC from any association with a municipal securities dealer.

20.    First Government executed an Assignment of an Undivided Interest in a Municipal Lease Purchase Agreement, dated May 7, 2012 (the "Assignment"), in favor of First State Bank, a copy of which is attached hereto and incorporated herein as Exhibit G. The Assignment purported to assign to First State Bank an

undivided interest in and to the Lease Purchase Agreement. First State Bank paid Graver $393,910.55 for the Assignment.

21.     Graver did not assign the Note or the Mortgage to First State Bank. First State Bank, therefore, does not own the Note or the Mortgage, although Graver and Dominique represented that it would.

22.     Alexander paid made 56 payments of $4,970.83 to First Government and approximately 11 payments of the same amount to First State Bank. Alexander quit making payments in March 2013 and refused to make payments since then because Alexander maintains, among other things, that the Lease Purchase Agreement is void because its terms violate Article 16, § 1 of the Arkansas Constitution.

## COUNT I
REQUEST FOR DECLARATION OF VALIDITY OF LEASE-PURCHASE AGREEMENT

23.     First State Bank re-alleges the allegations in Paragraphs 1 through 22 as if set forth herein word for word.

24.     Pursuant to Arkansas Code Annotated § 16-111-104, First State Bank is an interested party under the Lease Purchase Agreement, which is a written contract, and therefore is entitled to "have determined any question . . . of validity arising under the . . . contract and obtain a declaration of rights, status or other legal relations thereunder."

25.     Pursuant to Arkansas Code Annotated § 16-111-106, all parties who may be interested in the Lease Purchase Agreement have been made parties to this action, including Alexander, because this action "involves the validity of a municipal

ordinance" (i.e., the motion made and passed on August 6, 2007).

26.     First State Bank requests from this Court a **declaration as to the validity of the Lease Purchase Agreement**.

## COUNT II
### REQUEST FOR DECLARATION OF VALIDITY OF ASSIGNMENT

27.     First State Bank re-alleges the allegations in Paragraphs 1 through 22 as if set forth herein word for word.

28.     Pursuant to Arkansas Code Annotated § 16-111-104, First State Bank is an interested party under the Assignment, which is a written contract, and therefore is entitled to "have determined any question . . . of validity arising under the . . . contract and obtain a declaration of rights, status or other legal relations thereunder."

29.     Pursuant to Arkansas Code Annotated § 16-111-106, all parties who may be interested in the Assignment have been made parties to this action.

30.     First State Bank requests from this Court **a declaration as to the validity of the Assignment.**

## COUNT III
### FIRST REQUEST FOR SUPPLEMENTAL RELIEF

31.     First State Bank re-alleges the allegations in Paragraphs 1 through 30 as if set forth herein word for word.

32.     Pursuant to Arkansas Code Annotated § 16-111-110, First State Bank has the right to petition this Court for supplementary relief based on the declaratory judgments entered by this Court as to the validity of the Lease

Purchase Agreement and the validity of the Assignment.

33.     For at least the reasons that follow, if this Court finds that the Lease Purchase Agreement or the Assignment, or both, are invalid, First State Bank petitions this Court for an order requiring Graver and Dominique to show cause why further relief should not be granted forthwith.

34.     The Lease Purchase Agreement and the Assignment are a "security[ies]" pursuant to Arkansas Securities Act, Ark. Code Ann. § 23-42-102(15)(A) and Section 2(1) of the Securities Act of 1933.

35.     Sections 23-42-106(a)(1) & (1)(B) of the Arkansas Securities Act and Section 10b of the Securities Exchange Act of 1934 and rule 10b–5 promulgated pursuant thereto, create liability for any person who offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of circumstances under which they are made, not misleading.

36.     Dominique offered to sell the Lease Purchase Agreement to First State Bank when he delivered the offering document to First State Bank. See Exhibit F.

37.     Graver sold the Lease Purchase Agreement to First State Bank when Graver executed the Assignment. See Exhibit G.

38.     The offering document failed to disclose that Graver admitted to committing fraud and agreed to be banned from the municipal securities industry.

39.     The offering document and the Lease Purchase Agreement also contained material affirmative misrepresentations and omitted material

information necessary to make the statements contained therein not misleading. The offering document contained at least the following intentional misrepresentations:

     a.    the interest paid by Alexander would be tax exempt;

     b.    the obligation had a remaining term of 112 months;

     c.    the proceeds were used to acquire certain real property; and

     d.    First State Bank would receive a mortgage on the real property.

40.    The offering document failed to disclose that the Lease Purchase Agreement was void. Article 16, § 1 of the Arkansas Constitution states:

Neither the State nor any city, county, town or other municipality in this State shall ever lend its credit for any purpose whatever; ***nor shall any county, city or town or municipality ever issue any interest bearing evidences of indebtedness ....*** (emphasis added).

41.    Although Amendments 62, 65, and 78 to the Arkansas Constitution allow cities to incur debt notwithstanding the prohibition in Article 16, § 1, Alexander did not comply with any of those Amendments when it issued the Lease Purchase Agreement (or the Note and Mortgage), and Graver and Dominique failed to disclose that fact to First State Bank. If they had, First State Bank would never have acquired the Lease Purchase Agreement.

42.    If Alexander issued the Lease Purchase Agreement in violation of Article 16, § 1 of the Arkansas Constitution, the Lease Purchase Agreement is therefore void and unenforceable.

43.    If the Lease Purchase Agreement is void because it violates the Arkansas Constitution, then it is not an "obligation" of Alexander as required by § 103 of the Internal Revenue Code, thereby making any interest paid by Alexander not exempt from federal income taxation. The failure to disclose that the obligation was not valid makes the representation that the interest would be tax exempt misleading.

44.    The offering document also failed to disclose that the Lease Purchase Agreement contained a so-called "non-appropriation clause" that allowed Alexander to terminate the obligation in any year it failed to appropriate money to make the payments. The ability of Alexander to unilaterally cancel a multi-year obligation is a material omission that makes the disclosed 112 month term misleading; the non-appropriation clause made the "real" term 12 months at a time (if this were even a valid obligation).

45.    The offering document also failed to disclose the actual use of the proceeds (i.e., refinancing vehicle debt and paying money to Alexander), which makes the disclosed use of proceeds (i.e., acquiring real property) false.

46.    Although Alexander eventually signed a mortgage on the real property supposedly acquired by the Lease Purchase Agreement, that mortgage was never assigned to First State Bank. Because Graver and Dominique failed to assign the Mortgage to First State Bank, the representation in the offering document that the Lease Purchase Agreement would be secured by a mortgage is misleading.

47.    By tendering the Lease Purchase Agreement to Graver and Dominique

by certified mail, First State Bank has offered to sell the Lease Purchase Agreement back to Graver and Dominique for the amount First State Bank paid for it, less payments received from Alexander, plus interest at 6% per year, and plus attorneys' fees. See Exhibits H and I attached hereto. To this date, neither Graver nor Dominique has accepted that offer.

48.    Graver has a pattern and practice of defrauding Arkansas cities and counties by enticing them to issue invalid lease purchase agreements. Attached to this Complaint as Exhibit J is a list of municipal "obligations" that Graver touted to First State Bank as being for sale. This list includes four transactions that involve Arkansas cities or counties.

49.    Graver structured the Lease Purchase Agreement with gross disregard for Arkansas law. Because Graver specializes in municipal lease finance and has financed 1,000s of transaction in all 50 states,[1] he knew that Arkansas municipalities are prohibited by Article 16, § 1 of the Arkansas Constitution from issuing interest bearing evidences of indebtedness such as the Lease Purchase Agreement.

50.    Additionally, Graver included a non-appropriation clause in the Lease Purchase Agreement, but the Arkansas Supreme Court has rejected the argument that such clauses comply with Article 16, § 1 of the Arkansas Constitution. Brown v. City of Stuttgart, 312 Ark. 97; 847 S.W.2d 710 (1993).

---

[1] See Graver's website, http://www.firstgovernment.com/about.html, last visited September 19, 2013.

51.     Graver intentionally structured the Lease Purchase Agreement in a way that violated Arkansas law, and Graver and Dominique intentionally offered to sell and sold the Lease Purchase Agreement to First State Bank as a duly authorized, valid and binding obligation of Alexander, which was enforceable in accordance with its terms, when in fact Graver and Dominique knew the Lease Purchase Agreement in no way complied with Arkansas law, the Lease Purchase Agreement and the offering document contained numerous misrepresentations, and omitted information necessary to make the representations that were made not misleading. Therefore, Graver and Dominique violated 23-42-106(a)(1) & (1)(B) of the Arkansas Securities Act and Section 10b of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder.

52.     First State Bank relied on the misrepresentations and material omissions of Graver and Dominique in acquiring the Lease Purchase Agreement, and its reliance was reasonable.

53.     First State Bank has suffered damage caused by the intentional misrepresentations and material omissions of Graver and Dominique in an amount at least equal to $381,174.27, plus attorney fees and costs.

54.     Accordingly, First State Bank is entitled to a **judgment against Graver and Dominique** in an amount to be proven at trial, but in no event less than **$381,174.27**, plus punitive damages, its attorneys' fees, its costs in prosecuting this action, and all other just and equitable relief to which it may be entitled.

55.     First State Bank reserves the right to plead further in this regard.

## COUNT IV
### SECOND REQUEST FOR SUPPLEMENTAL RELIEF

56.     First State Bank re-alleges the allegations in Paragraphs 1 through 55 as if set forth herein word for word.

57.     If this Court declares the Lease Purchase Agreement, the Note, and the Mortgage to be valid obligations of Alexander, First State Bank petitions this Court for an order requiring Alexander to show cause why further relief should not be granted forthwith for breach of contract, equitable estoppel, constructive trust, restitution, inverse condemnation, foreclosure, and/or fraud.

58.     **If this Court declares the Lease Purchase Agreement enforceable in** accordance with its terms, First State Bank is entitled to a **judgment against Alexander** in amount greater than $75,000 and equal to the full payments required under the Lease Purchase Agreement, its attorneys' fees, its costs in prosecuting this action, and all other just and equitable relief to which it may be entitled.

59.     First State Bank reserves the right to plead further in this matter and to amend its pleadings and to add and/or substitute parties.

## CONCLUSION

60.     According to the facts stated in Counts I, II, III, and IV, First State Bank is entitled to a declaration as to the validity of the Lease Purchase Agreement and the Assignment and to supplemental relief against Graver and Dominique as alleged in Count III or Alexander as alleged in Count IV.

WHEREFORE, First State Bank requests declarations of the validity of the Lease Purchase Agreement and the Assignment and supplemental relief to which it may be entitled, including without limitation, judgment against the defendants for the following:

(a)  compensatory damages in an amount no less than $381,174.27;

(b)  punitive damages;

(c)  attorneys' fees;

(d)  costs; and

(e)  all other just and equitable relief to which it may be entitled.

Respectfully submitted,

GILL RAGON OWEN, P.A.
425 W. Capitol Avenue, Suite 3801
Little Rock, Arkansas 72201
(501) 376-3800

By: /Christopher L. Travis/                        
Christopher L. Travis, Arkansas Bar No. 97093
and
Drake Mann, Arkansas Bar No. 87108

ELECTRONICALLY FILED
2013-Oct-02  16:19:21
60CV-13-3913

CITY OF ALEXANDER
COUNCIL MEETING
AUGUST 6, 2007
6:00 P.M.

Mayor Johnson called the meeting to order @ 6:00 p.m. and Recorder Michelle Kidd proceeded with roll call:

Present were Daisy Hill, Michael Huck, Phillip Jones, Faye Mckeon, Paul Mitchell, and Dorothy Smith.
Roger Gray was absent.

A motion was made by Faye McKeon to accept the minutes. Seconded by Dorothy Smith.

**AYE"S**

Daisy Hill
Michael Huck
Phillip Jones
Faye McKeon
Paul Mitchell
Dorothy Smith

A motion was made and carried to accept and dispense the reading of the minutes.

**Unfinished Business**

Public Safety Committee presented the council with a written report for the Police and Fire Department.

A motion was made by Daisy Hill to accept the Animal Control Ordinance 2007/05. **AN ORDINANCE PROVIDING FOR THE CONTROL, WELFARE, AND MAINTENCE OF DOMESTIC ANIMALS WITHIN THE CITY OF ALEXANDER, ARKANSAS ESTABLISHING PENALTIES FOR THE VIOLATION THEREOF; DECLARING AN EMERGENCY, AND FOR OTHER PURPOSES.** Seconded by Michael Huck.

**AYE'S**                                   **NAYE'S**

Daisy Hill                                  Paul Mitchell
Michael Huck
Phillip Jones
Faye McKeon
Dorothy Smith

EXHIBIT
"A"

A motion was made by Faye McKeon and seconded by Phillip Jones to suspended the reading of the **ANIMAL CONTROL ORDINANCE 2007/05**–3 TIMES.

**AYE'S**

Michael Huck
Phillip Jones
Faye McKeon
Paul Mitchell
Dorothy Smith
Daisy Hill

A motion was made by Daisy Hill and seconded by Faye McKeon, Declaring an **EMERGENCY FOR ANIMAL CONTROL ORDINANCE 2007/05.**

**AYE'S**
Phillip Jones
Faye McKeon
Paul Mitchell
Dorothy Smith
Daisy Hill
Michael Huck

**A MOTION WAS MADE AND PASSED FOR THE ANIMAL CONTROL ORDINANCE 2007/05. AN ORDINACE PROVIDING FOR THE CONTROL, WELFARE, AND MAINTENCE OF DOMESTIC ANIMALS WITHIN THE CITY OF ALEXANDER, ARKANSAS; ESTABLISHING PENALTIES FOR THE VIOLATION THEREOF; DECLARING AN EMERGENCY, AND FOR OTHER PURPOSES.**

**A MOTION WAS MADE AND PASSED TO SUSPEND THE READING OF THE ORDINANCE 2007/05...3 TIMES.**

**A MOTION WAS MADE AND PASSED, DECLARING ORDINACE 2007/05 AN EMERGENCY.**

Mayor Johnson appointed the following residents to the animal control committee.

Linda Huck            Director
Shanna Diaz
Faye McKeon
Michael Huck
Louis Hobbs
Jerry Ball
Brian Culler

Andy Mullins
Allen Spears
**This is an unpaid and appointed position.**

Faye McKeon presented to the mayor and council a few questions about the park, street signs and lights in St. Joseph Glenn, and tires that are still being brought into the city. Dorothy Smith stated that the company has been working on the park. Mayor Johnson said the City has not ordered any new street signs or lights for the subdivision, and hasn't received or paid a bill for it. Chief Duvall will handle the tires situation.

**NEW BUSINESS:**

A motion was made by Faye McKeon to adopt ordinance 2007/06. **AN ORDINANCE ADOPTING CODE STANDARDS AND ESTABLISHING PERMIT FEES, REQUIREMENTS AND PENALTIES FOR CODE ENFORCEMENT, DECALRING AN EMERGENCY AND FOR OTHER PURPOSES.**

**AYE'**                                          **NAYE'S**

Faye McKeon                                       Paul Mitchell
Dorothy Smith
Daisy Hill
Michael Huck
Phillip Jones

A motion was made by Faye McKeon and seconded by Dorothy Smith to **suspend the reading of ordinance 2007/06 --- 3-times.**

**AYE'S**

Dorothy Smith
Daisy Hill
Michael Huck
Phillip Jones
Faye McKeon
Paul Mitchell

A motion was made by Phillip Jones and seconded by Faye McKeon, Declaring **an emergency for ordinance 2007/06.**

**AYE'S**

Daisy Hill
Michael Huck
Phillip Jones

Faye McKeon
Paul Mitchell
Dorothy Smith

**A MOTION WAS MADE AND PASSED FOR ORDINANCE 2007/06, AN ORDINANCE ADOPTING CODES STANDARDS, AND ESTABLISHING PERMIT FEES, REQUIREMENTS AND PENALTIES FOR CODE ENFORCEMENT, DECLARING AN EMERGENCY AND FOR OTHER PURPOSES.**
**A MOTION WAS MADE AND PASSED TO SUSPEND THE READING OF ORDINANCE 2007/06— 3 TIMES.**

**A MOTION WAS MADE AND PASSED, DECLARING ORDINANCE 2007/06 AN EMERGENCY.**
**A MOTION WAS MADE AND PASSED TO PERMIT FIRST GOVERNMENT TO REFINANCE LOANS FOR THE FIRE AND POLICE DEPARTMENT AT A LOWER RATE.**
Mayor Johnson announces to the council that American Municipal Services (collection company) will collect all past due fees and fines for a fee of 25%. We are starting with the year of 2003.

Michael Huck received information from Municipal League for a free Grant Writing Seminar. Mrs. Huck will be attending this seminar, and any council member that would like to attend can.

Paul Mitchell asked Mayor Johnson, whom besides herself is authorized to sign checks? Mayor Johnson said that the following people could sign checks.

Tressie Mitchell
Dorothy Smith
Andy Mullins
Monroe Gates

Bob McKeon came to present to the council a mid-year budget summary. Michael Huck gave Mayor Johnson a list of accounting questions to get Ms. Rainey to answer.

Public Comments

Mr. Keith Sutton expresses his concerned about the difference ordinances and enforcement.

Faye Mckeon suggested that the Administrative Office identify themselves when answering the phones for the city.

A motion was made by Daisy Hill and Second by Faye McKeon to adjourn.

Meeting was adjourned @ 7:56 p.m.

Next meeting will be held August 20, 2007 @ 6:00 p.m.

Shirley Johnson                          Michelle Kidd
Mayor                                    Recorder

Aug 10 07 07:28a P.2
FROM :First Govt FAX NO. :8474468377 Aug. 09 2007 09:21AM P1

# First Government Lease Co.

## Lease Purchase Agreement

**Lessor:**
First Government Lease Co.
Box 59339
Chicago, IL 60659
866.793.9670 or 847.441.5684
Fax 847.446.8377
info@firstgovernment.com

**Lessee:**
Name: CITY OF ALEXANDER
Address: BOX 610
City: ALEXANDER State: AR Zip: 72002
Phone: 501.455.2585 Fax 501.847.2451

Description of Equipment: PROPERTY @ 15413 S. ALEXANDER RD: BUILDING ALL IMPROVEMENTS INCLUDING THE THREE STORY 70x80 BUILDING

Quantity: ______ Unit Price: ______ Total: ______

| | | | |
|---|---|---|---|
| Total Cash Price | 350,000 | Number of Pmts. (Term) | 168 MONTHLY |
| Lease Down Pmt. | ZERO | Amt. of each Pmt. | $4,970.83 |
| Net | 350,000 | Lease Beginning Date | 8/8/07 |
| Interest & A.P.R. | 485,099.84 9.90% | First Payment Due Date | 9/1/07 |
| Total Lease Price | 835,099.84 | | |

Lessor hereby leases to lessee that certain equipment described above, subject to the terms, provisions, conditions and agreements of this lease hereinafter set forth:

1. Said equipment is leased beginning and for the Term specified above.
2. Lessee agrees to pay lessor one monthly payment specified above on the Lease Beginning Date and equal consecutive monthly payments until an amount equal to the total lease price specified above has been paid. Any amount due under this Lease which is past due more than ten (10) days shall be subject to a multiple time late payment charge of $100 per occurrence plus an amount equal to ten percent (10%) of the amount past due.
3. Lessee may purchase said equipment at any time during the lease term for the total lease price, less any payment already made and also less a portion of the lease service fee according to a schedule furnished on request by lessor to lessee, shall constitute purchase of the equipment. Also payment of all the monthly payments when due shall automatically constitute purchase of said equipment effective on the last day of the lease period.
4. Lessee may cancel this Lease Purchase Agreement only with Lessor's written approval at any time within the first 30 days of lease by giving written notice to Lessor and returning said equipment to Lessor, or to its order, in good condition as received, less normal wear, tear and depreciation. Upon such proper return, Lessee shall have no obligation to make payments coming due after the notice period.
5. Lessee, at its own cost and expense, shall keep the equipment in good repair, condition and working order and shall furnish any and all parts, mechanism and devices required to keep the equipment in good mechanical and working order. Lessee hereby assumes and shall bear the entire risk of loss and damage to the equipment from any and every cause whatsoever. No loss or damage to the equipment or any part thereof, shall impair any obligation of Lessee under this lease which shall continue in full force and effect. Lessee hereby appoints Lessor as Lessee's attorney in fact with full power to do all things to protect and further Lessor's and Lessee's agreement as set forth herein, including but not limited to, signing and filing UCC's, title applications and taking such other actions as Lessor deems reasonable and necessary. Lessee is obliged within 60 days of the Lease Beginning Date to provide a original duplicate title to Lessor, failing to provide a duplicate title within 60 days of Lease Beginning Date is an event of default.
6. If Lessee with respect to any item or items of equipment fails to pay any rent or other amount herein provided with 60 days after the same is due and payable, or if Lessee with regard to any item or items of equipment fails to observe, keep or perform any other provision of this lease required to be observed, kept or performed by Lessee, Lessor shall have the right to exercise any one or more of the following remedies: a. To declare the entire amount of rent hereunder immediately due and payable as to any or all items of equipment, without notice or demand to Lessee. b. To sue for and recover all rents, and other payments then accrued or thereafter accruing, with respect to any or all items of equipment. c. To take possession of any or all items of equipment without demand or notice, wherever same may be located, without any court order or other process law. d. To terminate this lease as to any or all items of equipment. e. To pursue any other remedy at law or in equity, notwithstanding any said repossession, or any other action which Lessor may take, Lessee shall be and remain liable for the full performance of all obligations on the part of Lessee to be performed under this lease. f. Lessee further agrees to pay all attorneys' fees incurred by Lessor in enforcing Lessor's rights under this agreement. All such remedies are cumulative, and may be exercised concurrently or separately.
7. Lessee intends to do all things lawful within its power to obtain and maintain funds from which payments may be made, including making provision for such payments to the extent necessary in each periodic budget submitted and adopted in accordance with applicable provisions of state and local law, to have such portion of the budget approved and to exhaust all available reviews and appeals in the event such portion of the budget is not approved. Lessee reasonably believes that legally available funds in an amount sufficient to make all Lease Payments during the term can be obtained. After a nonappropriation, the Lessee may not use other property or equipment to perform the same, or substantially similar, services for a period of one year.
8. Upon commencement of the Term, title to the equipment shall pass to Lessee from vendor or supplier. Lessee hereby grants a security interest in the equipment described herein, and the proceeds thereof to Lessor.
9. Lessee agrees to bring any judicial action arising directly or indirectly in connection with this agreement or any transaction covered hereby, only in Courts located within Cook County, IL. Lessee also consents and submits to the jurisdiction of any State or Federal Court located within Cook County, IL. The choice of law shall be IL.
10. [illegible] I [illegible] act within the powers of any office by executing this Lease Agreement, and the equipment being financed is essential to its governmental mission.

In Witness whereof the parties hereto have executed this lease this 8 day of AUGUST, 20 07

By [signature] [signature: Jerry Ball] , JERRY BALL - DIRECTOR OF PARKS & FIRE
First Government Lease Co. (Lessee Signature) (Print Signature and Title)

As Counsel for Lessee, I acknowledge that I have reviewed this Lease Purchase Agreement, the extent of any enabling minutes, and all necessary proceedings taken by the Lessee to authorize and establish this Lease Purchase Agreement, and therefor, I am of the opinion: a. The lessee is a duly constituted public corporation and political subdivision of the State referred to above, and b. This Lease Purchase Agreement has been duly authorized, executed and delivered by an authorized representative of the Lessee and is enforceable against the Lessee in accordance with its terms and conditions, and c. this Lease Purchase Agreement is a legal, valid and binding obligation of the Lessee.

[signature: Shirley Johnson] , SHIRLEY JOHNSON - MAYOR

EXHIBIT
"B"

**WARRANTY DEED**

FILED
SALINE COUNTY
CIRCUIT CLERK

2007 OCT 10 PM 1: 57

BY:_____

# KNOW ALL MEN BY THESE PRESENTS:

THAT Saline County, Arkansas, for and in consideration of the sum of TEN AND 00/100

DOLLARS ($10.00) cash in hand paid City of Alexander, and other good and valuable

considerations delivered the receipt of which is hereby acknowledged do hereby grant, bargain, sell

and convey unto the said City of Alexander, (hereinafter referred to as the grantee) and unto its

successors and assigns forever, the following lands lying in the County of SALINE, and State of

Arkansas, to-wit:

Lot 6 of Woodland Country Club Estates, Saline County, Arkansas.

This instrument prepared by:
Fred E. Briner, P.A.
Attorney At Law
Benton, Arkansas.

To have and to hold the same unto the said grantee and unto its successors and assigns

forever, with all appurtenances thereunto belonging.   And grantor hereby covenants with said

grantees that it will forever warrant and defend the title to the lands against all claims whatever.

IN TESTIMONY WHEREOF, this ___ day of _____, 2007.

SALINE COUNTY, ARKANSAS

BY:_____ (L.S.)
Lanny Fite - County Judge

ATTEST:

_____
Freddy Burton - County Clerk

07 110639

**EXHIBIT
"C"**

STATE OF ARKANSAS )
                 )ss                ACKNOWLEDGEMENT
COUNTY OF SALINE  )

        On this day came before me, personally appeared, to me personally well known, Lanny Fite, who acknowledged that he is the County Judge and as such officer being authorized so to do, had executed the foregoing instrument for the consideration and purposes therein mentioned.

        WITNESS my hand and seal as such Notary Public on this _1_ day of _Oct._ , 2007.

My Commission Expires

3-21-14

Notary Public

STATE OF ARKANSAS )
                 )ss                ACKNOWLEDGEMENT
COUNTY OF SALINE  )

        On this day came before me, personally appeared, to me personally well known, Freddy Burton, who acknowledged that he is the County Clerk and as such officer being authorized so to do, had executed the foregoing instrument for the consideration and purposes therein mentioned.

        WITNESS my hand and seal as such Notary Public on this _2_ day of _October_ , 2007.

Notary Public

My Commission Expires:



# NOTE

$350,000.00                                                Benton, Arkansas

                                                        November 29th, 2007

     For value received, the undersigned promises to pay to the order of First Government Lease Company of Box 8331,Northfield, IL 60093, the sum of THREE HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS($350,000.00), being due and payable as follows:

     One Hundred and Sixty-Eight (168) monthly installments of $4,970.83, each, the first one of said installment being due and payable on or before September 1, 2007 and then one of said installments being due and payable on or before the 1st day of each and every month. It is agreed that the failure to pay any installments when due or the failure to comply with any of the provisions of the Mortgage securing this note, that this note shall immediately come due and payable. This Note may be prepaid without penalty.

     This Note is negotiable and payable without defalcation or discount and the makers and endorsers of this Note hereby severally waive presentation for payment, notice of non-payment and protest and consent that the time for the payment may be extended from time to time by the holder or owner of this Note without notice.

     In the event of default in the payment of this Note, and if the Note is collected by an attorney at law, the undersigned agree to pay all costs of collection, including a reasonable attorney's fee not to exceed ten percent of the amount of the principal due.

     This Note shall be governed by and construed in accordance with the laws of the State of Arkansas and the laws of the United States of America. The maximum interest rate applicable to the loan evidenced by this Note shall be governed by the laws of the United Stated of America, including 12 U.S.C. Section 1831u.

     This note is secured by: Mortgage of even date herewith.

THE CITY OF ALEXANDER

By: _Shirley Johnson_ Mayor
    Shirley Johnson - Mayor

EXHIBIT
"D"



FILED
SALINE COUNTY
CIRCUIT CLERK
2007 NOV 29 PM 12: 22
BY:

# COMMERCIAL REAL ESTATE MORTGAGE

**KNOW ALL MEN BY THESE PRESENTS:**

THAT, The City of Alexander, (hereinafter referred to as MORTGAGOR) for and in consideration of the sum of $10.00 and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and in order to secure the indebtedness and other obligations of MORTGAGOR hereinafter set forth, does hereby grant, bargain, sell, convey, mortgage, assign, transfer, deliver and grant a security interest unto First Government Lease Company, (hereinafter referred to as MORTGAGEE, and unto its successors and assigns forever, all of the following described lands, and interest in lands, estates, easements, rights, improvements, fixtures, equipment, machinery, building materials and appurtenances (hereinafter collectively referred to as the "MORTGAGED PROPERTY"):

(A) All those certain tracts, pieces, or parcels of Land more particularly described on Exhibit "A" attached hereto and by this reference made a part hereof (hereinafter referred to as the "Land")

(B) Together with all the buildings, structures, and improvements of every nature whatsoever now or hereafter erected or situated on the Land, and including, but not limited to, all apparatus, equipment, fixtures, or articles, whether single units or central controlled, used to supply heat, gas, air conditioning, water, light, waste disposal, power, refrigeration, ventilation, transportation, television, communication and phone service and all other fixtures, machinery, equipment, materials, of every kind or nature whatsoever, now or hereafter owned by MORTGAGOR and located in, or about, or used or intended to be used with or in connection with, the use, operation or enjoyment of the MORTGAGED PROPERTY, including all extensions, additions, improvements, betterments, renewals and replacements of any of the foregoing, all of which are hereby declared and shall be deemed to be fixtures and accessions to the freehold and a part of the MORTGAGED PROPERTY as between the parties hereto, and all persons claiming by, through or under them, and which shall be deemed to be a portion of the security for the indebtedness herein described and to be secured and encumbered by this Mortgage;

(C) Together with all right, title, and interest of MORTGAGOR in and to all options to purchase or lease the land or any portion thereof, or any interest therein, and any greater estate in the MORTGAGED PROPERTY now owned or hereafter acquired;

(D) Together with all interest, estate or other claims, both in law and equity, which MORTGAGOR now has or may hereafter acquire in the MORTGAGED PROPERTY;

1

EXHIBIT
"E"

(E) Together with all easements, rights-of-way, strip of land, vaults, streets, ways, alleys, passages, sewer rights, waters, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances whatsoever, in any way belonging, relating or appertaining to the MORTGAGED PROPERTY or any part thereof, or which hereafter shall in anyway belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by MORTGAGOR.

TO HAVE AND TO HOLD the MORTGAGED PROPERTY and all parts, rights, members, and appurtenances thereof, to the use, benefit and behoof of MORTGAGEE, and the successors and assigns of MORTGAGEE, in FEE SIMPLE forever and the MORTGAGOR covenants and warrants that MORTGAGOR is lawfully seized and possessed of the MORTGAGED PROPERTY as aforesaid, and has good right to convey the same, that the same are unencumbered except to the extent hereinafter described and that MORTGAGOR does warrant and will forever defend the title thereto against the claims of all persons whomsoever.

This Conveyance is given as a Mortgage for the purposes of securing the following described indebtedness:

(A) MORTGAGOR has applied to the Mortgagee for a loan in the principal sum of THREE HUNDRED AND FIFTY THOUSAND AND NO/100 DOLLARS ($350,000.00), evidenced by a promissory note, payable to the order of Mortgagee, of even date and such note to bear interest from date at (9.90%) per annum being due and payable as follows: One Hundred and Sixty-Eight (168) installments of $4,970.83 each the first one of said installment being due and payable on September 1, 2007, and then one of said installments being due and payable on or before the 1st day of each and every month thereafter until all of said principal and interest is fully paid.  Said payments each month shall first be applied on accrued interest and balance on principal.

(B) Also, the payment of all future and additional indebtedness, direct or indirect, created after the date of this Mortgage, which may be owing by MORTGAGOR (or by any of the persons herein designated under the term "MORTGAGOR") to the holder of the Primary Indebtedness or the foreclosure of this MORTGAGE therefore (the event occurring first to be controlling); such additional indebtedness to be secured hereby regardless of whether it shall be predicted upon further loans or advances hereafter made by the holder's of the Primary Indebtedness, or obligations hereafter acquired by such holder(s) through assignment or subrogation or otherwise or shall represent indirect obligations, (created after the date of this Mortgage) based upon any endorsements, guaranties or suretyship; AND IT IS AGREED THAT THIS MORTGAGE SHALL STAND AS SECURITY FOR ALL SUCH FUTURE AND ADDITIONAL INDEBTEDNESS WHETHER IT BE INCURRED FOR ANY BUSINESS PURPOSE THAT WAS RELATED OR WHOLLY UNRELATED TO THE PURPOSE OF THE ORIGINAL

2

LOAN, OR WHETHER IT WAS INCURRED FOR SOME PERSONAL OR NON-BUSINESS PURPOSE, OR FOR ANY OTHER PURPOSE RELATED OR UNRELATED OF SIMILAR OR DISSIMILAR, TO THE PURPOSE OF THE ORIGINAL LOAN.

(C) AND any and all additional advances made by MORTGAGEE to protect and/or preserve the MORTGAGED PROPERTY or the lien hereof on the MORTGAGED PROPERTY (including but not limited to any and all payments made by MORTGAGEE on account of or toward any indebtedness secured by any lien encumbering the MORTGAGED PROPERTY, whether prior to or on a parity with the lien of this MORTGAGE), or for taxes, assessments, or insurance premiums, if any, as hereinafter provided and whether or not the original MORTGAGOR remains the owner of the MORTGAGED PROPERTY at the time of such advances.

Provided, however, that these presents are upon the conditions that, if MORTGAGOR shall pay or cause to be paid to the MORTGAGEE the principal and interest payable in respect to the Note, and any extensions, renewals and modifications of same, at the times and in the manner stipulated therein and herein, all without deduction or credit for taxes or other similar charges paid by MORTGAGOR and shall be pay all charges incurred by MORTGAGEE on account of MORTGAGOR, including, but not limited to attorney's fees to MORTGAGEE, and shall keep, perform and observe all and singular the covenants, conditions, agreements and Obligations in this Mortgage, in the Note, and any other loan documents give to evidence and/or secure the Primary Indebtedness (said Mortgage, Note and such other loan documents being hereinafter collectively referred to as the "Security Instruments") expressed to be kept, performed and observed by or on the part of MORTGAGOR, all without fraud or delay, then this Mortgage, and all the properties, interest and rights hereby granted, bargained, sold and conveyed shall cease, determine and be void, but shall otherwise remain in full force and effect.

The MORTGAGOR hereby further covenants and agrees with the MORTGAGEE as follows:

## ARTICLE I

1.0 <u>**Payment of Indebtedness.**</u>  MORTGAGOR will pay all indebtedness (and interest accrued thereon) evidenced or to be evidenced by the Note and any extensions, renewals, and substitutions thereof according to the tenor thereof, and all other sums now due or hereafter due secured hereby promptly as and when the same shall become due. Further MORTGAGOR will pay all indebtedness (and interest accrued thereon) secured by any lien encumbering the MORTGAGED PROPERTY, whether prior to or on a parity with the lien of this MORTGAGE and any extensions, renewals, and substitutions thereof according to the tenor thereof, and all other sums now due or hereafter due secured thereby and all other sums now due or hereafter due under any lease, rental, air rights, sublease and/or license agreements, promptly as and when the same shall become due.

3

## 1.1 Taxes, liens and other Charges.

(A)   MORTGAGOR will pay or cause to be paid, before the same becomes delinquent, all taxes, liens, assessments and charges of every character, including utility charges, whether public or private, already levied or assessed or that may hereafter be levied or assessed upon or against the MORTGAGED PROPERTY; and upon demand will furnish MORTGAGEE receipted bills evidencing such payment.

(B)   MORTGAGOR will not suffer any mechanics', materialmen's, laborer's, statutory or other liens which might or could be prior or equal to the lien of this Mortgage to be created upon all or any part of the MORTGAGED PROPERTY.

## 1.2 Care of MORTGAGED PROPERTY.

(A)   MORTGAGOR will keep the buildings, equipment, machinery, appliances, parking areas, roads, and walkways, recreational facilities, landscaping and all other improvements of any kind now or hereafter erected and/or situated upon the Land or any part thereof in good condition and repair (ordinary wear and tear being excepted), will not commit or suffer waste and will not do or suffer to be done anything which would increase the risk of fire or other hazard to the MORTGAGED PROPERTY or any part thereof.

(B)   MORTGAGOR will not remove or demolish, nor materially alter the structural character of, any improvements now or hereafter located on the Land without the prior written consent of MORTGAGEE.

(C)   If the MORTGAGED PROPERTY or any part thereof is damaged by fire or any other cause, MORTGAGOR will give prompt written notice thereof to MORTGAGEE.

(D)   MORTGAGEE or its representatives are hereby authorized to enter upon and inspect the MORTGAGED PROPERTY at any time during normal working hours.

(E)   MORTGAGOR will promptly comply with all present and future laws, ordinances, rules and regulations of any governmental authority affecting the MORTGAGED PROPERTY or any part thereof.

## 1.4 Insurance.

(A).   MORTGAGOR will, at its sole cost and expense, procure for, deliver to, and maintain for the benefit of MORTGAGEE during the life of this Mortgage, original paid-up insurance policies of and from insurance companies, approved by the MORTGAGEE, in such amounts, in form and substance and with such expiration dates are as acceptable to the MORTGAGEE, and containing non-contributory standard mortgagee clauses, their equivalent, of a mortgage loss-payable endorsement in favor of the

4

MORTGAGEE, providing the following types of insurance on and about the MORTGAGED PROPERTY:

(i)     To carry fire and extended coverage insurance upon the building encumbered hereby in an amount of not less than $350,000.00 with Mortgage clause in favor of the Mortgagee.

(ii) Comprehensive public liability insurance covering claims for bodily injury, death, and property damage, with limits not less than $500,000.00 per occurrence; and,

(iii) Such other insurance as the MORTGAGEE may from time to time reasonably require by notice in writing to the MORTGAGOR.

(B). At least 15 days prior to the expiration date all such policies, renewals thereof satisfactory to the MORTGAGEE, shall be delivered to the MORTGAGEE. The MORTGAGOR shall deliver to the MORTGAGEE receipts evidencing the payment of all such insurance policies and renewals. In the event of the foreclosure of this Mortgage or any transfer of title to the MORTGAGED PROPERTY in extinguishment of the indebtedness secured hereby, all right, title and interest of the MORTGAGOR in and to all insurance policies then in force shall pass to the purchaser or grantee.

(C). All required insurance policies shall provide for not less than thirty (30) days prior written notice to the MORTGAGEE of any cancellation, termination or material amendment thereto.

1.5 <u>Leases and other Agreements affecting MORTGAGED PROPERTY.</u>

MORTGAGOR will duly and punctually perform all material terms, covenants, conditions and agreements binding upon it under any lease or under any other agreements binding upon it under any lease or under any other agreement of any nature whatsoever which involves or affects the MORTGAGED PROPERTY or any part thereof.

1.6 <u>Further Assurances; After Acquired Property.</u> At any time and from time to time, upon request by MORTGAGEE, MORTGAGOR will, make, execute and deliver, or cause to be made, executed, and delivered, to MORTGAGEE, and where appropriate, cause to be recorded and/or filed and from time to time thereafter to be re-recorded and/or refiled at such time and in such offices and places as shall be deemed desirable by MORTGAGEE, any and all such other and further mortgages, security agreements, financing statements, continuation statements, instruments of further assurances, certificates and other documents as may, in the opinion of MORTGAGEE, be necessary or desirable in order to effectuate, complete and/or perfect, or to continue and preserve the obligation of MORTGAGOR under the Note and, under this MORTGAGE, and secure title in and to all of the MORTGAGE PROPERTY, whether now owned or hereafter acquired by MORTGAGOR. Upon any failure by MORTGAGOR so to do, MORTGAGEE may make, execute, record, file, re-record, and/or refile any and all such

5

mortgages, security agreements, financing statements, continuation statements, instruments, certificates and documents for and in the name of MORTGAGOR and MORTGAGOR hereby irrevocably appoints MORTGAGEE the agent and attorney-in-fact of MORTGAGOR so to do. The lien hereof will automatically attach, without further act, to all after acquired property attached to and/or used in the operation of the MORTGAGED PROPERTY or any part thereof.

1.7. **Expenses.** MORTGAGOR will pay or reimburse MORTGAGEE, upon demand therefore, for all reasonable attorney's fees, costs and expenses incurred by MORTGAGEE in any suit, action, legal proceeding or dispute of any kind in which MORTGAGEE is made a party or appears as a party plaintiff or defendant, affecting the indebtedness secured hereby, this MORTGAGE or the interest created hereunder, or the MORTGAGED PROPERTY including, but not limited to, any condemnation action involving the MORTGAGED PROPERTY or any action to protect the security hereof; and any such amounts paid by MORTGAGEE shall be added to the indebtedness secured by the lien of this MORTGAGE.

1.8 **Estoppel Affidavits.** MORTGAGOR, upon ten days prior written notice, shall furnish MORTGAGEE a written statement, duly acknowledged, setting forth the unpaid principal, of, and interest on, the indebtedness secured hereby and whether or not any offsets or defenses exist against such principal and interest.

1.9 **Limit of Validity.** If from any circumstances whatsoever, fulfillment of any provision of this Mortgage or of the Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then *ipso facto* the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Mortgage or under the Note that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity. the provisions of this Paragraph shall control every other provision of this Mortgage.

1.10 **Warranty of Title.** MORTGAGOR covenants and warrants that it is seized of an indefeasible estate in fee simple in the land and real property described herein and hereby mortgaged, has good and absolute title to all existing personal property, and has good right, full power, and lawful authority to convey, mortgage and encumber the same as provided herein; that MORTGAGOR may at all times peaceably and quietly enter into, hold, occupy and enjoy the Land, real property and personal property hereby mortgaged or made subject to the security interest hereby created.

1.11 **Offset.** It is understood that MORTGAGEE will have and may exercise its rights of Offset as permitted by applicable law.

1.12 **Future Advances and other Debts.** It is expressly understood that this Mortgage is

07 125941

6

intended to and does secure, not only the indebtedness herein specifically mentioned, but also Future Advances and all other debts and obligations arising under the Security Instruments, whether now existing or hereafter arising, and any and all extensions, renewals and modifications of same, or any part thereof, at any time before actual cancellation of this Instrument on the land records of the county where the MORTGAGED PROPERTY is located.

1.13 **Application to Prior Liens.**  If this MORTGAGE is or becomes subordinate to other lien, security interest, assignment of leases or rents or any other encumbrance affecting any of the MORTGAGED PROPERTY (collectively the "Prior Liens") the provisions of this Section shall apply. MORTGAGOR shall not enter into any renewal, extension, modification, increase or refinancing of any instrument or document (collectively the "Prior Lien Documents") which creates, evidences or governs any such Prior Lien or the indebtedness secured thereby without the prior written consent of MORTGAGEE. MORTGAGOR shall pay when due all indebtedness evidenced and secured by the Prior Lien Documents and shall timely perform all other Obligations of the MORTGAGOR under the Prior Lien Documents. MORTGAGEE may, but shall not be obligated to, pay any such indebtedness or perform any such Obligations for the account of the MORTGAGOR and any sum so expended plus interest shall be secured hereby. MORTGAGOR shall pay to MORTGAGEE on demand all amounts so expended by MORTGAGEE with interest on such amounts at the maximum rate allowed by law per annum until paid. MORTGAGOR shall send to the MORTGAGEE a copy of each notice of default or notice of acceleration or other notice received by MORTGAGOR from the holder of any Prior Lien Documents within three (3) business days after receipt thereof by MORTGAGOR.

1.14 **Inspection of MORTGAGED PROPERTY.**  Until the indebtedness secured hereby have been fully paid and satisfied, MORTGAGEE and its agents shall have the right at all reasonable times to inspect the MORTGAGED PROPERTY, the Personal Property and the other security for the indebtedness and applicable books and records relating thereto.

1.15 **Due on Sale or Encumbrance.**  MORTGAGOR hereby acknowledges to MORTGAGEE that (a) the identity and expertise of MORTGAGEE were and continue to be material circumstances upon which the MORTGAGEE has relied in connection with, and which constitute valuable consideration to MORTGAGEE for, the extending to MORTGAGOR of the indebtedness evidenced by the Note, and (b) any change in the identity or expertise could materially impair or jeopardize the security granted to MORTGAGEE by this Mortgage for the payment of the indebtedness secured hereby. MORTGAGOR therefore covenants and agrees with the MORTGAGEE, as part of the consideration for extending to the MORTGAGOR the indebtedness evidenced by the Note, that all indebtedness secured hereby shall, at the absolute option of the MORTGAGEE, be and become immediately due and payable (i) should the MORTGAGOR, without the prior written consent of the MORTGAGEE (which consent may be given or withheld in the sole and absolute discretion of the MORTGAGEE), sell, assign, transfer, convey, lease with

7

option to purchase, or further encumber any or all of the MORTGAGOR'S interest or estate in the MORTGAGED PROPERTY or any portion thereof, or permit the same to be sold, assigned, transferred, conveyed, contracted for or further encumbered; (ii) should any portion of the unpaid principal balance of the Note or any interest due thereon be assumed by anyone; or (iii) upon the dissolution of the MORTGAGOR. Application of the proceeds of condemnation awards or insurance claims at the direction of the MORTGAGEE shall not be considered a "sale" of an interest in the MORTGAGED PROPERTY.

1.16 **No Homestead.** MORTGAGOR covenants and warrants that no part of the MORTGAGED PROPERTY now constitutes or has ever constituted its homestead and that the MORTGAGED PROPERTY and the proceeds of the Note are presently used and will continue to be used for commercial purposes.

1.17 **Compliance with Applicable Environmental Laws.** MORTGAGOR will not cause or permit the MORTGAGED PROPERTY to be in violation of any Applicable Environmental Laws (including but not limited to the (i) Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986; (ii) the Resource Conservation and Recovery Act of 1976, as amended by the Used Oil Recycling Act of 1980 and the Hazardous and Solid Waste Amendments of 1984; (iii) the Spill Compensation and Control Act, (iv) any and all other federal, state, county, city or municipal environmental or health laws, rules, regulations, orders or ordinances; and (v) any and all amendments thereto; or do or permit anything to be done which will subject the Mortgaged Property to any remedial obligations under any Applicable Environmental Laws. MORTGAGOR will promptly notify MORTGAGEE in writing of any existing, pending or threatened investigation by any Governmental Authority under or in connection with any Applicable Environmental Laws. MORTGAGOR will not use in the Mortgaged Property in a manner which will result in disposal or release of any hazardous substances or solid waste on, from or to the Mortgaged Property, and shall at all time keep the Mortgaged Property free of all hazardous substances and wastes.

### ARTICLE II

2.0 **Events of Default.** The terms "Default", "Event of Default", or "Events of Default", wherever used in this Mortgage, shall mean the occurrence or existence of any one or more of the following events:

(A)   A failure by MORTGAGOR to pay as and when due and payable any installment of principal and/or interest (whether at stated maturity, by acceleration or otherwise) as required by the Note, by this Mortgage, or the Security Instruments; or,

(B)   A failure by MORTGAGOR to duly and fully observe or perform any other terms, covenants, conditions or agreements of the Note, this Mortgage or the Security Instruments within the time and in manner therein prescribed;

8

or,

(C)   If any of the MORTGAGED PROPERTY be levied upon or attached by any legal process, including state or federal environmental lien claims, or if the holder of any lien or security interest on the MORTGAGED PROPERTY institutes foreclosure or other proceedings for the enforcement of its remedies; or,

(D)   If MORTGAGOR, any permitted successor or assignee, or any guarantor of any of the indebtedness secured hereby shall voluntarily become a party to any insolvency, bankruptcy, composition or reorganization procedure, or make any assignment for the benefit of creditors; or if any involuntary bankruptcy, insolvency, composition or other reorganization proceedings be filed against the MORTGAGOR, any permitted successor or assignee, or any guarantor of the indebtedness secured hereby and the same shall not be dismissed within (30) days after the commencement of any such involuntary proceedings; or,

(E)   If MORTGAGOR abandons any material portion of the MORTGAGED PROPERTY; or,

(F)   If any statement, representation or warranty made by MORTGAGOR in any of the Security Instruments or any other writing delivered to MORTGAGEE is false, misleading or erroneous in any material respect.

(G)   If the liens and mortgages granted (or purported to be granted) to MORTGAGEE pursuant to this Mortgage shall cease to be a first priority lien and mortgages against the MORTGAGED PROPERTY.

2.1 **Acceleration of Maturity.**   If an Event of Default as defined in Paragraph 2.0 (A) shall have occurred and remain uncured for a grace period of 10 days and at any time thereafter of if an Event of Default as defined in Paragraphs 2.0 (B), (C), (D), (E), (F) or (G) shall have occurred and remains uncured for a grace period of 30 days after receipt of written notice thereof from MORTGAGEE and at any time thereafter, then all indebtedness secured hereby may, at the option of MORTGAGEE and without any notice or demand, be declared immediately due and payable, time being of the essence of this Mortgage; and no omission on the part of MORTGAGEE to exercise such option when entitled to so do shall be construed as a waiver of such right.

2.2 **Performance by MORTGAGEE of Defaults by MORTGAGOR.**   If MORTGAGOR shall default in the payment, performance or observance of any term, covenant or condition of this Mortgage, MORTGAGEE may, at its option, pay, perform or observe the same, and all payments made or costs incurred by MORTGAGEE in connection therewith shall be secured hereby and shall, without demand, be repaid by MORTGAGOR to MORTGAGEE

07 125944

9

with interest thereon at the rate provided in the NOTE. MORTGAGEE is hereby empowered to enter upon and to authorize others to enter upon the MORTGAGED PROPERTY or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without thereby becoming liable to MORTGAGOR or any person in possession under MORTGAGOR.

2.3 **Receiver.** If an Event of Default shall have occurred and be continuing after the expiration of any applicable grace periods, MORTGAGEE, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right without further notice and without regard to the occupancy or value of any security for the indebtedness secured hereby or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and operate the MORTGAGED PROPERTY and to collect and apply the rents, issues, profits and revenues thereof. The receiver shall have all rights and powers permitted under the laws of the State wherein the land is situated. MORTGAGOR will pay to MORTGAGEE upon demand all expenses, including receiver's fees, attorney's fees, costs and agents' compensation, incurred pursuant to the provisions of this subparagraph; and all such expenses shall be secured by this Mortgage.

2.4 **Enforcement.** If any Event of Default shall have occurred and be continuing after the expiration of any applicable grace periods, MORTGAGEE, at its option, may avail itself of all rights and remedies at law or equity, and this Mortgage may be foreclosed.

2.5 **Purchase by MORTGAGEE.** Upon any foreclosure sale, MORTGAGEE may bid for and purchase the MORTGAGED PROPERTY and shall be entitled to apply all or any part of the indebtedness secured hereby as a credit to the purchase price.

2.6 **Application of Proceeds of Sale.** In the event of a foreclosure sale of the MORTGAGED PROPERTY, the proceeds of said sale shall be applied first to the expenses of such sale and of all proceedings in connection therewith, including attorneys' and trustees' fees, then to insurance premiums, liens, assessments, taxes and charges, including utility charges advanced by MORTGAGEE, then to payment of the accrued interest on all of the foregoing, then to the payment of outstanding principal balance of the indebtedness secured hereby, and finally the remainder, if any, shall be paid to MORTGAGOR.

2.7 **Waiver of Appraisement, Valuation, Stay, Extension and Redemption Laws.** MORTGAGOR agrees, to the full extent permitted by law, that in case of a default on the part of MORTGAGOR hereunder, neither MORTGAGOR nor anyone claiming through or under it shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, extension, homestead, exemption or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, and MORTGAGOR for itself and all who may at any time claim under it or through it, hereby waives to the full extent that it may lawfully do so, the benefit of all such laws, and any and

10

all right to have the assets comprised in the security intended to be created hereby marshalled upon any foreclosure of the lien hereof. MORTGAGOR specifically waives any and all rights of appraisement, sale, redemption and homestead under the Act of the General Assembly of the State of Arkansas approved May 8, 1899, and acts amendatory thereof and supplemental thereto.

2.8 **Leases.** MORTGAGEE, at its option, is authorized to foreclose this Mortgage subject to the rights of any tenants of the MORTGAGED PROPERTY, and the failure to make such tenants parties to any such foreclosure proceedings and to foreclose their rights will not be, nor be asserted to be by MORTGAGOR, a defense to any proceedings instituted by MORTGAGEE to collect the sums secured hereby.

2.9 **Discontinuances of Proceedings and Restoration of the Parties.** In case MORTGAGEE shall have proceeded to enforce any right, power or remedy under this Mortgage by foreclosure, entry or otherwise, and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely to MORTGAGEE, then and in every such case, MORTGAGOR and MORTGAGEE shall be restored to their former positions and rights hereunder, and all rights, powers and remedies of MORTGAGEE shall continue as if no such proceeding had been taken.

2.10 **Rights Cumulative.** No right, power or remedy conferred upon or reserved to MORTGAGEE by this Mortgage is intended to be exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or now or hereafter existing at law or in equity or by statute.

2.11 **Waiver.**

(A) No delay or omission of MORTGAGEE or of any holder of the Note to exercise any right, power or remedy accruing upon any default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such default, or acquiescence therein; and every right, power and remedy given by this Mortgage to MORTGAGEE may be exercised from time to time and as often as may be deemed expedient by MORTGAGEE. No consent or waiver, express or implied, by MORTGAGEE to or of any breach or default by MORTGAGOR in the performance of the obligations thereof hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance of the same or any other obligations of MORTGAGOR hereunder. Failure on the part of MORTGAGEE to complain of any act or failure to act or to declare an Event of Default, irrespective of how long such failure continues, shall not constitute a waiver by MORTGAGEE of its rights hereunder or impair any rights, powers or remedies consequent on any breach or default by MORTGAGOR.

(B) If MORTGAGEE (I) grants forbearance or any extension of time for the payment

11

of any sums secured hereby; (ii) takes other or additional security for the payment of any right granted hereby; (iii) waives or does not exercise any right granted herein or in the Note; (iv) releases any part of the MORTGAGED PROPERTY from the lien of this Mortgage or otherwise changes any of the terms, covenants, conditions or agreements of the Note or Mortgage; (v) consents to the filing of any map, plat or replat affecting the MORTGAGED PROPERTY; (vi) consents to the granting of any easement or other right affecting the MORTGAGED PROPERTY; or (vii) makes or consents to any agreement subordinating the lien hereof, any such act or omission shall not release, discharge, modify, change or affect the original liability under the Note, this Mortgage or the Security Instruments, or any subsequent purchaser of the MORTGAGED PROPERTY or any part thereof, or any maker, co-signer, endorser, surety, or guarantor; nor shall any such act or omission preclude MORTGAGEE from exercising any right, power or privilege herein granted or intended to be granted in the event of any default then made or of any subsequent default; nor, except as otherwise expressly provided in an instrument or instruments expressly executed by MORTGAGEE, shall the lien of this Mortgage be altered thereby. In the event of the sale or transfer by operation of law or otherwise of all or any part of the MORTGAGED PROPERTY, MORTGAGEE, without notice, is hereby authorized and empowered to deal with any such vendee or transferee with reference to any of the terms, covenants, conditions or agreements hereof, as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing or discharging any liabilities, obligations or undertakings.

2.12 Suits to Protect the MORTGAGED PROPERTY.

MORTGAGEE shall have power:

(A) To institute and maintain such suits and proceedings as it may deem expedient to prevent any impairment of the MORTGAGED PROPERTY by any acts which may be unlawful or any violation of this Mortgage;

(B) To preserve or protect its interest in the MORTGAGED PROPERTY and in the rents, issues, profits and revenues arising therefrom; and,

(C) To restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order would impair the security hereunder or be prejudicial to the interest of MORTGAGEE.

2.13 MORTGAGEE May File Proofs of Claim. In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other proceedings affecting MORTGAGOR, its creditors or its property, MORTGAGEE, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have the claims of MORTGAGEE allowed in such

12

proceedings for the entire amount due and payable by MORTGAGOR under the Note, this Mortgage or the Loan Documents at the date of institution of such proceedings and for any additional amounts which may become due and payable by MORTGAGOR hereunder after such date.

<div align="center">

**ARTICLE III**

</div>

**3.0 Assignment of Rents and Leases.** All of the rents, royalties, bonuses, issues, profits, revenue, income, deposits, escrow accounts, reversions, remainders and other benefits derived from the MORTGAGED PROPERTY or arising from the use or enjoyment of any portion thereof or from any existing or future lease or agreement pertaining thereto and any liquidated damages following default under such leases, and all proceeds payable under any policy of insurance covering loss of rents resulting from untenantability caused by damage to any part of the MORTGAGED PROPERTY, together with any and all rights that MORTGAGOR may have against any tenant under such leases or any subtenants or occupants of any part of the MORTGAGE PROPERTY and any award make hereafter to MORTGAGOR in any court proceeding involving any of the tenants or in any bankruptcy, insolvency or reorganization proceedings in any state or federal court, and all payments by tenants in lieu of rent (all hereinafter collectively referred as the "Rents"), are hereby absolutely and unconditionally assigned to MORTGAGEE, to be applied by MORTGAGEE in payment of the indebtedness secured hereby. MORTGAGOR further assigns to MORTGAGEE all existing and future leases, including any subleases, any and all extensions, renewals, modifications and replacements thereof and all guaranties of tenants' performance thereunder, upon any part of the MORTGAGED PROPERTY and improvements, all of the above being hereinafter referred as the "Leases". It is understood and agreed by the parties hereto that this assignment is intended to be and is an absolute assignment hereto that this assignment is intended to be and is an absolute assignment from MORTGAGOR to MORTGAGEE, and not merely the passing of a security interest; provided, however, that prior to an Event of Default, MORTGAGOR shall have a license, without joinder of the MORTGAGEE, to enforce the Leases and to collect the Rents as they may come due and to retain, use and enjoy the same, but no rents, issues, or profits not due under the terms of any of the Leases or rental of other arrangements shall be collected or accepted by the MORTGAGOR without the prior written consent of the MORTGAGEE. MORTGAGOR shall upon request of the MORTGAGEE make, execute and deliver to MORTGAGEE confirmatory assignments of any specific lease affecting any part of the MORTGAGED PROPERTY.

**3.1 Representations and Warranties.** MORTGAGOR covenants and represents that said MORTGAGOR has full right and title to assign said Leases and Rents; that MORTGAGOR will not change, cancel, surrender or terminate any such Leases, exercise any option which might lead to such cancellation, surrender termination or change alter or modify them or consent to the release of any party liable thereunder or to the assignment of the lessees' interest in them, without the prior written consent of MORTGAGEE.

<div align="center">

13

</div>

3.2 **Rights of MORTGAGEE upon Default.** From and after the occurrence of any Event of Default hereunder which remains uncured after the expiration of any applicable grace periods, MORTGAGOR shall no longer have any rights with respect to any leases assigned hereby, and MORTGAGEE shall be entitled to notify any lessees to pay all rentals due, or which may thereafter become due, under such leases directly to MORTGAGEE (MORTGAGOR HEREBY DIRECTING AND AUTHORIZING ALL TENANTS UNDER SUCH LEASES TO PAY ALL RENTS AND OTHER AMOUNTS DUE UNDER SUCH LEASES TO MORTGAGEE UPON DEMAND WITHOUT THE NECESSITY OF ANY FURTHER CONSENT OF OR LIABILITY TO MORTGAGOR), and in all other respects to exercise all the rights and privileges of ownership of such leases, either in its own name or in MORTGAGOR'S name.

3.3 **Exculpation of MORTGAGEE Assignee.** The acceptance by MORTGAGEE of this Assignment of Rents and Leases (as a result of MORTGAGEE'S acceptance and recordation of this instrument), with all of the rights, powers, privileges and authority created hereby, shall not, prior to entry upon and taking possession of the MORTGAGED PROPERTY by MORTGAGEE, be deemed or construed to constitute MORTGAGEE as a "mortgagee in possession" nor thereafter or at any time or in any event obligate the MORTGAGEE to appear in or defend any action or proceeding relating to the Leases, the rents, issues and profits due or to become due therefrom, or the MORTGAGED PROPERTY, or to take any action hereunder, or to expend any money or incur any expenses or perform or discharge any obligation, duty or liability under any Lease, or to assume any obligation or responsibility for any security deposits or other deposits delivered to MORTGAGOR/Assignor by any lessee or tenant and not assigned and delivered to MORTGAGEE, nor shall MORTGAGEE be liable in any way for any injury or damage to person or property sustained by any person or persons, firm or corporation in or about the MORTGAGED PROPERTY

3.4 **Reassignment.** Upon final release of this Mortgage, MORTGAGEE shall reassign to MORTGAGOR, their heirs or successors all leases assigned by this Article.

## ARTICLE IV

4.0 **Security Interest.** This Mortgage shall be a security agreement between MORTGAGOR, as debtor, and MORTGAGEE, as secured party, with respect to the Land and Personal Property hereinabove described and encumbered hereby, and MORTGAGOR grants to MORTGAGEE a security interest in such Land and Personal Property, cumulative of all other rights of MORTGAGEE hereunder. In addition to the MORTGAGEE'S other rights hereunder, MORTGAGEE shall have all rights of secured parties under the Uniform Commercial Code as adopted in Arkansas (hereinafter the "Code"). MORTGAGOR shall execute and deliver to MORTGAGEE to established and maintain the validity and priority of MORTGAGEE'S security interest granted hereby in the manner and form required by law and to the satisfaction of the MORTGAGEE, and MORTGAGOR shall bear all costs thereof, including all Code searches reasonably required by MORTGAGEE. Upon the occurrence of an Event of Default which remains

14

uncured after expiration of any applicable grace periods, MORTGAGEE may exercise any or all of the remedies of a secured party available to it under the Uniform Commercial Code with respect to such Personal Property, and it is expressly agreed that upon default MORTGAGEE may proceed to dispose of the collateral in accordance with the provisions of the Uniform Commercial Code; provided, however, that MORTGAGEE may at its option dispose of the collateral in accordance with MORTGAGEE'S rights and remedies in respect of the real property pursuant to the provisions of this Mortgage, in lieu of proceeding under the Uniform Commercial Code. Some of the items of property described herein are goods that are, or are to become, fixtures related to the real estate described herein, and it is intended that, as to such goods, this Mortgage shall be effective as a financing statement filed as a fixture filing under the Uniform Commercial Code from the date of its filing in the real estate records of the county in which such properties are situated. Information concerning the security interest created by the Mortgage may be obtained from MORTGAGEE, as secured Party, at the address shown below.

4.1 **Further Assurances.** MORTGAGOR will at its expense, at any time and from time to time, promptly make, execute and deliver to MORTGAGEE all further instruments and documents and take all further action that MORTGAGEE deems necessary or desirable or that MORTGAGEE may request in order (i) to perfect and protect the security interest created or purported to be created hereby; (ii) to enable the MORTGAGEE to exercise and enforce its rights and remedies hereunder in respect of the Personal Property; or (iii) to otherwise effect the purposes of this Mortgage, including but not limited to: (A) executing and filing such financing statements and continuation statements or amendments thereto as MORTGAGEE deems necessary or desirable or requests in order to perfect and preserve the security interest created hereby or purported to be created hereby; (B) furnishing to MORTGAGEE from time to time statements and schedules further identifying and describing the Personal Property and such other reports in connection with the Personal Property as MORTGAGEE may reasonably request.

07 125950

## ARTICLE V

5.0 **Successors and Assigns.** This Mortgage shall inure to the benefit of and be binding upon MORTGAGOR and MORTGAGEE and their respective heirs, successors, executors, legal representatives and assigns. Whenever a reference is made in this Mortgage to MORTGAGOR or MORTGAGEE, such reference shall be deemed to include a reference to the heirs, executors, legal representatives, successors and assigns of MORTGAGE or MORTGAGEE.

5.1 **Terminology.** All personal pronouns used in this Mortgage whether used in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural, and vice versa.

Titles and articles are for convenience only, and neither limit nor amplify the provisions of

this Mortgage itself, and all references herein to articles, paragraphs or subparagraphs hereof shall refer to the corresponding articles, paragraphs or subparagraphs of this Mortgage unless a specific reference is made to such articles, paragraphs or subparagraphs of another document or instrument.

5.2 **Severability**. If any provision of this Mortgage or the application thereof to any person or circumstances shall be invalid or unenforceable to any extent, the remainder of this Mortgage and the application of such provisions to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

5.3 **Applicable Law.** The perfection, validity and enforcement of this Mortgage and other Loan Documents, if any, to the extent they involve the creation, validity and enforcement of liens against the MORTGAGED PROPERTY, are intended to be governed by the laws of the State of Arkansas. All other aspects of the lending transaction and the indebtedness evidenced by the Note and all other documents executed in connection therewith, shall be governed by the laws of the State of Arkansas or the laws of the United States, as applicable.

5.4 **Notice.** All notices, demands, requests and other communications required or permitted hereunder shall be in writing and shall be deemed to have been given when presented personally or when deposited in a regularly maintained receptacle for the United States Postal Service, postage prepaid, registered or certified, return receipt requested, addressed to MORTGAGOR or MORTGAGEE, at the respective addresses set forth below or such other address as MORTGAGOR or MORTGAGEE may from time to time designate by written notice given to the other as herein required.

MORTGAGEE:        First Government Lease Company
                  P.O. Box 8331
                  Northfield, IL 60093


MORTGAGOR:        The City of Alexander
                  P.O. Box 87
                  Alexander, AR 72002-0087

5.5 **Mortgagor in Control.** In no event shall MORTGAGEE'S rights and interest under the Note, this Mortgage or any other Security Instruments evidencing or securing the Primary Indebtedness, be construed to give MORTGAGEE the right to, or be deemed to indicate that MORTGAGEE is in control of the business, management or properties of the MORTGAGOR or has power over the daily management functions and operating decisions made by the MORTGAGOR.

16

5.6 **NO MERGER.** MORTGAGOR covenants and agrees that the exercise by MORTGAGEE of any of the rights and remedies hereunder or under any other Security Instruments will not work or result in a merger thereby extinguishing the indebtedness secured hereby or by the other Security Instruments until and unless said indebtedness is satisfied and paid in full.

EXECUTED ON THIS 29th day of November, 2007.

MORTGAGOR/DEBTOR:

THE CITY OF ALEXANDER

By: _Shirley Johnson_ Mayor
Shirley Johnson, Mayor

STATE OF ARKANSAS )
                   )ss.   **ACKNOWLEDGEMENT**
COUNTY OF SALINE  )

BE IT REMEMBERED, That on this day came before me the undersigned, a Notary Public within and for the County aforesaid, duly commissioned and acting Shirley Johnson, Mayor of the City of Alexander, to me well known as the Grantor, in the foregoing instrument of writing, and she stated that she had executed the same for the consideration and purposes therein mentioned and set forth.

WITNESS my hand and seal as such Notary Public on this 29th day of November, 2007.

My Commission Expires:
May 1, 2010

_____
Notary Public

Fred E. Briner, P.A., Attorney at Law, 422 North Main Street, Benton, AR 72015
G:\WPDATA\MORTGAGES\CITYOFALEXANDERMOR.KO

17

17

Exhibit "A"

Lot 6 Woodland Country Club Estates, Saline County, Arkansas.



FILED FOR RECORD
In DXX Book D7 Page 125936
NOV 2 9 2007
at 12:22 o'clock P M
DOUG KIDD, CIRCUIT CLERK
BY S. OGSON DC

# Dominique PLC

*This information is confidential and is intended only for the use of the entity or individual recipient.*

## BANK ELIGIBLE
## MUNICIPAL LEASE/PURCHASE OFFERING

| | |
|---|---|
| MUNICIPALITY | CITY OF ALEXANDER, ARKANSAS |
| RATE: | 6% TAX EXEMPT |
| **MINUS TEFRA** | 9.06% APX   (minus tefra assumes 20%<br>tefra 4% cost of funds 34% tax rate |
| TERM<br>(AVG. MATURITY) | 112 MO. PMTS<br>        (70 MOS APX) |
| PAYMENT AMOUNT:<br>(Principal & Interest) | $4,970 |
| INVESTMENT AMOUNT | $431,872 |
| EQUIPMENT TYPE | 2 STORY FIRE STATION/ APPX 80 X 70 FT.  (CERTIFIED APPRAISAL IN LATE 2007 $425,000) |
| EXPECTED SETTLEMENT DATE: | 7 DAYS APX (OR THIS CAN SETTLE WHENVER THE INVESTOR CHOOSES IN THE FUTURE) |
| GEOGRAPHIC LOCATION: | SW SUBURB OF LITTLE ROCK POP 2,500 |
| MOODY'S RATING: | SEE ENCLOSURE |

Comments -  56 MO. PMTS. HAVE BEEN COLLECTED BY THE UNDERWRITER. THE UNDERWRITER HAS DONE APPX 9 FINANCINGS WITH THE CITY SINCE 1992 OF WHICH MOST HAVE PAID OFF.  THIS IS

209 East Center Ave. Lake Bluff, IL • 60044 • USA •
www.dominiqueplc.com
Phone: (847) 842-4920

EXHIBIT
"F"

MAY 4, 2012

A MUNICIPAL FIRE DEPT.   THE INVESTOR WILL HAVE  A FIRST
MORTGAGE ON THE BUILDING.

# *First Government Lease Co.*

## One-Page Lease To Own Financing

PO Box 8331          Telephone 866.793.9670    www.firstgovernment.com
Northfield, IL 60093    Telefax 847.446.8377      info@firstgovernment.com

### Assignment Of A Undivided Interest In A Municipal Lease Purchase Agreement

Under the Municipal Lease Purchase Agreement dated 8/8/07 ("Lease") between First Government Lease Co. ("Lessor") and City of Alexander ("Lessee"), Lessor may assign all of its rights, title and interest in and to the Lease, the equipment subject to the Lease ("Equipment"), any documents executed with respect to the Lease, and any security interest in the Lease and the Equipment (collectively, "Lessor's Rights"). Lessor has assigned to the Municipal Lease Purchase Agreement Purchaser ("Purchaser") all of its interest in the Lessor's Rights. Purchaser in consideration of the payment of $393,910.55 ("Principal Amount") hereby receives an undivided 100% interest in the Lessor's Rights*. Lessor warrants that as of this date no Event of Default (as defined in the Lease) has occurred under the Lease.

Lessor agrees to act as Assignee's agent with respect to the performance of all ministerial matters in connection with the Lease, including giving and receiving notices, making required filings and receiving payments from Lessee and disbursing Assignee's pro rate portion thereof to Assignee. (Assignees shall indemnify Lessor against all claims arising in connection with Lessor's actions as agent for Assignee.) If there is an Event of Default, at Assignee's request and solely as its agent, Lessor shall take all steps that it believes, in its sole discretion, are appropriate to enforce Assignee's rights under the Lease. If there is an Event of Default and Lessor is requested to act on Assignee's behalf, Lessor shall be entitled to deduct from any payments received from Lessee an amount equal to the costs, including reasonable attorneys' fees, it incurs in enforcing Assignee's rights.

This Assignment shall inure to the benefit of and be finding upon Lessor and Assignee and their respective successors and assigns.

- 111 remaining payments of $4,970.83 starting 6/1/12.

Purchaser                          First Government Lease Co.

By                                 By:
                                   Officer

Date: 5/7/12

EXHIBIT

"G"



# GILL
# RAGON
# OWEN
A T T O R N E Y S

GILL RAGON OWEN, P.A.
ATTORNEYS AT LAW
425 WEST CAPITOL AVENUE, SUITE 3801
LITTLE ROCK, ARKANSAS 72201
TELEPHONE 501.376.3800
FACSIMILE 501.372.3359
www.gill-law.com

_____

CHRISTOPHER L. TRAVIS | ATTORNEY
EMAIL: travis@gill-law.com

September 4, 2013

Paul Graver
First Government Leasing
Box 8331
Northfield, Illinois 60093

**Via Certified Main**
**Return Receipt Requested**
**#7012-1640-0001-6025-0560**

Lance Dominique
Dominique PLC
209 East Center Ave.
Lake Bluff, Illinois 60044

**Via Certified Main**
**Return Receipt Requested**
**#7012-1640-0001-6025-0577**

**Re:  $350,000 Lease Purchase Agreement dated August 8, 2007 (the "Lease**
**Agreement") issued by the City of Alexander, Arkansas (the "City")**

Paul and Lance:

As you are aware, the City is asserting that its obligations under the Lease Agreement are null, void and unenforceable due to your failure to abide by relevant provisions of Arkansas law when originating the Lease Agreement.  The Lease Agreement is currently held by First State Bank, our client.  To the extent that the City's allegations are correct, you failed to fully disclose this material information to our client as required by federal and state securities laws.

As a prerequisite to commencing an action for violation of state securities laws and other claims, and to avoid the expense of litigation, First State Bank hereby tenders to First Government and/or Dominique PLC the Lease Agreement, which may be purchased for a price equal to $386,174.27.  That price equals the Bank's acquisition cost of $393,910.55 less all payments received from the City plus $5,000 in attorney's fees incurred by the Bank.  First Government and/or Dominique PLC may accept this tender offer any time until noon central standard time on September 20, 2013.

Sincerely,

Christopher L. Travis

**EXHIBIT**
**"H"**

Currently the following seasoned Lease Purchase Agreements are for sale. All are backed by a promissory obligation from the Obligor and secured by the equipment and/or supplies or a first mortgage on the property.

| *Obligor* | *Term* | *Asset Financed* | *Amount* | *Yield\** |
|---|---|---|---|---|
| WV, Alderson | 24 months | HVAC System | $ 27,000 | 6.00% |
| PA, Bell Twp. | 36 months | Squad car | $ 8,000 | 6.00% |
| AR, Caney | 60 months | 2 Fire trucks | $ 18,000 | 6.00% |
| AL, Castleberry | 60 months | Fire truck | $ 34,000 | 6.00% |
| TX, Cockrell Hill | 14 semi annual | Fire truck | $ 13,000 | 6.00% |
| PA, Dunganon | 7 annual | Fire truck | $ 48,000 | 6.00% |
| MO, Gallatin | 144 months | Fire house | $ 45,000 | 6.00% |
| TX, Gunther | 36 months | Narcotics Dog | $ 4,000 | 6.00% |
| TX, E Mountain | 8 annual | 2 Fire trucks | $ 48,000 | 6.00% |
| **PA, Fallowfield** | **84 months** | **Fire truck** | **$ 16,000** | **6.00%** |
| **TX, Hwy 321 IV** | **60 months** | **Tanker truck** | **$ 14,000** | **6.00%** |
| TX, Hwy 321 V | 60 months | Fire truck | $ 9,000 | 6.00% |
| OK, Howe | 60 months | Fire truck | $ 16,000 | 6.00% |
| OK, Keys | 48 months | Narcotics Dog | $ 8,500 | 6:00% |
| OH, Letcher | 84 monthly | Fire truck | $ 40,000 | 6.00% |
| AL, McCullough | 84 months | Fire truck | $ 22,000 | 6.00% |
| PA, Mountain Top | 36 months | Rescue tools | $ 14,000 | 6.00% |
| PA, Northfield | 60 months | Fire truck | $ 21,000 | 6.00% |
| AR, Quail Creek | 60 months | Fire truck | $ 6,500 | 6.00% |
| PA, Ramey | 84 months | Fire truck | $ 85,000 | 6.00% |
| AR, Reed | 36 months | Mower | $ 2,500 | 6.00% |
| AR, Saline | 18 months | In car video | $ 13,000 | 6.00% |
| PA, Shaverton | 36 months | Radios | $ 10,000 | 6.00% |
| TX, South Baxer | 84 months | Fire truck | $ 15,000 | 6.00% |
| MO, Summersville | 60 months | Fire truck | $ 8,000 | 6.00% |
| OK, Terlton | 96 months | 2 Fire trucks | $ 36,000 | 6.00% |
| AL, Titus | 20 quarterly | Fire truck | $ 27,000 | 6.00% |
| TX, W. Tawakoni | 84 months | Fire house | $130,000 | 6.00% |
| PA, Wheatland | 84 months | Fire truck | $ 63,000 | 6.00% |
| TX, Woodpecker | 7 annual | Fire truck | $ 6,000 | 6.00% |

\* Presumes that you are in the 35% Federal Marginal Tax Bracket, that is a 9.23% tax equivalent yield. All are offered on a "first come, first served" basis. Please call Paul Graver toll free at **866.793.9670** with indications of interest.

EXHIBIT
"I"

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT**

FIRST STATE BANK V CITY OF ALEXANDER AR ET AL

60CV-13-3913

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

PAUL ANTHONY GRAVER
UNKNOWN
UNKNOWN, UN  00000

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

CHRISTOPHER L TRAVIS
ATTORNEY FOR PLAINTIFF
425 W CAPITOL AVE STE 3801
LITTLE ROCK, AR  72201

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

Address of Clerks Office

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W MARKHAM
LITTLE ROCK, AR  72201

CLERK OF COURT

DEP CLERK Kurt G Schwarznau, DC

Date: 10/03/2013

No. 60CV-13-3913 This summons is for PAUL ANTHONY GRAVER (name of Defendant).

## PROOF OF SERVICE

❑ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❑ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❑ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❑ **I delivered the summons and complaint to** _____[name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❑ Other [specify]:
_____

❑ I was unable to execute service because:
_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____     SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____     By: _____
                          [Signature of server]


                          _____
                          [Printed name]

Address: _____

_____

Phone: _____

**Subscribed and sworn to before me this date:** _____


                          _____
                          Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

Oct.30.2013   06:00 AM abc

2249279640

ELECTRONICALLY FILED
2013-Oct-31 09:30:37
60CV-13-3913

# Affidavit of Process Server

In the Circuit Court Pulaski County Arkansas
**(NAME OF COURT)**

1st State Bank                    vs  City of Alexander and Paul Graver  60 CV-13-391
**PLAINTIFF/PETITIONER**                **DEFENDANT/RESPONDENT**                **CASE NUMBER**

I Jerry Paul _____, being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service.

Service: I served  Paul Graver
**NAME OF PERSON / ENTITY BEING SERVED**

with (list documents) Summons + Petition for Declaratory Judgment

by leaving with  Paul Graver _____  At
**NAME**                                          **RELATIONSHIP**

☒ Residence  910 Forest Glen Dr W Winnetka Ill
**ADDRESS**                    **CITY/STATE**

☐ Business _____
**ADDRESS**                    **CITY/STATE**

On  10-14-13 _____  AT  6 30 P M
**DATE**                                **TIME**

☐ Inquired if subject was a member of the U.S. Military and was informed they are not.

Thereafter copies of the documents were mailed by prepaid, first class mail on _____
**DATE**

from _____
**CITY**          **STATE**          **ZIP**

**Manner of Service:**
☒ **Personal:** By personally delivering copies to the person being served.
☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of _____ and explaining the general nature of the papers.
☐ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.
☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

**Non-Service:** After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address   ☐ Moved, Left no Forwarding   ☐ Service Cancelled by Litigant  ☐ Unable to Serve in Timely Fashion
☐ Address Does Not Exist ☐ Other _____

**Service Attempts:** Service was attempted on: (1) _____ (2) _____
                                            **DATE**   **TIME**       **DATE**   **TIME**

(3) _____ (4) _____ (5) _____
**DATE**   **TIME**       **DATE**   **TIME**       **DATE**   **TIME**

Description:  Age 50  Sex Male  Race W  Height 5  Weight 160  Hair ___  Beard ___  Glasses ___

Jerry Paul
**SIGNATURE OF PROCESS SERVER**

SUBSCRIBED AND SWORN to before me this 17 day of Oct , 2013 by Leonard Smith
Proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Leonard Smith
**SIGNATURE OF NOTARY PUBLIC**

NOTARY PUBLIC for OFFICIAL SEAL
LEONARD SMITH
NOTARY PUBLIC - STATE OF ILLINOIS

**OFFICIAL SEAL**
**LEONARD SMITH**
**NOTARY PUBLIC - STATE OF ILLINOIS**

FORM 2          NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT**

<u>FIRST STATE BANK V CITY OF ALEXANDER AR ET AL</u>

60CV-13-3913

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

LANCE  DOMINIQUE
UNKNOWN
UNKNOWN, UN  00000

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

CHRISTOPHER L TRAVIS
ATTORNEY FOR PLAINTIFF
425 W CAPITOL AVE STE 3801
LITTLE ROCK, AR 72201

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

Address of Clerks Office                                CLERK OF COURT

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W MARKHAM                                          DEP CLERK Kurt G Schwarznau, DC
LITTLE ROCK, AR  72201

                                                                    Date: 10/03/2013

No. 60CV-13-3913 This summons is for LANCE DOMINIQUE (name of Defendant).


## PROOF OF SERVICE


❏ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❏ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❏ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❏ **I delivered the summons and complaint to** _____**[name of individual], an agent**
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❏ Other [specify]:

_____

❏ I was unable to execute service because:

_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____     SHERIFF OF _____ COUNTY, ARKANSAS

                           By: _____
                           [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____     By: _____
                          [Signature of server]

                          _____
                          [Printed name]

Address: _____

_____

Phone: _____

**Subscribed and sworn to before me this date: _____**

                          _____
                          Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT

### FIRST STATE BANK V CITY OF ALEXANDER AR ET AL

60CV-13-3913

### SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

 CITY OF ALEXANDER ARKANSAS
UNKNOWN
UNKNOWN, UN  00000

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

CHRISTOPHER L TRAVIS
ATTORNEY FOR PLAINTIFFF
425 W CAPITOL AVE STE 3801
LITTLE ROCK, AR  72201

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:


CLERK OF COURT

Address of Clerks Office

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W MARKHAM
LITTLE ROCK, AR  72201

DEP CLERK Kurt G Schwarznau, DC

Date: 10/03/2013

No. 60CV-13-3913 This summons is for   CITY OF ALEXANDER ARKANSAS (name of Defendant).

## PROOF OF SERVICE

❏ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❏ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❏ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❏ **I delivered the summons and complaint to** _____**[name of individual], an agent**
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❏ Other [specify]:
_____

❏ I was unable to execute service because:
_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____      SHERIFF OF _____ COUNTY, ARKANSAS

                                                    By: _____
                                                    [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____     By: _____
                          [Signature of server]


                          _____
                          [Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____


                          _____
                          Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____